# EXHIBIT A

Lawyers Professional Liability Insurance

**Policy Documentation**

**For**

# Shulman, Rogers, Gandal, Pordy & Ecker, P.A.

Policy Period

August 22, 2016 to August 22, 2017

Prepared By



PROQUEST

ProQuest | a division of *Alliant*
140 East 45th Street, Suite 6B, New York, NY 10017



## Table of Contents

1. Program Summary

2. Policy Documentation $10mln/$10mln:
   - AXIS Surplus Insurance Company      EBN 782641/01/2016
   - Endurance American Specialty Insurance Company    LPL10005398002

3. Excess Policy Documentation $10mln xs $10mln:
   - ProSight Syndicate 1110 at Lloyd's      PL201600002300

4. Claims Reporting Procedure

5. ProQuest Service Team



PROQUEST
a division of AA and

### Program Summary
### Policy Period: August 22, 2016 to August 22, 2017

| | |
|---|---|
| **Total Limits:** | $20,000,000 each claim/$20,000,000 aggregate<br>*Claims Expense Within the Limit* |
| **Total Premium:** | $391,094.00 [1] |
| **MD SL Taxes & Fees:** | $11,732.82 |
| **Total Policy Cost:** | $402,826.82 |

---

| | |
|---|---|
| **Primary Limit:** | $10,000,000 each claim/$10,000,000 aggregate<br>*Claims Expense Within the Limit* |
| **Retention:** | $100,000 each claim<br>$300,000 aggregate<br>$50,000 thereafter<br>*Loss and Loss Expense* |
| **Premium:** | $291,094.00 [1] |

| Insurer | Participation | Policy Number |
|---|---|---|
| AXIS Surplus Insurance Company | 50.00% | EBN 782641/01/2016 |
| Endurance American Specialty Ins. Co. | 50.00% | LPL10005398002 |

| | |
|---|---|
| **Excess Limit:** | $10,000,000 each claim/$10,000,000 aggregate<br>*Claims Expense Within the Limit* |
| **Premium:** | $100,000.00 [1] |

| Insurer | Participation | Policy Number |
|---|---|---|
| ProSight – Syndicate 1110 at Lloyd's | 100.00% | PL201600002300 |

[1]  Not inclusive of Maryland Excess and Surplus Lines Tax of 3%.



This insurance is issued by a nonadmitted insurer not under the jurisdiction of the Maryland Insurance Commissioner."[Ins. s 3-308]

Surplus Lines Licensee:
Craig W. Howser
Alliant Insurance Services, Inc.
200 S. Wacker Drive, Suite 3030
Chicago, IL 60606
License #: 3380
MD Surplus Lines Tax: $4,366.41

# AXIS PRO® LP LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY

## DECLARATIONS

**THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY AMOUNTS INCURRED AS CLAIM EXPENSES. PLEASE READ THIS POLICY CAREFULLY.**

| **COMPANY**: AXIS Surplus Insurance Company | **POLICY NUMBER**: EBN 782641/01/2016 |
|---|---|

| Item 1. **Firm:**<br>Shulman, Rogers, Gandal, Pordy & Ecker, P.A.<br>12505 Park Potomac Avenue, 6th Floor<br>Potomac, MD 20854 | Item 2. **Policy Period**:<br>(A) Inception Date   August 22, 2016<br>(B) Expiration Date   August 22, 2017<br>*Both dates at 12:01 a.m. at the*<br>*address listed in Item 1.* |
|---|---|

Item 3.   Limits of Liability (Inclusive of **Claim Expenses**):

   a. $ 5,000,000   each **Claim** representing 50%** part of $10,000,000

   b. $ 5,000,000   Aggregate representing 50%** part of $10,000,000

   **50% represents the Insurer's participation on a quota share basis of $0.50 of each dollar of limit of liability and premium expressed hereon and payments hereunder for this layer of insurance

Item 4.   Retentions:

   $ 100,000   each **Claim**

Item 5.   Premium:

   $ 145,547   (50% part of the full layer premium of $291,094)

Item 6.   Notices to **Company**:

Notice of **Claim(s)** To Be Sent To:
AXIS Professional Insurance
Address:   300 Connell Drive, Suite 8000
        P.O. Box 357
        Berkeley Heights, NJ 07922-0357
        Facsimile:  (908) 508-4389
        USClaimNoticeBH@axiscapital.com

All Other Notices To Be Sent To:
AXIS Professional Insurance
Address:   One State Street, Suite 1700
        Hartford, CT  06103

        Facsimile:  (860) 707-1725

**This insurance is issued by a nonadmitted insurer not under the jurisdiction of the Maryland Insurance Commissioner.**

Item 7.  Endorsements Effective at Inception:
AXIS 102 ASIC (04-15) Signature Page
No. 1 LP 1110 101 (09-11) Additional Insured Amendatory Endorsement
No. 2 LP 1110 105 (09-11) Controlled Enterprise Definition Amendatory Endorsement
No. 3 LP 1110 107 (09-11) Defense and Settlement Amendatory Endorsement
No. 4 LP 1110 110 (09-11) Maintenance Retention Amendatory Endorsement
No. 5 LP 1110 202 (07-12) Prior Knowledge Exclusion Amendatory Endorsement
No. 6 LP 1110 206 (09-11) Insured's Self-Representation Endorsement
No. 7 MANU Underwriters Representative Endorsement – Shulman
No. 8 MANU-1284 (09-15) Professional Services Amendatory Endorsement
No. 9 SOS-CW (08-03) Service of Suit Clause
SLN-MD (05-16) Disclosure Regarding Surplus Lines Insurance

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

_Melissa Souz_

Authorized Representative

September 9, 2016
Date

IN WITNESS WHEREOF, the Company has caused the facsimile signatures of its President and Secretary to be affixed hereto.



**AXIS PRO®**
**LP LAWYERS PROFESSIONAL LIABILITY**
**INSURANCE POLICY**

THIS IS A CLAIMS MADE POLICY.  IT APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE DURING THE POLICY PERIOD AND ANY EXTENDED REPORTING PERIOD, IF APPLICABLE, AS THOSE TERMS ARE DESCRIBED IN THIS POLICY.  PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

In consideration of the payment of the premium and in reliance on the statements in the **Application** and subject to all other terms of this policy, the **Company** designated in the Declarations agrees with the **Firm** named in the Declarations, on behalf of all **Insureds**, to the following:

## SECTION I.  INSURING AGREEMENT

### A.  Insuring Clause

The **Company** will pay on behalf of the **Insureds** all **Loss**, in excess of the applicable **Retention**, resulting from **Claims** for **Wrongful Acts** committed before the expiration of the **Policy Period** that are first made against any **Insured** during the **Policy Period** or the Extended Reporting Period, if exercised.

### B.  Defense and Settlement

1.  It shall be the **Insured's** duty to investigate, defend, and select counsel to defend a covered **Claim** made against the **Insured** alleging a **Wrongful Act**.  However:

    a.  As a condition precedent to the right to be indemnified under this policy in respect of any such **Claim,** the **Insured**:

        1)  shall give to the **Company** notice in writing of such **Claim** and shall promptly and fully give to the **Company** such information with regard to such **Claim** as provided in SECTION VI.B., GENERAL CONDITIONS of the policy; and

        2)  shall exercise best efforts and cooperate fully with the **Company** in good faith in investigating and defending such **Claim** by keeping the **Company** fully and contemporaneously informed as to the conduct of such defense and by ensuring that counsel conducting such defense comply, in a timely manner, with the **Company's** litigation management guidelines.

    b.  The **Company** shall have the right and opportunity to approve in writing the **Insured's** selection of counsel prior to retention of such counsel to defend a covered **Claim** and to require the **Insured** to revoke such counsel's appointment.  The **Company's** prior written approval of counsel shall not be unreasonably withheld, and, with respect to revocation, it shall not be unreasonably exercised.  If more than one **Insured** is involved in a **Claim**, the **Company** may withhold approval of separate counsel for one or more of such **Insureds** unless there is a material actual or potential conflict of interest among such **Insureds**.

2.  The **Insureds** shall not settle any **Claim**, incur any **Claim Expense**, admit or assume any liability, stipulate to any judgment, or otherwise assume any contractual obligation, without the **Company's** prior written consent, which shall not be unreasonably withheld. The **Company** shall not be liable for any settlement, **Claim Expense**, assumed obligation, admission or stipulated judgment to which it has not consented or for which the **Insureds** are not legally obligated. The **Insureds** shall not knowingly take any action which increases the **Company's** exposure for **Loss** under this policy. Notwithstanding the foregoing, it is understood that the **Insured** may settle any **Claim** for which the total **Loss** associated therewith is less than fifty percent (50%) of the amount of the applicable **Retention** set forth in Item 4. of the Declarations.

3.  The **Company** will, upon written request, pay **Claim Expense** owed under this policy on a current basis. Except for **Claim Expense** paid in accordance with this paragraph, the **Company** will have no obligation to pay any **Loss** before the final disposition of a **Claim**.

4. If the **Company** recommends a settlement of a **Claim** within the policy's applicable Limit of Liability which is acceptable to the claimant, and the **Insureds** refuse to consent, then the **Company's** liability for all **Loss** on account of such **Claim** shall not exceed the total sum of:

    a. the amount for which the **Company** could have settled such **Claim**, plus **Claim Expense** incurred up to the date of the **Insured's** refusal to consent to such settlement; and

    b. twenty-five percent (25%) of **Loss** incurred in connection with such **Claim** in excess of the amount referenced in paragraph a. above. The remaining seventy-five percent (75%) of any **Loss** in excess of the amount referenced in paragraph a. above will be borne by the **Insured** uninsured and at its own risk.

However, in no event shall the **Company's** liability exceed the applicable Limit of Liability set forth in Item 3. of the Declarations.

5. The **Company's** duty to pay **Loss** on the **Insured's** behalf ends when the **Company** has exhausted the applicable Limit of Liability in payment of **Loss**.

## SECTION II. DEFINITIONS USED IN THIS POLICY

When used in this policy, whether in the singular or plural:

A. **Application** means each and every signed application, any attachments or supplements to such applications, other materials submitted therewith or incorporated therein and any other such documents, including any warranty letters or similar documents, submitted in connection with the underwriting of this policy or the underwriting of any other lawyers professional liability policy issued by the **Company** or any of its affiliates of which this policy is a renewal or replacement, or which it succeeds in time. All such applications, attachments and materials are deemed attached to, incorporated into and made a part of this policy.

B. **Claim** means:

    1. any of the following:

        a. a written demand against any **Insured** for monetary or non-monetary relief;

        b. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

        c. a written demand for arbitration or mediation;

        d. a formal civil administrative or civil regulatory proceeding against any **Insured**, including, but not limited to, a **Disciplinary Proceeding**, commenced by the filing of a notice or charges or similar document or by the entry of a formal order of investigation or similar document;

    2. a written request received by an **Insured** to toll or waive a statute of limitations relating to a matter described in subparagraph 1. above.

A **Claim** will be deemed to have been first made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand or request, when such demand or request is first received by an **Insured**).

C. **Claim Expense** means reasonable and necessary legal fees and expenses (other than regular or overtime wages, salaries, fees, benefits, or other compensation of the **Insured Individuals** or the **Firm's** overhead expenses) incurred by or on behalf of the **Insured** in defending, settling, appealing or investigating **Claims**, and the premiums for appeal, attachment or similar bonds. The **Company**, however, shall have no obligation to apply for or furnish such bonds.

D. **Company** means the insurance company stated at the top of the Declarations Page.

E. **Controlled Enterprise** means any business enterprise other than the **Firm** if at the time the alleged **Wrongful Act** occurs:

 © 2011 AXIS Specialty U.S. Services, Inc. All Rights Reserved.

1.  such enterprise is a publicly traded company and five percent (5%) or more of its issued and outstanding voting stock is owned or controlled, individually or collectively, by the **Firm** or by one or more other **Insured Individuals** or their spouses;

2.  such enterprise is not a publicly traded company and twenty-five percent (25%) or more of the legal and/or equitable ownership of such enterprise is owned or controlled, individually or collectively, by the **Firm** or by one or more other **Insured Individuals** or their spouses; or

3.  such business enterprise is controlled, operated or managed by the **Firm** or by one or more other **Insured Individuals** or their spouses.

    **Controlled Enterprise** does not include a business enterprise in which the ownership, control, operation or management by the **Insured** is exclusively in a fiduciary capacity as an administrator, conservator, executor, trustee, guardian, receiver or committee or in any similar fiduciary capacity incidental to the practice of law by the **Firm**.

F.  **Disciplinary Proceeding** shall mean a formal investigation or proceeding regarding the **Insured's** adherence to professional standards of conduct before a court, state licensing board, peer review committee, bar association, or other regulatory body.

G.  **Firm** means the entity(ies) designated in Item 1. of the Declarations.

H.  **Insured** means the **Insured Individuals** and the **Firm**.

I.  **Insured Individual** means any one or more natural persons who are past, present or future:

1.  directors, officers, principals, shareholders, partners, or members of the **Firm**, or their functional equivalent if serving in such a position outside the United States;

2.  "counsel" or "of counsel" to the **Firm** and designated as such;

3.  individuals compensated by the **Firm** through wages, salary and/or commissions and whose labor or service is directed by the **Firm**, including paralegals, whether such labor or service is on a part-time, temporary, seasonal, or full-time basis;

4.  volunteers whose labor or service is directed by the **Firm**; and

5.  individuals contracted to perform work for the **Firm** or who are independent contractors for the **Firm**, but only if prior to any **Claim** against such individual the **Firm** has agreed in writing to indemnify such individual for matters within the scope of coverage of this policy.

    In the event of death, incompetence, insolvency or bankruptcy of any **Insured Individual**, **Insured Individual** will also mean the estates, heirs, assigns, or other legal representative of the **Insured Individual** if a **Claim** is brought against the legal representative by reason of its status as such, but only if and to the extent the **Claim** would be covered under this policy if brought against the **Insured Individual**.  The **Insured Individual's** legal representative shall not be considered an **Insured Individual** for **Claims** alleging **Wrongful Acts** by the **Insured Individual's** legal representative.

J.  **Interrelated Wrongful Acts** means any or all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

K.  **Loss** means the amount(s) which the **Insureds** become legally obligated to pay on account of a **Claim**, including damages, judgments, any award of pre-judgment or post-judgment interest, settlement amounts, costs and fees awarded pursuant to judgments, and **Claim Expense**.

    **Loss** shall also include punitive or exemplary damages or the multiplied portion of any multiplied damage award, if insurable by law in any applicable jurisdiction. In determining the insurability of punitive or exemplary damages or the multiplied portion of any multiplied damage award, it is agreed that the law of the jurisdiction most favorable to the insurability of those damages will control, provided such jurisdiction is:

 © 2011 AXIS Specialty U.S. Services, Inc. All Rights Reserved.

1. where the punitive, exemplary or multiplied damages were awarded or imposed;

2. where the **Wrongful Act** underlying the **Claim** took place;

3. where either the **Company** or any **Insured** is incorporated or organized, has its principal place of business or resides; or

4. where this policy was issued or became effective.

**Loss** does not include:

1. any amounts for which the **Insureds** are legally or financially absolved from payment;

2. taxes, fines, penalties or sanctions imposed by law against any **Insured** (other than punitive or exemplary damages or the multiplied portion of any multiplied damage award as described above);

3. return, withdrawal, forgiveness or reduction of any fees or receivables paid to, or charged or chargeable by, an **Insured**;

4. the cost of re-performing or completing any **Professional Services**;

5. the cost of compliance with an injunction or any other non-monetary relief; or

6. any other matters uninsurable under the law applicable to this policy.

L. **Personal Injury** means libel, slander, disparagement, violation of rights of privacy, false arrest, detention or imprisonment, wrongful entry or eviction, malicious prosecution or abuse of process.

M. **Policy Period** means the period of time specified in Item 2. of the Declarations, subject to prior cancellation in accordance with Section VI.E. of this policy.

N. **Professional Services** means services provided to others by an **Insured**:

1. in the conduct of any business by or on behalf of the **Firm** in its professional capacity as an attorney or notary public;

2. as an administrator, conservator, executor, escrow agent, trustee, guardian, receiver or committee or in any similar fiduciary capacity incidental to the practice of law by the **Firm**;

3. as an arbitrator or mediator;

4. as a member, director or officer of any professional legal association, its governing board, or any of its committees;

5. as a government affairs advisor or lobbyist; or

6. as a title insurance agent pursuant to a written agency agreement with a licensed title insurance company,

but only if such services are performed in the name or on behalf of the **Firm** and some or all of the fee, if any, accruing from such services (regardless of whether such fee is actually collected) inures to the benefit of the **Firm**.

O. **Retention** means the amount stated in Item 4. of the Declarations Page and described in Section III.B. of this policy.

P. **Wrongful Act** means any actual or alleged:

1. act, error or omission;

2. breach of contract for **Professional Services**;

3. breach of fiduciary duty; or

4. **Personal Injury**;

committed or attempted, or allegedly committed or attempted, solely in the performance of or failure to perform **Professional Services** by any **Insured** or by any other person or entity for whose actions the **Insured** is legally responsible.

## SECTION III. LIMIT OF LIABILITY AND RETENTIONS

### A. Limit of Liability

1. The Limit of Liability stated in Item 3.a. of the Declarations Page for each **Claim** covered under this policy is the most the **Company** will pay for **Loss** arising from any one **Claim** first made during the **Policy Period** or any applicable Extended Reporting Period.

2. The Limit of Liability stated in Item 3.b. of the Declarations Page as the "Aggregate" is the most the **Company** will pay for all **Loss** arising out of all **Claims** made during the **Policy Period** or any applicable Extended Reporting Period. If the Aggregate Limit of Liability is exhausted by payment of **Loss**, the **Company's** obligations under this policy shall be completely fulfilled and extinguished. However, the **Company's** maximum Limit of Liability for all **Loss** arising out of all **Claims** in the form of **Disciplinary Proceedings** made during the **Policy Period** or any applicable Extended Reporting Period shall be $25,000. This amount shall be part of, and not in addition to, the **Company's** maximum Aggregate Limit of Liability as set forth in Item 3.b. of the Declarations Page.

3. **Claim Expense** is part of, and not in addition to, the Limit of Liability set forth in Item 3.b. of the Declarations and the payment by the **Company** of **Claim Expense** reduces and may totally exhaust such Limit of Liability.

### B. Retention

The **Company** shall be liable for only that part of **Loss** arising from each **Claim** covered under this policy which is excess of the **Retention** set forth in Item 4. of the Declarations. Such **Retention** shall be borne by the **Insureds** uninsured and at their own risk. The **Retention** shall not apply to **Claims** in the form of **Disciplinary Proceedings**.

The Limit of Liability shall not be reduced by the application of the **Retention**. All other rights, duties and obligations under the policy shall remain the same regardless of whether or not the **Retention** has been satisfied.

### C. All **Claims** arising from the same **Wrongful Act** and/or all **Interrelated Wrongful Acts** shall be deemed one **Claim** for the purpose of applying the Limit of Liability and Retention.

## SECTION IV. EXCLUSIONS

### A. The **Company** shall not be obligated to pay **Loss** arising from any **Claim** made against any **Insured**:

1. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

   a. any fact, circumstance, transaction, event, or **Wrongful Act** that, before the Inception Date set forth in Item 2. of the Declarations, was the subject of any notice of claim or loss, or notice of potential claim or potential loss, given under any other policy of insurance;

   b. any fact, circumstance, transaction, event, or **Wrongful Act** of which, as of the Inception Date of the first policy written by the **Company** and continuously renewed thereafter, any **Insured** had knowledge and that was reasonably likely to give rise to a **Claim** that would fall within the scope of the insurance afforded by this policy; or

   c. any other **Wrongful Act** whenever occurring, which together with a **Wrongful Act** described in a. or b. above, constitute **Interrelated Wrongful Acts**;

2.  based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

    a.  any demand, suit, or other proceeding pending, or order, decree or judgment entered, against any **Insured** prior to the Inception Date set forth in Item 2. of the Declarations or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

    b.  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, constitute **Interrelated Wrongful Acts**;

3.  for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any property, including loss of use thereof; but this exclusion shall not apply to any **Claim** directly arising out of a **Wrongful Act**;

4.  arising out of any **Insured's** services as a fiduciary within the meaning of the Employee Retirement Income Security Act of 1974, and any amendments, regulations, or orders issued thereto; but this exclusion shall not apply to a **Claim** arising out of **Wrongful Acts** committed by an **Insured** in providing **Professional Services** to a fiduciary as otherwise provided by this policy;

5.  based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving the performance of any services or duties by any **Insured Individual** on behalf of or in the name of an entity other than the **Firm**; however, this exclusion shall not apply to any **Claim** arising out of a **Wrongful Act** committed by any **Insured** in the course of providing **Professional Services** to such entity;

6.  by or on behalf of, in the name or right of, or based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any **Wrongful Act** in connection with any **Controlled Enterprise**;

7.  brought or maintained by or on behalf of any **Insured**, but this exclusion will not apply to a **Claim** brought by an **Insured Individual** arising out of insured representation, provided the **Insured Individual** is bringing such **Claim** as a client of the **Firm** and without the solicitation, assistance or participation of any other **Insured**. "Insured representation" shall mean **Professional Services** provided with the prior written consent of the **Firm** by an **Insured Individual** to any other **Insured Individual**;

8.  based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving the **Insured's** capacity as a title insurance agent where there exists any actual or alleged breach by an **Insured** of authority granted by a title insurance company or agency thereof;

9.  based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

    a.  the gaining of any profit, remuneration, or advantage to which the **Insured** was not legally entitled; or

    b.  any criminal, dishonest, malicious or deliberately fraudulent act, error or omission by an **Insured**;

    if evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or written admission by an **Insured**.

    No fact pertaining to, knowledge possessed by or conduct by any **Insured Individual** shall be imputed to any other **Insured Individual** or the **Firm**;

10. based upon or arising out of, directly or indirectly resulting from, in consequence of or in any way involving the **Insured's** actual or alleged direct infringement of any copyright, patent, trademark (including collective or service marks), certification mark, trade secret, trade name, trade dress, misappropriation of ideas or other intellectual property; however, this exclusion does not apply to **Claims** arising out of **Wrongful Acts** in connection with the **Insured's** provision of legal advice to a client of the **Firm**;

11. based upon or arising out of, directly or indirectly resulting from, in consequence of or in any way involving "investment advice" by the **Insured**. "Investment advice" means:

    a.  predictions of future performance, warranties, or guarantees regarding specific and identifiable investments;

 © 2011 AXIS Specialty U.S. Services, Inc. All Rights Reserved.

b. recommending or inducing others to purchase, sell, or make a particular investment in any identifiable investment;

c. performing an economic analysis of any investment; or

d. actively buying, selling or managing any investment for another (except for the execution of trades or transactions pursuant to a client's express written direction or that of such client's authorized agent);

12. based upon or arising out of, directly or indirectly resulting from, in consequence of or in any way involving any **Loss** sustained by an **Insured** or **Claim** made against an **Insured** as beneficiary or distributee of any trust or estate.

## SECTION V. CLAIMS MADE CONDITIONS; EXTENDED REPORTING PERIOD

A. This insurance applies to **Claims** that are first made during the **Policy Period** or as otherwise provided in this Section. The **Company** will consider a **Claim** to be first made against an **Insured** when a **Claim** is first received by any **Insured**. For coverage to apply, the **Insured** must provide notice of **Claims** and provide information in accordance with Section VI. GENERAL CONDITIONS, B., Insured's Duties in the Event of a Claim.

B. **Reporting of Circumstances**

1. If during the **Policy Period** any **Insured** becomes aware of circumstances which could give rise to a **Claim**, and the **Insured** gives written notice of such circumstances to the **Company** during the **Policy Period**, then any **Claim** subsequently arising from such circumstances shall be considered to have been made during the **Policy Period** in which the circumstances were first reported to the **Company**. No coverage shall be provided for fees and expenses incurred prior to the time such circumstances result in a **Claim**.

2. The **Insureds** shall, as a condition precedent to exercising their rights hereunder:

a. include with any notice of circumstances a description of such circumstances, the nature of the potential **Wrongful Act**, the nature and extent of the potential damages, the names of the potential claimants, and the manner in which the **Insured** first became aware of such circumstances, and

b. give the **Company** such additional information and cooperation as it may reasonably require.

3. Written notice of any **Claim** resulting from circumstances reported in accordance with B.1. and B.2., above, must be given to the **Company** as soon as practicable.

C. **Extended Reporting Period**

If the **Company** or the **Firm** chooses not to renew or the **Firm** cancels this policy, the **Firm** shall have the right to the following Extended Reporting Period options, upon payment of the additional premium required by the **Company**, following the termination of the **Policy Period** in which to report **Claims** first made during the Extended Reporting Period and arising from **Wrongful Acts** occurring prior to the effective date of such cancellation or nonrenewal.

| Extended Reporting Period | Additional Premium (as % of annual premium) |
|---|---|
| Twelve (12) months | 125% |
| Twenty-four (24) months | 200% |
| Thirty-six (36) months | 250% |

The right to purchase an Extended Reporting Period shall not be available in the event of cancellation of this policy resulting from the failure to pay any premium due. The right to elect any Extended Reporting Period shall lapse unless written notice of the election, together with payment of the additional premium due, is given by the **Firm** and is received by the **Company** within sixty (60) days following the effective date of cancellation or nonrenewal as appropriate.

 © 2011 AXIS Specialty U.S. Services, Inc. All Rights Reserved.

Coverage under the Extended Reporting Period shall only apply if there is no other valid or collectible insurance applicable to the **Claim**. The provisions of the policy in effect on the last day of the **Policy Period** will apply to a **Claim** first made during the Extended Reporting Period. Once in effect, the Extended Reporting Period may not be canceled. The purchase of an Extended Reporting Period pursuant to Section V of this policy shall not increase or reinstate the Aggregate Limit of Liability, which shall be the maximum liability of the **Company** for such **Policy Period** and Extended Reporting Period, combined. The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided.

**D. Multiple Claims**

All **Claims** arising from the same **Wrongful Act** or **Interrelated Wrongful Acts** will be deemed to have been made on the earlier of the date the first of those **Claims** is made against any **Insured** or the first date the **Company** receives the **Insured's** written notice of the fact, circumstance, situation, event, transaction, cause or **Wrongful Act** which underlies such **Claim**. The provisions of the policy in effect on that date will apply.

## SECTION VI. GENERAL CONDITIONS

A. Time of Inception; Policy Period

This policy will begin at 12:01 a.m. on the Inception Date shown in the Declarations. This policy will continue to apply until 12:01 a.m. on the Expiration Date also shown in the Declarations unless terminated at an earlier date.

B. Insured's Duties in the Event of a Claim

1. If there is a **Claim**, the **Insured** must notify the **Company** in writing as soon as practicable. This notice must contain details that identify the **Insured**, the claimant, and reasonably obtainable information concerning the time, place and other details of the **Wrongful Act** and **Claim**.

2. No **Insured** will, except at the **Insured's** own cost, voluntarily make a payment, admit liability, assume any obligation or incur any expense without the **Company's** prior written consent, except as provided in Section I.B.2. of this policy.

C. Transactions That Impact Coverage

1. If, during the **Policy Period**, the total number of attorneys in the **Firm** increases by more than ten percent (10%) as the result of the **Firm's** merger with or acquisition of any other law firm or group of attorneys, the **Firm** must promptly give the **Company** written notice thereof, and the **Company** will be entitled to impose such additional coverage terms and charge such additional premium in connection therewith as the **Company**, in its sole discretion, may require. Subject to the **Firm's** compliance with the provisions of this paragraph, coverage shall only be provided for such acquired attorneys with respect to **Wrongful Acts** committed or allegedly committed on or after the effective date of employment with the **Firm**.

2. If, during the **Policy Period**, any of the following events occurs:

   a. the acquisition of the **Firm**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Firm** into or with another entity such that the **Firm** is not the surviving entity; or

   b. the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Firm** or the **Firm** becoming a debtor in possession as such term is used in Chapter 11 of the US Bankruptcy Code,

   the **Firm** shall give written notice of such event to the **Company** as soon as practicable together with such information as the **Company** may require. The policy shall not be cancellable by the **Firm**, and coverage under this policy shall continue until termination of the **Policy Period**, but only with respect to **Wrongful Acts** occurring prior to such event.

D. Representations and Severability with Respect to Application

In granting coverage to any one of the **Insureds**, the **Company** has relied upon the statements made in the written **Application** for this policy and all information provided to the **Company**. All such statements are the basis of this policy and shall be incorporated in and constitute part of this policy.

In order to determine if coverage is available, no knowledge possessed by any **Insured Individual** shall be imputed to any other **Insured**; except, however, knowledge possessed by the **Insured Individual** signing the **Application** shall be imputed to all other **Insureds**.

E.  Cancellation

1.  The **Firm** may cancel this policy during the **Policy Period** by giving the **Company** advance written notice of cancellation stating when thereafter such cancellation will be effective.

2.  The **Company** may only cancel this policy in the event of nonpayment of premium.  If the **Company** cancels the policy, it will give the **Firm** written notice of cancellation at least twenty (20) days before the effective time of cancellation.

3.  Notice of cancellation shall state the effective time of cancellation. The **Policy Period** shall end at that time.

4.  If this policy is cancelled, the **Company** shall send the **Firm** any premium refund as soon as practicable. If the **Firm** cancels, the refund shall be on the customary short rate basis. The return or tender of a return premium is not a condition precedent to the cancellation becoming effective at the time stated in the cancellation notice.

5.  If any controlling law requires a longer period of notice by the **Company**, the **Company** shall give such longer notice.

F.  Other Insurance

If any **Loss** arising from any **Claim** is insured by any other policy(ies) of insurance, then this policy shall apply only in excess of and will not contribute with the amount of any deductibles, retentions and limits of liability under such other policy(ies) whether such policy(ies) is stated to be primary, contributory, excess, contingent or otherwise, unless such policy(ies) is written to be specifically excess of this policy by reference in such other policy(ies) to this policy's Policy Number.  In all other events, this policy is intended to provide primary insurance.

G.  Territory

This policy shall apply to **Claims** made and **Wrongful Acts** occurring anywhere in the world.

H.  Valuation and Currency

All premiums, limits, **Retentions, Loss**, and other amounts under this policy are expressed and payable in the currency of the United States. If judgment is rendered, settlement is denominated or another element of **Loss** under this policy is stated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other element of **Loss** is due.

I.  Subrogation

In the event of any payment under this policy, the **Company** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery including rights against other **Insureds**, and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Company** effectively to bring suit in the name of the **Insureds**. The **Insureds** will do nothing to prejudice such rights. Any recoveries shall be applied as follows:

1.  First, to the **Company** up to the amount the **Company** has paid for **Loss**;

2.  Then, to the **Firm** as recovery of **Retention** amounts paid as **Loss**.

**J.** No Action Against **Company**

No action shall lie against the **Company** unless, as a condition precedent thereto, there has been full compliance with all the terms of this policy by all **Insureds**, nor until the amount of the **Insured's** obligation to pay has been fully determined either by judgment or award against the **Insured** after actual trial or arbitration or by written agreement among the **Insured**, the claimant, and the **Company**. No person or organization shall have any right under this policy to join the **Company** as a party to any action against the **Insureds** to determine the **Insureds'** liability, nor shall the **Company** be impleaded by the **Insureds** or their legal representative.

**K.** Bankruptcy

Bankruptcy or insolvency of the **Firm** or of any **Insured Individual** shall not relieve the **Company** of its obligations nor deprive the **Company** of its rights or defenses under this policy.

**L.** Authorization Clause

For the purposes of this provision, **Firm** shall mean the entity first listed in Item 1. of the Declarations.

By acceptance of this policy, the **Firm** shall act on behalf of the **Insureds** with respect to the giving and receiving of any notice provided for in this policy, election of any Extended Reporting Period Option, the payment of premiums and **Retentions**, and the receipt of any return premiums that may become due under this policy, consenting to settlement of **Claims**, and the agreement to and acceptance of endorsements.

**M.** Alteration and Assignment

No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement to this policy which is signed by an authorized representative of the **Company**. The **Insureds** agree that this policy constitutes the entire agreement between the **Insureds** and the **Company**, or any of their agents or brokers. Notice to or knowledge possessed by the **Company**, the **Insureds** or any agent, broker or other person acting on behalf of the **Insureds** or **Company** shall not effect a waiver of or estop the **Company** or the **Insureds** from asserting any rights under this policy.

**N.** Headings

The description in the headings and subheadings are solely for convenience, and form no part of the terms and conditions of coverage.

**O.** Spousal Coverage

If a **Claim** made against an **Insured Individual** includes a **Claim** against that **Insured Individual's** lawful spouse solely by reason of:

1. Such spouse's status as the **Insured Individual's** spouse, or

2. Such spouse's ownership interest in property from which the claimant seeks recovery for the **Insured Individual's Wrongful Acts**,

all **Loss** which such spouse becomes legally obligated to pay on account of such **Claim** shall be treated for purposes of this policy as **Loss** which the **Insured Individual** is legally obligated to pay on account of the **Claim** made against the **Insured Individual**. Such **Loss** shall be covered under this policy only if and to the extent that such **Loss** would be covered under this policy if incurred by the **Insured Individual**. The coverage extension afforded by this subsection does not apply to any **Claim** alleging any **Wrongful Act** by the **Insured Individual's** spouse. The term "spouse" as used in this section shall include any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law in the United States of America.

**P. Notices**

All notices under any provision of this policy must be made in writing and delivered by prepaid express courier, certified mail, fax or electronic mail. Notice to the **Insured Individuals** shall be given to the **Firm**. Notices to the **Company** shall be given to the appropriate party at the address set forth in Item 6. of the Declarations. Notices given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notices are sent, whichever is earlier.

In Witness Whereof, the **Company** has caused this policy to be executed and attested, but this policy will not be valid unless countersigned by a duly authorized representative of the **Company**.



# SIGNATURE PAGE

IN WITNESS WHEREOF, the Company has caused the facsimile signatures of its President and Secretary to be affixed hereto, and has caused this policy to be signed on the Declarations by an authorized representative of the Company.

Secretary                                                    President

Andrew Weissert, Secretary                   Carlton Maner, President

AXIS 102 ASIC (04-15)                                                            Page 1

**AXIS SURPLUS INSURANCE COMPANY**
111 S. Wacker Drive, Suite 3500, Chicago, Illinois 60606
(866) 259-5435

Endorsement No. 1

Effective date of this endorsement: 12:01 a.m. on August 22, 2016
To be attached to and form part of Policy Number: EBN 782641/01/2016
Issued to: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**AXIS PRO® LP LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is hereby understood and agreed that:

**SECTION II. DEFINITIONS USED IN THIS POLICY, H.** shall be amended to add the following person(s) or entity(ies) as additional **Insureds** under the policy:

SR Title LLC

All other provisions of this policy remain unchanged.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 1 of 1
LP 1110 101 (09-11)

_____
Authorized Representative

**AXIS SURPLUS INSURANCE COMPANY**
111 S. Wacker Drive, Suite 3500, Chicago, Illinois 60606
(866) 259-5435

Endorsement No. 2

Effective date of this endorsement:  12:01 a.m. on August 22, 2016
To be attached to and form part of Policy Number: EBN 782641/01/2016
Issued to: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CONTROLLED ENTERPRISE DEFINITION AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**AXIS PRO® LP LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is hereby understood and agreed that:

**SECTION II. DEFINITIONS USED IN THIS POLICY, E.** is deleted in its entirety and replaced by:

E.  **Controlled Enterprise** means any business enterprise other than the **Firm** if at the time the alleged **Wrongful Act** occurs:

1. such enterprise is a publicly traded company and ten percent (10%) or more of its issued and outstanding voting stock is owned or controlled, individually or collectively, by the **Firm** or by one or more other **Insured Individuals** or their spouses;

2. such enterprise is not a publicly traded company and twenty-five percent (25%) or more of the legal and/or equitable ownership of such enterprise is owned or controlled, individually or collectively, by the **Firm** or by one or more other **Insured Individuals** or their spouses; or

3. such business enterprise is controlled, operated or managed by the **Firm** or by one or more other **Insured Individuals** or their spouses.

**Controlled Enterprise** does not include a business enterprise in which the ownership, control, operation or management by the **Insured** is exclusively in a fiduciary capacity as an administrator, conservator, executor, trustee, guardian, receiver or committee or in any similar fiduciary capacity incidental to the practice of law by the **Firm**.

All other provisions of this policy remain unchanged.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 1 of 1
LP 1110 105 (09-11)

_____
Authorized Representative

**AXIS SURPLUS INSURANCE COMPANY**
**111 S. Wacker Drive, Suite 3500, Chicago, Illinois  60606**
**(866) 259-5435**

Endorsement No. 3

Effective date of this endorsement:  12:01 a.m. on August 22, 2016
To be attached to and form part of Policy Number: EBN 782641/01/2016
Issued to: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**DEFENSE AND SETTLEMENT AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**AXIS PRO® LP LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is hereby understood and agreed that:

**SECTION I. INSURING AGREEMENT, B. Defense and Settlement,** paragraph 4. is deleted in its entirety and replaced by the following:

4.  If the **Company** recommends a settlement of a **Claim** within the policy's applicable Limit of Liability which is acceptable to the claimant, and the **Insureds** refuse to consent, then the **Company's** liability for all **Loss** on account of such **Claim** shall not exceed the total sum of:

   (a)  the amount for which the **Company** could have settled such **Claim**, plus **Claim Expense** incurred up to the date of the **Insured's** refusal to consent to such settlement; and

   (b)  Fifty percent (50%) of **Loss** incurred in connection with such **Claim** in excess of the amount referenced in paragraph (a) above.  The remaining fifty percent (50%) of any **Loss** and **Claim Expense** in excess of the amount referenced in paragraph (a) above will be borne by the **Insured** uninsured and at its own risk.

   However, in no event shall the **Company's** liability exceed the applicable Limit of Liability set forth in Item 3. in the Declarations.

All other provisions of this policy remain unchanged.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 1 of 1
LP 1110 107 (09-11)

Authorized Representative

**AXIS SURPLUS INSURANCE COMPANY**
111 S. Wacker Drive, Suite 3500, Chicago, Illinois  60606
(866) 259-5435

Endorsement No. <u>4</u>

Effective date of this endorsement:  12:01 a.m. on <u>August 22, 2016</u>
To be attached to and form part of Policy Number: <u>EBN 782641/01/2016</u>
Issued to: <u>Shulman, Rogers, Gandal, Pordy & Ecker, P.A.</u>

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MAINTENANCE RETENTION AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**AXIS PRO® LP LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is hereby understood and agreed that:

1.  Item 4. of the Declarations is deleted in its entirety and is replaced by the following:

    Item 4. **Retentions:**
    a.  $ <u>100,000</u>   Each **Claim**
    b.  $ <u>300,000</u>   Aggregate
    c.  $ <u>50,000</u>    Maintenance for Each **Claim**

2.  **SECTION III. LIMIT OF LIABILITY AND RETENTIONS, B. Retention** is deleted in its entirety and is replaced by the following:

    **B.  Retention**

    The **Company** shall be liable for only that part of **Loss** arising from a **Claim** covered under this policy which is excess of the applicable **Retention** as described below.  Such **Retention** shall be borne by the **Insureds** uninsured and at their own risk. The **Retention** shall not apply to **Claims** in the form of **Disciplinary Proceedings**.

    The Limit of Liability shall not be reduced by the application of the **Retention**. All other rights, duties and obligations under the policy shall remain the same regardless of whether or not the **Retention** has been satisfied.

    1.  Each **Claim** Retention

        The **Company** shall be liable for only that part of **Loss** arising from a **Claim** that is excess of the Retention for Each **Claim** as stated in Item 4.a. of the Declarations, subject to the Aggregate Retention amount stated in Item 4.b. of the Declarations.

    2.  Aggregate Retention and the Aggregate Retention Satisfaction Date

        The Aggregate Retention amount is stated in Item 4.b. of the Declarations.  Upon payment by the **Insured** of Retention amounts for **Loss** arising from **Claims** made under this policy that equal or exceed the Aggregate Retention, the Maintenance Retention shall apply to all **Claims** made under this policy as set forth in paragraph III.B.3., below.

        The "Aggregate Retention Satisfaction Date" means the date on which the Retention amounts paid by the with respect to **Claims** made under this policy equal or exceed the Aggregate Retention amount.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 1 of 2
LP 1110 110 (09-11)

_____  _____
                          Authorized Representative

3.  Maintenance Retention

Once the Aggregate Retention Satisfaction Date has been reached, the Maintenance Retention stated in Item 4.c. of the Declarations shall apply to **Claims** made under this policy as described below. The Maintenance Retention shall not apply to any **Claim** until the Aggregate Retention Satisfaction Date is reached.

With respect to each **Claim** pending as of the Aggregate Retention Satisfaction Date for which the **Insured** has not yet paid the Each **Claim** Retention amount, the **Insured** will be deemed to have satisfied its Retention obligation for such **Claim** upon payment of the greater of: (a) the Maintenance Retention amount, or (b) the Retention amount paid for such **Claim** as of the Aggregate Retention Satisfaction Date.  The **Company** shall be liable for only that part of **Loss** arising from such pending **Claim** which is excess to the amount paid in satisfaction of the **Insured's** Retention obligation as described herein.

For each **Claim** made under this policy after the Aggregate Retention Satisfaction Date, the **Company** shall be liable for only that part of **Loss** arising from a **Claim** which is excess of the Maintenance Retention amount.

All other provisions of the policy remain unchanged.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 2 of 2
LP 1110 110 (09-11)

Authorized Representative

**AXIS SURPLUS INSURANCE COMPANY**
111 S. Wacker Drive, Suite 3500, Chicago, Illinois 60606
(866) 259-5435

Endorsement No. <u>5</u>

Effective date of this endorsement:  12:01 a.m. on <u>August 22, 2016</u>
To be attached to and form part of Policy Number: <u>EBN 782641/01/2016</u>
Issued to: <u>Shulman, Rogers, Gandal, Pordy & Ecker, P.A.</u>

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PRIOR KNOWLEDGE EXCLUSION AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**AXIS PRO® LP LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is hereby understood and agreed that:

**Section IV. EXCLUSIONS,** 1.(b) is deleted in its entirety and replaced by:

      (b)  any fact, circumstance, transaction, event, or **Wrongful Act** of which, as of the Inception Date of the first policy written by the **Company** and continuously renewed thereafter, the Most Senior Governance Committee of the **Insured** had knowledge and that was reasonably likely to give rise to a **Claim** that would fall within the scope of the insurance afforded by this policy. "Most Senior Governance Committee" means any management committee with management responsibility for reporting, handling and evaluating actual or potential **Claims**; or

All other provisions of this policy remain unchanged.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 1 of 1
LP 1110 202 (07-12)

                                                   Authorized Representative

**AXIS SURPLUS INSURANCE COMPANY**
**111 S. Wacker Drive, Suite 3500, Chicago, Illinois 60606**
**(866) 259-5435**

Endorsement No. 6

Effective date of this endorsement:  12:01 a.m. on August 22, 2016
To be attached to and form part of Policy Number: EBN 782641/01/2016
Issued to: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## INSURED'S SELF-REPRESENTATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

## AXIS PRO® LP LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged, it is agreed that:

**Section I. INSURING AGREEMENT** is amended to add the following new provisions:

  **C.  Insured's Self-Representation**

    Subject to the conditions stated below, the **Insured** may request, and be granted, self-representation for **Claims** covered under this Policy.

    1.  The **Company**, upon receipt of the **Insured's** written request for self-representation, shall have the right to consent to the **Insured's** self-representation for an entire **Claim** or any part thereof, including any particular stage in the proceedings.  The **Company** may revoke its consent at any stage in the proceedings.  The **Company's** consent shall not be unreasonably withheld, and its revocation shall not be unreasonably exercised.

    2.  If the **Company** consents to the **Insured's** request for self-representation, the **Insured** and the **Company** shall promptly agree in writing to the staffing requirements for each **Claim**, including the individual lawyers and staff to be assigned by the **Insured** for the defense of such **Claim**.

    3.  The **Insured** may apply its reasonable attorneys' fees and expenses incurred in self-representation against the **Retention**.  To the extent the **Retention** is exceeded, the **Company** shall reimburse the **Insured** for such fees and expenses in excess of the **Retention**.  The **Company** and the **Insured** agree that the billing rates to be used by the **Insured** during self-representation shall be no more than 75% of the **Insured's** normal billing rate applicable to the attorney(s) assigned to the **Claim**.

    The **Insured's** expenses and time, including any salary, wages, benefits, or overhead expenses, that are incurred in connection with a **Claim** in its capacity as the **Insured** (as opposed to the **Insured's** capacity as defense counsel), shall not apply against the **Retention**.  This includes, for example, the **Insured's** time and expense to cooperate with the **Company** to defend a covered **Claim**, as well as the time and expense of any attorney(s) or other employees of the **Insured** incurred as witnesses or as factual resources in the development, understanding and defense of the matters underlying the **Claim**.

    The **Company** shall have the right to review the fees and expenses incurred by the **Insured** in its self-representation to determine the amount properly applied against the **Retention**.

    4.  The **Company** may require and appoint a representative(s) to act as supervisory counsel for the **Claim**, who will manage each **Claim** on the **Company's** behalf in cooperation with the **Insured**.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 1 of 2
LP 1110 206 (09-11)

                                    Authorized Representative

5.  The **insured** shall designate a partner to act as a liaison with the **Company** on each self-represented **Claim**. This partner shall keep the **Company** regularly apprised of the status and developments of such **Claim(s)**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 2 of 2
LP 1110 206 (09-11)

Authorized Representative

**AXIS SURPLUS INSURANCE COMPANY**
111 S. Wacker Drive, Suite 3500, Chicago, Illinois 60606
(866) 259-5435

Endorsement No. 7

Effective date of this endorsement: 12:01 a.m. on August 22, 2016
To be attached to and form part of Policy Number: EBN 782641/01/2016
Issued to: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**UNDERWRITERS REPRESENTATIVE ENDORSEMENT – SHULMAN**

This endorsement modifies insurance provided under the following:

**AXIS PRO® LP LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed that **SECTION VI. GENERAL CONDITIONS, P. Notices,** is amended by the addition of the following at the end thereof:

> For the purposes of the notification of **Claims**, or facts or circumstances or **Wrongful Acts** which may subsequently give rise to a **Claim** under this Policy, notice provided to the firm of *Mendes & Mount, 750 Seventh Avenue, New York, NY 10019-6829* ("Underwriters Representative"), shall be considered to be notice to the **Company**. All responsibilities of the **Insured** to fully cooperate with the **Company** shall also apply with respect to the Underwriters Representative.

> It is further understood and agreed that the authority granted to the Underwriters Representatives by the **Company** is specifically limited to receiving notices as stated herein, and to collect from the **Insured** the information necessary to prepare summary reports of the **Claims** for the **Company**.

All other provisions remain unchanged.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement. If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 1 of 1
MANU

Authorized Representative



| Endorsement No. | Effective Date of Endorsement | Policy Number | Additional Premium |
|---|---|---|---|
| 8 | 12:01 a.m. on August 22, 2016<br>If the above date is blank, then this endorsement is effective on the effective date of the policy. | EBN 782641/01/2016 | N/A |

## PROFESSIONAL SERVICES AMENDATORY ENDORSEMENT

It is agreed that:

1.  **SECTION II. DEFINITIONS USED IN THIS POLICY, N. Professional Services** of the policy is amended by the addition of the following at the end thereof.

    Solely as respects David Pordy, **Professional Services** also means consulting services provided to others regarding:

    *   Strategic planning or other issues relating to firm growth;
    *   Leadership challenges, executive management functions or administrative operations;
    *   Practice development, growth and management;
    *   Issues concerning equitable compensation;
    *   Retiring partners and/or succession planning issues;
    *   Complicated formation issues and/or partnership disputes; and
    *   Associate management, motivation, retention and development, including "path to partnership" best practices;

    but only if such services are performed in the name or on behalf of the **Firm** and some or all of the fee, if any, accruing from such services (regardless of whether such fee is actually collected) inures to the benefit of the **Firm**.

All other provisions of the policy remain unchanged.

**AXIS SURPLUS INSURANCE COMPANY**
111 S. Wacker Drive, Suite 3500, Chicago, Illinois  60606
(866) 259-5435

Endorsement No. 9

Effective date of this endorsement:  12:01 a.m. on August 22, 2016
To be attached to and form part of Policy Number:  EBN 782641/01/2016
Issued to: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.

**This endorsement changes the policy.  Please read it carefully.**

### SERVICE OF SUIT CLAUSE

The Company hereby designates the Superintendent, Commissioner or Director of Insurance, or his/her designee, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or by any beneficiary under this Policy against the Company arising out of this Policy, provided that all lawful process received by said Superintendent, Commissioner or Director of Insurance, or his/her designee, is sent by certified or registered mail to the Company at:

AXIS U.S. Insurance
Attention:  Claims Administrator
11680 Great Oaks Way
Suite 500
Alpharetta, GA  30022



SOS-CW (08-03)

| Named Insured | | |
|---|---|---|
| Shulman, Rogers, Gandal, Pordy & Ecker, P.A. | | |
| **Policy Number** | **Policy Period** | **Issued by (Name of Insurance Company)** |
| EBN 782641/01/2016 | 8/22/16 – 8/22/17 | AXIS Surplus Insurance Company |

## DISCLOSURE REGARDING SURPLUS LINES INSURANCE.

**Please Read the Following Carefully Before Purchasing Insurance From a Surplus Lines Insurer.**

This policy is issued by a surplus lines insurer that has been approved by the Maryland Insurance Administration to issue insurance policies in the surplus lines insurance market. Surplus lines insurers are not under the jurisdiction of the Maryland Insurance Administration and do not possess a certificate of authority to transact insurance business in the State of Maryland. Because surplus lines insurers are not under the jurisdiction of the Maryland Insurance Administration, your ability to seek assistance from the State if you have a problem with your insurance company is limited.

Property and Casualty Insurance Guaranty Corporation and Maryland Life and Health Insurance Guaranty Corporation provide funds that permit certain claimants or policyholders to receive payment of covered claims if their insurance company becomes insolvent (i.e., bankrupt) and is unable to pay the claims. However, these funds do not apply to surplus lines insurers, as a surplus lines insurer is not a member insurer of the Property and Casualty Insurance Guaranty Corporation or the Maryland Life and Health Insurance Guaranty Corporation. If a surplus lines insurer becomes insolvent (i.e. bankrupt), any claim that you have against the surplus lines insurer will not be covered by the funds administered by Property and Casualty Insurance Guaranty Corporation and Maryland Life and Health Insurance Guaranty Corporation.

If you have any questions regarding this disclosure or surplus lines insurance, please contact the Maryland Insurance Administration at 410-468-2340.

SLN-MD (05-16)



**Endurance Pro**
750 3rd Avenue
New York, NY 10017

### MEMORANDUM OF INSURANCE
#### EFFECTED THROUGH
**ProQuest, a division of Alliant**

| | |
|---|---|
| **COMPANY'S NO.:** | LPL10005398002 |
| | **ANNUAL PREMIUM (100%): $291,094** |

**INSURED:** Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
and others as more fully described in the Co-Insuring AXIS Surplus Insurance Company
Policy No  EBN 782641/01/2016 (the "Co-Insuring Policy")

**ADDRESS:** 12505 Park Potomac Avenue, 6th Floor
Potomac, MD 20854

In accordance with your instructions we have effected insurance as follows:

**POLICY PERIOD:** 12:01 a.m. August 22, 2016 to 12:01 a.m. August 22, 2017

**LIMIT OF LIABILITY:**

| US$10,000,000 | each claim including costs, charges and expenses as more fully described in the Co-Insuring Policy |
| US$10,000,000 | in the aggregate including costs, charges and expenses as more fully described in the Co-Insuring Policy |

EXCESS OF  INSURED'S  RETENTION OF

| US$100,000 | each claim including reasonable costs, charges and expenses as more fully described in the Co-Insuring Policy |
| US$300,000 | in the aggregate including reasonable costs, charges and expenses as more fully described in the Co-Insuring Policy |
| US$50,000 | each claim thereafter including reasonable costs, charges and expenses as more fully described in the Co-Insuring Policy |

**PARTICULARS
OF INSURANCE:** LAWYERS PROFESSIONAL LIABILITY INSURANCE
Following the lead terms and conditions as outlined in the Co-Insuring Policy

**PARTICIPATION:** 50.00% part of 100.00%; i.e. US$0.50 part of each dollar of annual limit and premium
expressed hereon and of payments hereunder

**COMPANY'S PREMIUM:** $145,547.00
Exclusive of Excess and Surplus Lines Taxes & Fees

**INSURED WITH:** **Endurance American Specialty Insurance Company**
(the "Company")

*John P. Muller*

John P. Muller – V.P.                                                    September 26, 2016

---
Signature/Title of Authorized Representative of the Company         Date

This insurance is issued by a non-admitted insurer not under the jurisdiction of the Maryland Insurance
Commissioner  [Ins  s 3-308]
Surplus Lines Licensee:
Craig W. Howser
Alliant Insurance Services, Inc.
200 S. Wacker Drive, Suite 3030
Chicago, IL 60606
License #: 3380
MD Surplus Lines Tax: $4,366.41

ATTACHING TO AND FORMING PART MEMORANDUM OF INSURANCE NO.: **LPL10005398002**

The Company warrants that:

a.       This MEMORANDUM OF INSURANCE incorporates all terms set forth in Co-Insuring Policy on the identical subject matter and risk and is subordinate to the Co-Insuring Policy.  In the matters regarding claims, the Company will act on its own behalf in the investigation and defense of any claim.  The Company will also act on their own behalf with respect to the settlement of claims.

b.       This MEMORANDUM OF INSURANCE incorporates and is subordinate to any changes and endorsements to the Co-Insuring Policy, provided the Company consents to such changes and endorsements, such consent not be unreasonably withheld.

c.       Any changes of insurers or co-insurers, including incomplete placements, are permitted without notice but loss of coverage resulting from any incomplete placement is assumed by the INSURED and shall not cause the layer of coverage in which the Company participates to drop to a lower level of coverage or increase the participation of the Company in such layer of coverage.

 **ProSight**

This insurance is issued by a nonadmitted insurer not under the jurisdiction of the Maryland Insurance Commissioner."[Ins. s 3-308]

**LPL 00 03 0216**

Surplus Lines Licensee:
Craig W. Howser
Alliant Insurance Services, Inc. 200
S. Wacker Drive, Suite 3030
Chicago, IL 60606
License #: 3380
MD Surplus Lines Tax: $3,000.00

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

## CERTIFICATE OF INSURANCE

| | |
|---|---|
| **ASSURED** | The Named Insured, as noted above, and others as more fully described in the Primary Certificate. |
| **ADDRESS** | Shulman, Rogers, Gandal, Pordy & Ecker, P.A. 12505 Park Potomac Avenue, 6th Floor Potomac, MD 20854 |
| **ANNUAL PREMIUM** | $100,000 |
| **CERTIFICATE PERIOD** | In accordance with your instructions we have effected insurance as follows: August 22, 2016 to August 22, 2017, 12:01 a.m. both days (at the Insured's address stated above) |
| **SUM INSURED OR LIMIT OF INDEMNITY** | US $10,000,000 each and every claim and US $10,000,000 in the aggregate including costs, charges and expenses as more fully described in the co-insuring Certificate. **EXCESS OF:** US $10,000,000 each claim and US $10,000,000 in the aggregate including costs, charges and expenses as more fully described in the Primary Certificate. **EXCESS OF THE RETENTION:** US $100,000 each Claim, US $300,000 Aggregate and US $50,000 Maintenance, including costs, charges and expenses as more fully described in the Primary Certificate. |
| **PARTICULARS OF INSURANCE** | LAWYERS PROFESSIONAL LIABILITY INSURANCE Following the lead terms and conditions as outlined in Certificate Number: EBN 782641/01/2016 issued by AXIS Surplus Insurance Company (Non-Admitted) See Schedule of Forms and Endorsements |
| **INSURER'S PREMIUM** | US $100,000 (Annual) Exclusive of the Excess & Surplus Lines Taxes & Fees. |
| **INSURER'S PARTICIPATION** | 100% part of 100.00%; i.e. US $1 .00 part of each dollar US $ 1.00 of annual limit and premium expressed herein and of payments hereunder. |
| **INSURED WITH** | ProSight – Syndicate 1110 at Lloyd's (the "insurer") |

SIGNED FOR AND ON BEHALF OF THE INSURERS BY:

DATE:   September 19, 2016

© ProSight Specialty Insurance Group, Inc.

ATTACHING TO AND FORMING PART OF CERTIFICATE NUMBER: PL201600002300

The INSURER warrants that:

A. This CERTIFICATE OF INSURANCE incorporates and is subject to all terms set forth in the AXIS Surplus Insurance Company (Non-Admitted) Policy No. EBN 782641/01/2016 on the identical subject matter and risk and is subordinate to the Primary Certificate. In matters regarding claims, the INSURER will act exclusively through the representative or representatives designated by the Underwriters of the Primary Certificate, and will receive copies of initial and subsequent reports, but will act on their own behalf with respect to the settlement of claims.  The INSURER may, at its sole discretion and expense, elect to participate in the investigation, and defense of any claims which may result in payment under this Certificate regardless of whether the underlying insurance has been exhausted.

   Any claim and/or potential claim and any combination thereof, reported to the Primary Certificate, must also be reported contemporaneously to:

   Mendes & Mount LLP
   750 Seventh Avenue
   New York, NY 10019

B. This CERTIFICATE OF INSURANCE incorporates, and is subordinate to any changes and endorsements of the Primary Certificate provided the INSURER consents to such changes and endorsements, such consent not to be unreasonably withheld.

C. Any changes of insurers or co-insurers, including incomplete placements, are permitted without notice but loss of coverage resulting from any incomplete placement is assumed by the Insured and shall not cause the layer of coverage in which the Insurer participates to drop to a lower level of coverage or increases the participation of the Insurer in such layer of coverage.

D. In the event of the reduction or exhaustion of the sums insured of liability under the Primary Certificate and/or underlying Excess policies by reason of claims paid there under this CERTIFICATE OF INSURANCE shall:

   1. In the event of reduction, pay the excess of the reduced underlying sums insured;

   2. In the event of exhaustion, continue in force as primary insurance

provided always that in the latter event, this CERTIFICATE OF INSURANCE shall only pay the excess of the retention as provided in the Primary Certificate.

MLL 10 01 0513

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

It is hereby agreed that this endorsement is attached to and hereby made a part of this Certificate.

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Category | Form Number | Form Title |
|----------|-------------|------------|
| Mandatory | MLL 01 01 0515 | Lloyd's Certification |
| Mandatory | MLL PH 05 0314 | Service of Suits Clause |
| Mandatory | MLL PH 04 0514 | Several Liability Notice |
| Mandatory | MLL PH 08 0513 | Applicable Law (U.S.A.) |
| Mandatory | MLL PH 14 1213 | Radioactive Contamination and Explosive Nuclear Assemblies Exclusion Clause |
| Mandatory | MLL PH 12 0914 | War and Terrorism Exclusion Endorsement |
| Mandatory | MLL PH 13 0116 | Complaint Handling |
| Mandatory | MLL 45 02 0314 | Biological Or Chemical Materials Exclusion |
| Mandatory | MLL 45 09 0615 | Sanction Limitation and Exclusion Clause LMA3100 |

MLL 01 01 0515

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

It is hereby agreed that this endorsement is attached to and hereby made a part of this Certificate.

## LLOYD'S CERTIFICATION

**This is to certify** that in accordance with the authorization granted to the under-named (who administer this insurance on behalf of the Insurers) under a Declared Underwriting Agreement (the reference numbers of which are stated below) by certain syndicates at Lloyd's (herein the Insurers) whose definitive numbers and the proportions underwritten by them, which will be supplied on application, can be ascertained by reference to the said Agreement which bears the Seal of Lloyd's Policy Signing Office, and in consideration of the payment of the premium specified in the Schedule, the Insurers are hereby bound, severally and not jointly, their Executors and Administrators, to insure the person(s) stated in the Schedule for the Benefits specified.

Authorization granted to:                              ProSight Specialty Insurance Solutions, LLC.

Agreement Number:                                     71029R16A

Unique Market Reference:                              B088871029R16A

This contract is only valid when issued with a numbered and dated Schedule and is signed below.

Signed for and on behalf of the Insurers by:

Printed Name:                                         Robert Diziki

Acting as an agent of the Insurers:                   ProSight Syndicate 1110 at Lloyd's

Schedule of Insurers                                  Syndicate 1110 @ Lloyd's – 100%

**All other terms and conditions of this Certificate remain unchanged.**

MLL PH 05 0314

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

It is hereby agreed that this endorsement is attached to and hereby made a part of this Certificate.

## SERVICE OF SUIT CLAUSE (U.S.A.)

This Service of Suit Clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in any Arbitration provision within this Certificate. This Clause is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such Arbitration provision for resolving disputes arising out of this contract of insurance (or reinsurance).

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or any State in the United States.

It is further agreed that service of process in such suit may be made upon

> ProSight Syndicate 1110 at Lloyd's
> c/o ProSight Specialty Insurance Solutions, LLC
> 412 Mt Kemble Avenue #300C
> Morristown, NJ 07960

And that in any suit instituted against any one of them upon this contact, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

LMA5020
14/09/2005

**All other terms and conditions of this Certificate remain unchanged.**

MLL PH 04 0514

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

It is hereby agreed that this endorsement is attached to and hereby made a part of this Certificate.

## SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

LSW1001

**All other terms and conditions of this Certificate remain unchanged.**

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

It is hereby agreed that this endorsement is attached to and hereby made a part of this Certificate.

## APPLICABLE LAW (U.S.A.)

This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (U.S.A.).

**All other terms and conditions of this Certificate remain unchanged.**

© ProSight Specialty Insurance Group, Inc.

MLL PH 14 1213

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

## RADIOACTIVE CONTAMINATION AND EXPLOSIVE NUCLEAR ASSEMBLIES EXCLUSION CLAUSE

### (Approved by Lloyd's Underwriters Non-Marine Association)

This Policy does not cover

(a) loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising there from or any consequential loss

(b) any legal liability of whatsoever nature

directly or indirectly caused by or contributed to by or arising from

(i) ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel

(ii) the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof.

MLL PH 12 0914

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.    war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.    any act of terrorism.

      For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Insured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

MLL PH 13 0116

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

It is hereby agreed that this endorsement is attached to and hereby made a part of this Certificate.

## COMPLAINT HANDLING

All complaints must be referred in the first instance to the Legal, Compliance & Regulatory Department at ProSight Specialty Insurance Solutions, 412 Mt Kemble Avenue #300C Morristown, NJ 07960 800-774-2755 and ProSight Syndicate 1110 and, if they remain dissatisfied following ProSight's response, such complaints can be referred to Policyholder & Market Assistance, Lloyd's One Lime Street, London, EC3M 7HA, UK +44 (0)20 7327 5693 complaints@lloyds.com . If the complainant is dissatisfied with the Lloyd's final response and is eligible, complaints may then be referred to the Financial Ombudsman Service. Details of who is eligible to refer a complaint to the FOS can be found on their website at www.financial-ombudsman.org.uk

MLL 45 02 0314

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

## THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.

## BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

06/02/03

NMA2962

MLL 45 09 0615

NAMED INSURED: Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
EFFECTIVE DATE: August 22, 2016
CERTIFICATE NUMBER: PL201600002300

## THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.

### Sanction Limitation and Exclusion Clause LMA3100

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.



**Claims Reporting Procedure**

Please follow the reporting guidelines outlined in SECTION V. CLAIMS MADE CONDITIONS; EXTENDED REPORTING PERIOD of the lead AXIS policy wording. Notice of a claim or circumstance shall be given in writing as soon as practicable to the following:

> Mendes & Mount LLP
> 750 Seventh Avenue
> New York, NY 10019
>
> Attention:   Patrick Donohue, Esq.
> Email:         patrick.donohue@mendes.com

Please copy us where appropriate so that we may monitor the situation:

> Stephanie Hurwitz
> Vice President
> ProQuest a division of Alliant
> 140 East 45th Street, Suite 6B
> New York, NY 10017
> Email: shurwitz@alliant.com



## ProQuest | a division of *Alliant*

140 East 45ᵗʰ Street, Suite 6B
New York, NY 10017

200 S. Wacker Drive, Suite 3030
Chicago, IL 60606

| Representative | Title | Phone | E-Mail |
|---|---|---|---|
| Stuart Girling | Executive Vice President | 212-895-0290 | sgirling@alliant.com |
| Craig Howser | Executive Vice President | 312-930-1472 | chowser@alliant.com |
| Peter Vexter | Executive Vice President | 312-930-1474 | pvexter@alliant.com |
| Adnan Arain | Vice President | 312-546-5617 | aarain@alliant.com |
| Angela Fleege | Vice President | 312-930-1967 | afleege@alliant.com |
| Nate Stortzum | Vice President | 312-546-5628 | nstortzum@alliant.com |
| Stephanie Hurwitz | Vice President | 212-895-0291 | shurwitz@alliant.com |
| Ryan Bartley | Account Manager | 212-895-0267 | rbartley@alliant.com |
| Belki Rodriguez | Technical Assistant | 212-895-0292 | belki.rodriguez@alliant.com |

# EXHIBIT B

**\*\*Sealed Subject to Plaintiff's Petition to Seal Exhibit B to the Complaint and Demand for Jury Trial Filed Simultaneously with Complaint\*\***

# EXHIBIT B

**Sealed Subject to Plaintiff's Petition to Seal Exhibit B to the Complaint and Demand for Jury Trial Filed Simultaneously with Complaint**

# EXHIBIT C

 **SOMPO INTERNATIONAL**

March 12, 2021

**VIA E-MAIL**

Paul Butler, Esq.
Akin Gump Strauss Hauer 7 Feld, LLP
Robert S. Strauss Tower
2001 K. Street NW
Washington DC 20006-1037

E-mail: pbutler@akingump.com

| | | |
|---|---|---|
| Re: | Insured: | Shulman, Rogers, Gandal, Pordy & Ecker, P.A. (the "Firm") |
| | Insurer: | Endurance American Specialty Insurance Company ("Endurance") |
| | MOI No.: | LPL10005398002 |
| | Policy Period: | August 22, 2016 to August 22, 2017 |
| | Matter: | *United States of America v. Schulman*, No. 20-cr-00434 (D. Md.) |
| | Claim No.: | 10108155 |

Dear Mr. Butler:

I am the Claims Counsel handling the above-captioned matter (the "Indictment") on behalf of Endurance. Endurance is now a member of Sompo International Companies ("Sompo"). Sompo is responsible for handling claims on behalf of Endurance. Sompo and Endurance are collectively referred to herein as Sompo. Further to your prior communications with Underwriters' representatives at Mendes & Mount, this letter is intended to provide Mr. Schulman with Sompo's views regarding the availability of coverage for the Indictment under the above-referenced Memorandum of Insurance, which incorporates the terms and conditions of the Co-Insuring Policy issued by AXIS Surplus Insurance Company (collectively, the "Policy"). If there is anyone else to whom we should direct a copy of this letter, please let us know.

Based upon the currently available information, Sompo has determined that the Policy affords no coverage for the Indictment because the Indictment does not constitute a Claim as defined by the Policy, which is limited in pertinent part to civil rather than criminal proceedings. Other terms and conditions of the Policy may limit or bar coverage. The reasons supporting Sompo's determination are set forth below. If there is any additional information that you would like for Sompo to consider in connection with its assessment of coverage for this matter, please forward it to my attention.

**I.    The Indictment**

The Indictment was filed on December 2, 2020. Sompo appreciates that Mr. Schulman disputes the allegations contained in the Indictment, and by summarizing them here for purposes of reviewing the available coverage, Sompo does not intend to endorse those allegations or imply their validity.

**Endurance Services Limited**
*A wholly owned subsidiary of Sompo International Holdings Ltd.*
4 Manhattanville Road, 3rd Floor, Purchase, NY 10577, U.S
+1 914 468 8000

www.sompo-intl.com

 **SOMPO INTERNATIONAL**

According to the government, between July 2009 and 2014, Mr. Schulman, Abdiaziz Hassan Amalo, and other unnamed coconspirators "attempted to and did fraudulently obtain control over money and gold that was the property of the Central Bank of Somalia. These Somali sovereign assets, worth hundreds of millions of dollars, were held in accounts that had been frozen since approximately 1991 due to civil war and political instability in Somalia." Indictment ¶ 21. The government charges that Mr. Schulman and others engaged in a scheme "in which they attempted to unfreeze the accounts and take control of the accounts based on fraudulent, material misrepresentations about their authority to act on behalf of the Somali government." *Id.* Mr. Schulman and Amalo allegedly "created a series of forgeries and false documents" which were presented to financial institutions and permitted them to "obtain[] control over $12.5 million of Somali foreign assets between July 2010 and July 2014." *Id.* ¶ 22.

As charged in the indictment, "Schulman, Amalo and others agreed to enrich themselves from the scheme to defraud by taking a portion of these fraudulently obtained assets in fees and commissions before sending the remainder to the Somali government." *Id.* ¶ 23. The Firm allegedly retained "approximately $3.3 million of the Somali funds for fees and expenses," *id.*, and recognized $1.9 million of this amount as revenue to the Firm, while Mr. Schulman's compensation for 2013 allegedly increased by $400,000 over 2012. *Id.* ¶ 58.

As set forth in the Indictment, Amalo allegedly knew the former Governor of Somali's central bank, and based on that relationship he and Mr. Schulman allegedly agreed that "Schulman would hold himself out as representing the Transitional Government of Somalia . . . and that [the Firm] would be paid a percentage of the Frozen Somali Assets that it recovered before returning the balance of the funds to the Somali government." *Id.* ¶ 29. In addition to the 2009 engagement between the Firm and Amalo, in July 2013, the Firm "execute[d] a contract with Former Governor 3," (who served as the Governor of Somalia's central bank from February 2013 to September 2013) under which the Firm would receive a fixed fee, as well as a sliding scale bonus of all assets recovered, plus reimbursement of costs. *Id.* ¶ 46.

Mr. Schulman is charged with conspiracy to commit mail, wire, and bank fraud; three counts of wire fraud; bank fraud; mail fraud; conspiracy to commit money laundering; and four counts of money laundering. The government seeks asset forfeiture in an amount equal to the proceeds allegedly obtained by Mr. Schulman as a result of the offenses.

## II.   Coverage Analysis

### A.   The Policy

Although the Indictment was filed outside of the Policy Period, the Firm and Mr. Schulman previously reported receipt of a subpoena from the U.S. Department of Justice during the Policy Period. To the extent that the subpoena and Indictment constitute Claims as defined by the Policy (which Sompo respectfully disputes), they arise from the same Wrongful Act or Interrelated Wrongful Acts[1] and are deemed to have been made at the time of the subpoena, during the 2016-2017 Policy Period. *See* Policy, Section V.D. Alternatively, if the Insureds' notice of the subpoena were

---

[1]     As defined by the Policy, "**Interrelated Wrongful Acts**" means any or all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes." Policy, Section II.J.

 **SOMPO INTERNATIONAL**

deemed written notice of circumstances which could give rise to a Claim, because the Indictment arises from such circumstances, to the extent that it constitutes a Claim, the Indictment shall be considered to have been made during the 2016-2017 Policy Period when the circumstances were reported. *Id.*, Section V.B. In either event, the terms and conditions of the 2016-2017 Policy govern the extent of available coverage for the Indictment.

Endurance issued Memorandum of Insurance No. LPL10005398002 to the Firm for the Policy Period from August 22, 2016 to August 22, 2017. Endurance MOI at 1. The Policy contains a Limit of Liability of $5 million per Claim and in the aggregate (representing Endurance's 50% quota share of total limits of $10 million), subject to a per Claim Retention of $100,000. *Id.* The Memorandum of Insurance "incorporates all terms set forth in [the] Co-Insuring Policy on the identical subject matter and risk and is subordinate to the Co-Insuring Policy," which is identified as AXIS PRO® LP Lawyers Professional Liability Insurance Policy No. EBN 782641/01/2016 issued by AXIS Surplus Insurance Company. *Id.* at 1 & 2 ¶ a. The Endurance coverage therefore applies in the same manner as the AXIS policy. Subject to all its terms and conditions, the Policy provides specified coverage for "all **Loss**, in excess of the applicable **Retention**, resulting from **Claims** for **Wrongful Acts** committed before the expiration of the **Policy Period** that are first made against any **Insured** during the **Policy Period**." *Id.*, Section I.A. Coverage available under the Policy applies only in conformance with all its terms, conditions, and endorsements, as discussed further below.

Insured Individuals to whom the Policy applies include, in relevant part, "any one or more natural persons who are past, present or future: . . . directors, officers, principals, shareholders, partners, or members of the **Firm**, or their functional equivalent if serving in such a position outside the United States." Policy, Section II.I.1. Based upon the available information, we understand that as a former partner of the Firm, Mr. Schulman constitutes an "Insured Individual" covered under the Policy.

    B.    <u>The Indictment Does Not Constitute a Claim.</u>

As a threshold requirement for coverage, the Policy's Insuring Clause requires that there be a Claim for Wrongful Acts made against an Insured. Policy, Section I.A. The Policy defines "Claim" as follows:

        1.  any of the following:

           a.  a written demand against any Insured for monetary or non-monetary relief;

           b.  a civil proceeding against any Insured commenced by the service of a complaint or similar pleading;

           c.  a written demand for arbitration or mediation;

           d.  a formal civil administrative or civil regulatory proceeding against any Insured, including, but not limited to, a Disciplinary Proceeding, commenced by the filing of a notice o[f] charges or similar document or by the entry of a formal order of investigation or similar document;

 SOMPO INTERNATIONAL

2.  a written request received by an Insured to toll or waive a statute of limitations related to a matter described in subparagraph 1. above.

*Id.*, Section II.B.

The Indictment does not fall within the definition of Claim, as none of the definition's subparts address criminal proceedings. The proceedings that constitute a Claim are all civil in nature: "a *civil* proceeding" commenced by a complaint, "a formal *civil* administrative . . . proceeding," and a "*civil* regulatory proceeding." *Id.* (emphasis added). Likewise, a Disciplinary Proceeding encompassed by a Claim means "a formal investigation proceeding regarding the Insured's adherence to professional standards of conduct before a court, state licensing board, peer review committee, bar association, or other regulatory body," *id.*, Section IIF., and comprise a subset of the *civil* administrative or regulatory proceedings set forth in the Claim definition. Nor does the Indictment, as a document charging criminal offenses, constitute a "written demand . . . for monetary or non-monetary relief," "a written demand for arbitration or mediation," or a written request to toll or waive a statute of limitations. The Claim definition contains no reference to criminal proceedings of any kind. Accordingly, the Indictment does not constitute a Claim and therefore does not trigger coverage under the Policy's Insuring Clause.

## C.   Reservation of Rights

Although no coverage is available because the Indictment does not constitute a Claim, other terms and conditions of the Policy could also bar or limit coverage, and Sompo would like to bring these to the Insured's attention as well.

*First*, the Insuring Clause requires that covered Loss must result from "**Claims** for **Wrongful Acts**." "Wrongful Act" means, in relevant part, "any actual or alleged . . . act, error or omission"; "breach of contract for **Professional Services**"; or "breach of fiduciary duty," in each case, when committed "solely in the performance of or failure to perform **Professional Services**." *Id.*, Section II.P. "Professional Services" in turn are defined in relevant part as "services provided to others by an **Insured** . . . in the conduct of any business by or on behalf of the **Firm** in its professional capacity as an attorney or notary public" or "as a government affairs advisor or lobbyist," "but only if such services are performed in the name or on behalf of the **Firm** and some or all of the fee, if any, accruing from such services . . . inures to the benefit of the **Firm**." *Id.*, Section II.N. Here, the Indictment alleges the commission of criminal conduct inconsistent with and foreign to an attorney's duties in the performance of legal services. Sompo reserves all rights with respect to whether the Indictment, even if it constituted a Claim in the first instance, is "for **Wrongful Acts**" committed by Mr. Schulman in an insured capacity.

*Second*, potentially covered "Loss" encompasses "amount(s) which the **Insureds** become legally obligated to pay on account of a **Claim**, including damages, judgments, any award of pre-judgment or post-judgment interest, settlement amounts, costs and fees awarded pursuant to judgments, and **Claim Expense**." *Id.*, Section II.K. However, "**Loss** does not include," among other things, "taxes, fines, penalties or sanctions imposed by law against an **Insured**"; "return, withdrawal, forgiveness or reduction of any fees or receivables paid to, or charged or chargeable by, an **Insured**"; "the cost of compliance with an injunction or any other non-monetary relief"; or "any other matters uninsurable under the law applicable to this policy." *Id.* Sompo reserves the right to decline coverage for any amounts that do not constitute

 **SOMPO INTERNATIONAL**

"Loss" within the meaning of the Policy, amounts that do not give rise to a financial detriment that is covered by insurance, including amounts to which any Insured was not legally entitled, and amounts that are uninsurable under applicable law.

***Third***, the Policy provides that it does not apply to any Claim

> based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:
>
> a.  the gaining of any profit, remuneration, or advantage to which the **Insured** was not legally entitled; or
>
> b.  any criminal, dishonest, malicious or deliberately fraudulent act, error or omission by an **Insured**;
>
> if evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or written admission by an **Insured**.
>
> No fact pertaining to, knowledge possessed by or conduct by an **Insured Individual** shall be imputed to any other **Insured Individual**.

*Id.*, Section IV.10. Sompo respectfully reserves all rights under this provision.

***Finally***, the Policy contains the following subrogation clause:

> In the event of any payment under this policy, the **Company** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery including rights against other **Insureds**, and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Company** effectively to bring suit in the name of the **Insureds**.  The **Insured** will do nothing to prejudice such rights.  Any recoveries shall be applied as follows:
>
> 1.  First, to the **Company** up to the amount the **Company** has paid for **Loss**;
>
> 2.  Then, to the **Firm** as recovery of **Retention** amounts paid as **Loss**.

Policy, Section VI.I. Sompo reserves all of its subrogation rights.

*     *     *     *     *

 **SOMPO INTERNATIONAL**

In closing, we note that the information currently available to Sompo is preliminary and may be incomplete. As additional information becomes available to the Sompo, other terms, conditions or exclusions may be implicated. In the interim, this letter, as well as all past, present, and future communications, is sent subject to a complete reservation of all of Sompo's rights under the Policy and at law.

If you have any questions regarding this letter, please feel free to contact me.

Sincerely,

*Melissa Demmon*

Melissa S. Demmon
Vice President, Claims Counsel