## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JEREMY W. SCHULMAN,<br><br>                **Plaintiff,**<br><br>**vs.**<br><br>**AXIS SURPLUS INSURANCE COMPANY, ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, and PROSIGHT SYNDICATE 1110 AT LLOYD'S,**<br><br>                **Defendants.** | Civil Action No.: 8:21-cv-1252 -PWG<br><br>Judge Paul W. Grimm |

## DEFENDANT PROSIGHT SYNDICATE 1110 AT LLOYD'S' ANSWER TO PLAINTIFF'S COMPLAINT WITH AFFIRMATIVE DEFENSES

Defendant ProSight Syndicate 1110 at Lloyd's ("ProSight"), by and through its undersigned counsel, hereby answers Plaintiff's Complaint and asserts its Affirmative Defenses as follows:

## NATURE OF THE ACTION

1.      Admitted in part; denied in part. It is admitted only that Plaintiff demands nearly $20 million and other declaratory relief. The remaining allegations, including Plaintiff's characterization of the carriers' respective obligations under the subject policies and the "subsequent agreement", to which ProSight was not a party, and Plaintiff's characterization of the parties' conduct, are denied.

2.      Admitted in part; denied in part. It is admitted only that the policies provided a total limit of $20 million in professional liability insurance to the law firm of Schulman, Rogers, Gandal, Pordy & Ecker, PA, with the primary layer carrying a $10 million limit co-insured by Axis and

Endurance, and an excess layer carrying a $10 million limit under ProSight's excess policy. Plaintiff's characterization of the policies and the carriers' duties under same are denied. The policies contain the complete terms and limitations of coverage and are documents with content and language that speaks for itself.

3.     Denied.

4.     Denied. ProSight denies paragraph four (4) of the Complaint to the extent the allegations are not directed at ProSight. To the extent a response is required, the allegations are denied. By way of further response, ProSight denies any acceptance, acknowledgment, consent, guarantee or promise, and further denies Plaintiff's characterization of same.

5.     Denied. ProSight denies paragraph five (5) of the Complaint to the extent the allegations are not directed at ProSight. To the extent a response is required, the allegations are denied.

6.     Admitted in part; denied in part. It is admitted only that the criminal indictment is not a "Claim" as "Claim" is defined under the policies and that therefore the policies do not afford coverage to Plaintiff in connection with the indictment. ProSight denies the allegations in paragraph six (6) of the Complaint to the extent they are not directed at ProSight, and therefore ProSight need not respond. To the extent a response is required, the remaining allegations are denied. By way of further response, ProSight denies that it was a party to any "subsequent second agreement".

7.     Denied. ProSight denies Plaintiff's characterizations and allegations in paragraph seven (7) of the Complaint. By way of further response, assuming *arguendo* the policies afforded coverage to Plaintiff, which ProSight denies, ProSight, as excess carrier, owed no duty, and still owes no duties to Plaintiff under the policies as ProSight's excess layer has not been triggered. It

is also denied that ProSight was party to any agreement to pay any fees, expenses, or defense costs. The remaining allegations are denied and denied as conclusions of law to which no response is required.

8.      Denied. ProSight denies the allegations in paragraph eight (8) of the Complaint to the extent they make no allegations against it. To the extent the allegations are directed at ProSight, the allegations are denied. By way of further response, ProSight denies that Plaintiff is entitled to his requested relief.

## PARTIES AND RELEVANT NON-PARTIES

9. – 10.   Admitted, based on information and belief, that Plaintiff is an individual domiciled in Maryland and a former equity partner of the insured law firm with its head office located in Potomac, Maryland.

11. – 12.  Denied. ProSight need not respond to the allegations in paragraphs 11 and 12 of the Complaint as they are not directed at ProSight. To the extent a response is required, the allegations are denied.

13.      Denied as stated. Defendant ProSight Syndicate 1110 at Lloyd's is an insurance syndicate comprised of two corporate members, both of which are foreign corporations organized, incorporated, and with their principal places of business in the United Kingdom. ProSight, as the insurance syndicate, issued the Certificate of Insurance to the insured law firm.

14.      Denied as conclusions of law to which no response is required and denied as stated. The Policies contain content and language that speaks for itself.

## JURISDICTION AND VENUE

15. – 18.   Denied as conclusions of law to which no response is required.

## FACTUAL BACKGROUND

## A. THE POLICIES

19. – 34.   Admitted in part; denied as stated. Axis, Endurance and ProSight provided a total limit of $20 million in claims-made professional liability insurance coverage to the law firm of Schulman, Rogers, Gandal, Pordy & Ecker, PA, pursuant to their respective policies issued to the insured law firm and for the Policy Period of August 22, 2016 to August 22, 2017. Axis and Endurance, sometimes collectively referred to herein the "Primary Carriers", co-insured the primary layer of coverage with primary limit of $10 million pursuant to Axis Pro LP Lawyers Professional Liability Insurance Policy No. EBN 782641/01/2016 and Endurance Memorandum of Insurance No. LPL10005398002. Pursuant to ProSight's Certificate of Insurance No. PL20160002300, the limit on ProSight's excess layer of coverage was $10 million, excess of the primary layer. It is admitted that the Axis Policy, the Endurance Memorandum of Insurance, and the ProSight Certificate of Insurance (collectively the "Policies") are attached to Plaintiff's Complaint as Exhibit A. The Policies are documents with content and language that speaks for itself, and ProSight refers to the Policies for same. To the extent the allegations in paragraphs 19 through 34 of the Complaint are inconsistent with the Policies, the allegations are denied.

35.   Denied. The Policies contain content and language that speaks for itself.

36. – 40.   Denied. The Policies are documents with content and language that speaks for itself, and ProSight refers to the Policies for same. To the extent the allegations in paragraphs 36 through 40 of the Complaint are inconsistent with the Policies, the allegations are denied. By way of further response, the ProSight Policy follows the lead terms and conditions as outlined in the Primary Policy and incorporates and is subordinate to any changes and endorsements of the Primary Policy provided ProSight consents to any such changes and endorsements, and consent is not unreasonably withheld.

### B. THE UNDERLYING INVESTIGATION, SUBPOENA, AND RESULTING INDICTMENT

41.     Denied. ProSight denies paragraph 41 of the Complaint as it makes no allegations against it. To the extent a response is required, after reasonable investigation, ProSight is without knowledge or information sufficient to form a belief as to the truth of the averment; therefore, same is denied.

42.     Admitted in part; denied in part. It is denied that a notice and subpoena is attached to the Complaint as Exhibit B. Exhibit B attached to the Complaint states that the document is "Sealed Subject to Plaintiff's Petition to Seal Exhibit B to the Complaint and Demand for Jury Trial Filed Simultaneously with Complaint". It is denied that such a petition was filed. The remaining allegations in paragraph 42 are admitted based on information and belief.

43. – 45.   Denied. Allegations regarding the nature of information and documents sought via the Subpoena are denied as ProSight is, after reasonable investigation, without knowledge or information sufficient to form a belief as to the truth of same. Plaintiff's characterizations are denied to the extent they are inconsistent with the Subpoena. ProSight denies the remaining allegations in paragraphs 43 through 45 of the Complaint as they make no allegations against it, and no response is required. To the extent a response is required, after reasonable investigation, ProSight is without knowledge or information sufficient to form a belief as to the truth of the allegations; therefore, the allegations are denied.

46. – 52.   Admitted in part; denied in part. It is admitted that the Department of Justice returned a criminal indictment against Plaintiff and that the indictment is captioned *United States of America v. Schulman*, Criminal No. PX 20-cr-434 (D. Md.) (the "Indictment"). It is denied that the Indictment is attached to the Complaint as Exhibit C. Plaintiff's characterization and

allegations regarding the content of the Indictment are denied to the extent they are inconsistent with the Indictment, which contains content and language that speaks for itself.

### C. THE PRIMARY CARRIERS' ACKNOWLEDGEMENT OF DEFENSE COVERAGE AND AGREEMENT TO PAY

53.    Denied. After reasonable investigation, ProSight is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the Complaint; therefore, same are denied.

54.    Denied. After reasonable investigation, ProSight is without knowledge or information sufficient to form a belief as to whether the firm reported receipt of the Subpoena to ProSight; therefore, the allegations are denied. The remaining allegations, including Plaintiff's characterization of the reporting, are denied. By way of further response, ProSight denies that the Subpoena constitutes a "Claim" as it is defined in the Policies.

55.    Denied. After reasonable investigation, ProSight is without knowledge or information sufficient to form a belief as to the truth of allegations in paragraph 55 of the Complaint; therefore, the allegations are denied. ProSight also denies the allegations in paragraph 55 of the Complaint as they make no allegations against it.

56.    Denied. After reasonable investigation, ProSight is without knowledge or information sufficient to form a belief as to the truth of allegations in paragraph 56 of the Complaint; therefore, the allegations are denied. ProSight also denies the allegations in paragraph 56 of the Complaint as they make no allegations against it. By way of further response, ProSight never agreed to reimburse defense fees or pay reasonable expert fees or any other costs as alleged.

57.    Denied. ProSight denies the allegations in paragraph 57 of the Complaint as they make no allegations against it. To the extent a response is required, the allegations are denied, based on information and belief. The allegations are also denied to the extent the allegations are

intended to suggest that ProSight was obligated "to provide any reservation of rights or objection respecting his [Plaintiff's] defense retention". Plaintiff's characterization of his response to the Subpoena is also denied.

58.     Denied. ProSight denies that Plaintiff sought a direct line of communication with ProSight. ProSight denies the remaining allegations in paragraph 58 of the Complaint as they make no allegations against it. To the extent the allegations are directed to ProSight, after reasonable investigation, ProSight is without knowledge or information sufficient to form a belief as to the truth of the allegations; therefore, the allegations are denied.

59. – 64.   Admitted in part; denied in part. ProSight denies paragraphs 59 through 64 of the Complaint as they contain no allegations against ProSight. To the extent a response is required, it is admitted, based on information and belief, that the Primary Carriers wrote to Plaintiff by two letters dated June 22, 2017. Plaintiff's characterization of the letters is denied. The letters are documents with content and language that speaks for itself, and any allegations inconsistent with the content and language of the letters is denied. By way of further response, it is denied that any communications were to, from, or on behalf of ProSight.

D. **THE PRIMARY CARRIERS' BASELESS REPUDIATION AND CONTINUED FAILURE TO HONOR THE POLICIES AND THEIR DEFENSE COVERAGE OBLIGATION**

65. – 73.   Denied. ProSight denies paragraphs 65 through 73 of the Complaint as they contain no allegations against ProSight. To the extent a response is required, the allegations are denied. By way of further response, at no time material hereto has ProSight owed any duties to Plaintiff in connection with the Subpoena or the Indictment.

74.     Denied. ProSight denies paragraph 74 of the Complaint as it contains no allegations against ProSight. The allegations are otherwise denied as conclusions of law to which no response

is required. To the extent a response is required, the allegations are denied. By way of further response, it is denied that the Indictment constitutes a "Claim" as "Claim" is defined under the Policies.

75.     Denied. ProSight denies paragraph 75 of the Complaint as it contains no allegations against ProSight. To the extent a response is required, the allegations are denied.

## COUNT I

### (Breach of Contract – Duty to Pay Claims Expense Against the Primary Carriers)

76.     ProSight hereby incorporates by reference its above answers to paragraphs one (1) through seventy-five (75) of the Complaint as if fully set forth at length.

77. – 90.   Denied. ProSight denies paragraphs 77 through 90 of the Complaint as they make no allegations against it. The allegations are otherwise denied as conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further response, ProSight denies that the Policies afford coverage to Plaintiff in connection with the Subpoena and Indictment.

**WHEREFORE,** Defendant ProSight Syndicate 1110 at Lloyd's demands judgment in its favor and against Plaintiff, including an order dismissing Plaintiff's action in its entirety and awarding ProSight such fees, costs and any other relief this Honorable Court deems just.

## COUNT II

### (Breach of Contract – Advancement Agreement Against the Primary Carriers)

91.     ProSight hereby incorporates by reference its above answers to paragraphs one (1) through ninety (90) of the Complaint as if fully set forth at length.

92. – 100.     Denied. ProSight denies paragraphs 92 through 100 of the Complaint as they make no allegations against it. The allegations are otherwise denied as conclusions of law to

which no response is required. To the extent a response is required, the allegations are denied. By way of further response, ProSight was not a party to any "advancement agreement", Plaintiff's characterizations of which are denied.

WHEREFORE, Defendant ProSight Syndicate 1110 at Lloyd's demands judgment in its favor and against Plaintiff, including an order dismissing Plaintiff's action in its entirety and awarding ProSight such fees, costs and any other relief this Honorable Court deems just.

## COUNT III

### (Anticipatory Breach of Contract Against All Carriers)

101.    ProSight hereby incorporates by reference its above answers to paragraphs one (1) through one hundred (100) of the Complaint as if fully set forth at length.

102.    Denied as a conclusion of law to which no response is required.

103.    Denied as a conclusion of law to which no response is required. To the extent a response is required, ProSight was not a party to any "advancement agreement". Plaintiff's characterizations of the "advancement agreement", including the terms of same, are also denied.

104.    Denied as a conclusion of law to which no response is required.

105.    Denied. After reasonable investigation, ProSight is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105; therefore, the allegations are denied.

106.    Denied. The allegations in paragraph 106 of the Complaint are denied and are otherwise denied as conclusions of law to which no response is required. By way of further response, it is denied that the Subpoena and the Indictment constitute a covered "Claim". The Policies contain the complete terms and limitations of coverage and are documents with content

and language that speaks for itself. It is denied that the Policies afford coverage in connection with the Subpoena and Indictment.

107.    Denied. The allegations in paragraph 107 of the Complaint are denied and are otherwise denied as conclusions of law to which no response is required. By way of further response, it is denied that Plaintiff is entitled to coverage under the Policies in connection with the Subpoena and Indictment. The Policies contain the complete terms and limitations of coverage and are documents with content and language that speaks for itself.

108.    Denied. ProSight denies paragraph 108 of the Complaint as it makes no allegations against ProSight. The allegations are otherwise denied as conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further response, ProSight was not a party to any "advancement agreement", Plaintiff's characterizations of which are denied.

109.    Denied. The allegations in paragraph 109 of the Complaint are denied and are otherwise denied as conclusions of law to which no response is required.

110.    Denied. The allegations in paragraph 110 of the Complaint are denied and are otherwise denied as conclusions of law to which no response is required. By way of further response, it is denied that Plaintiff is entitled to coverage under the Policies in connection with the Subpoena and Indictment. The Policies contain the complete terms and limitations of coverage and are documents with content and language that speaks for itself.

111.–112.    Denied. ProSight denies paragraphs 111 and 112 as they make no allegations against it.

113.    Admitted in part; denied in part. It is admitted that ProSight has not provided its coverage position. By way of further response, assuming *arguendo* the Policies afforded coverage

to Plaintiff in connection with the Subpoena and Indictment, ProSight's excess layer has not been triggered; thus, ProSight still would not owe any obligations under the Policies. The remaining allegations in paragraph 113 of the Complaint are denied as conclusions of law to which no response is required.

114.– 115. Denied as conclusions of law to which no response is required and otherwise denied. By way of further response, ProSight owes no duty to provide defense and indemnity coverage in connection with the Subpoena and Indictment. The Policies contain the complete terms and limitations of coverage and are documents with content and language that speaks for itself.

**WHEREFORE,** Defendant ProSight Syndicate 1110 at Lloyd's demands judgment in its favor and against Plaintiff, including an order dismissing Plaintiff's action in its entirety and awarding ProSight such fees, costs and any other relief this Honorable Court deems just.

## COUNT IV

### (Declaratory Relief Against All Carriers)

116.    ProSight hereby incorporates by reference its above answers to paragraphs one (1) through one hundred fifteen (115) of the Complaint as if fully set forth at length.

117.    Denied as a conclusion of law to which no response is required.

118.    Denied as a conclusion of law to which no response is required.

119.– 120.       Denied. ProSight denies paragraphs 119 and 120 to the extent they make no allegations against ProSight. To the extent the allegations are directed at ProSight, the allegations are denied as conclusions of law to which no response is required and are otherwise denied. After reasonable investigation, ProSight is without knowledge or information sufficient to form a belief as to whether notice of the Subpoena and Indictment were provided to ProSight; therefore, to this extent, the allegations are denied.

120. – 132. ProSight denies paragraphs 120 through 132 to the extent they make no allegations against ProSight. To the extent the allegations are directed at ProSight, the allegations are denied as conclusions of law to which no response is required and are otherwise denied. After reasonable investigation, ProSight is without knowledge or information sufficient to form a belief as to whether notice of the Subpoena and Indictment were provided to ProSight; therefore, to this extent, the allegations are denied. By way of further response, ProSight owes no duty to provide defense and indemnity coverage in connection with the Subpoena and Indictment. The Policies contain the complete terms and limitations of coverage and are documents with content and language that speaks for itself. In short, Plaintiff's purported losses are not covered under the terms of the Policies.

**WHEREFORE,** Defendant ProSight Syndicate 1110 at Lloyd's demands judgment in its favor and against Plaintiff, including an order dismissing Plaintiff's action in its entirety and awarding ProSight such fees, costs and any other relief this Honorable Court deems just.

## COUNT V

### (Detrimental Reliance Against the Primary Carriers)

133.     ProSight hereby incorporates by reference its above answers to paragraphs one (1) through one hundred thirty-two (132) of the Complaint as if fully set forth at length.

134. – 141.      Denied. ProSight denies paragraphs 134 through 141 of the Complaint as they make no allegations against it. The allegations are otherwise denied as conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

**WHEREFORE,** Defendant ProSight Syndicate 1110 at Lloyd's demands judgment in its favor and against Plaintiff, including an order dismissing Plaintiff's action in its entirety and awarding ProSight such fees, costs and any other relief this Honorable Court deems just.

## COUNT VI

### (Lack of Good Faith Against the Primary Carriers)

142.    ProSight hereby incorporates by reference its above answers to paragraphs one (1) through one hundred forty-one (141) of the Complaint as if fully set forth at length.

143. – 152.    Denied. ProSight denies paragraphs 143 through 152 of the Complaint as they make no allegations against it. The allegations are otherwise denied as conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

**WHEREFORE,** Defendant ProSight Syndicate 1110 at Lloyd's demands judgment in its favor and against Plaintiff, including an order dismissing Plaintiff's action in its entirety and awarding ProSight such fees, costs and any other relief this Honorable Court deems just.

## PROSIGHT'S AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim, in whole or in part, upon which relief may be granted in Plaintiff's favor.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to allege facts that would give rise to coverage under the Policies.

### THIRD AFFIRMATIVE DEFENSE

ProSight incorporates by reference all terms, conditions, and limitations, including exclusions, stated in the Policies, as if fully set forth at length herein.

### FOURTH AFFIRMATIVE DEFENSE

The Policies do not afford coverage to Plaintiff in connection with the Subpoena or the Indictment as neither the Subpoena nor the Indictment are a "Claim" and as Plaintiff is not exposed to any "Loss" resulting from a "Claim" as those terms are defined.

### FIFTH AFFIRMATIVE DEFENSE

The Policies do not afford coverage to Plaintiff as the Indictment alleges the commission of criminal conduct inconsistent with "Professional Services".

### SIXTH AFFIRMATIVE DEFENSE

The Primary Policy's Insuring Agreement provides, in part, as follows:

**SECTION I. INSURING AGREEMENT**

**A. Insuring Clause**

The **Company** will pay on behalf of the **Insureds** all **Loss**, in excess of the applicable **Retention**, resulting from **Claims** for **Wrongful Acts** committed before the expiration of the **Policy Period** that are first made against any **Insured** during the **Policy Period** or the Extended Reporting Period, if exercised.

**B. Defense and Settlement**

1. It shall be the **Insured's** duty to investigate, defend, and select counsel to defend a covered **Claim** made against the **Insured** alleging a **Wrongful Act**. However:

   \*      \*      \*

   b. The **Company** shall have the right and opportunity to approve in writing the **Insured's** selection of counsel prior to retention of such counsel to defend a covered **Claim** and to require the **Insured** to revoke such counsel's appointment. . . .

2. The **Insureds** shall not settle any **Claim**, incur any **Claim Expense**, admit or assume any liability, stipulate to any judgment, or otherwise assume any contractual obligation, without the **Company's** prior written consent, which shall not be unreasonably withheld. The **Company** shall not be liable for any settlement, **Claim**

**Expense**, assumed obligation, admission or stipulated judgment to which it has not consented or for which the **Insureds** are not legally obligated. . . .

3. The **Company** will, upon written request, pay **Claim Expense** owed under this policy on a current basis. Except for **Claim Expense** paid in accordance with this paragraph, the **Company** will have no obligation to pay any **Loss** before the final disposition of a **Claim**.

## SEVENTH AFFIRMATIVE DEFENSE

The Primary Policy includes, among others, the following pertinent definitions:

B. **Claim** means:

1. any of the following:

   a. a written demand against any **Insured** for monetary or non-monetary relief;

   b. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

   c. a written demand for arbitration or mediation;

   d. a formal civil administrative or civil regulatory proceeding against any **Insured**, including, but not limited to, a **Disciplinary Proceeding**, commenced by the filing of a notice or charges or similar document or by the entry of a formal order of investigation or similar document;

                          *       *       *

A **Claim** will be deemed to have been first made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand or request, when such demand or request is first received by an **Insured**).

C. **Claim Expense** means reasonable and necessary legal fees and expenses (other than regular or overtime wages, salaries, fees, benefits, or other compensation of the **Insured Individuals** or the **Firm's** overhead expenses) incurred by or on behalf of the **Insured** in defending, settling, appealing or investigating **Claims**, and the premiums for appeal, attachment or similar bonds. The **Company**, however, shall have no obligation to apply for or furnish such bonds.

                          *       *       *

**J.  Interrelated Wrongful Acts** means any or all **Wrongful Acts** that have as a common nexus any fact, circumstances, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

**K.  Loss** means the amount(s) which the **Insureds** become legally obligated to pay on account of a **Claim**, including damages, judgments, any award of pre-judgment or post-judgment interest, settlement amounts, costs and fees awarded pursuant to judgments, and **Claim Expense.**

**Loss** shall also include punitive or exemplary damages or the multiplied portion of any multiplied damage award, if insurable by law in any applicable jurisdiction. In determining the insurability of punitive or exemplary damages or the multiplied portion of any multiplied damages award, it is agreed that the law of the jurisdiction most favorable to the insurability of those damages will control, provided such jurisdiction is:

1.  where the punitive, exemplary or multiplied damages were awarded or imposed;

2.  where the **Wrongful Act** underlying the **Claim** took place;

3.  where either the **Company** or any **Insured** is incorporated or organized, has its principal place of business or resides; or

4.  where this policy was issued or become effective.

**Loss** does not include:

1.  any amounts for which the **Insureds** are legally or financially absolved from payment;

2.  taxes, fines, penalties or sanctions imposed by law against any **Insured** (other than punitive or exemplary damages or the multiplied portion of any multiplied damage award as described above);

3.  return, withdrawal, forgiveness or reduction of any fees or receivables paid to, or charged or chargeable by, an **Insured;**

4.  the cost of re-performing or completing any **Professional Services;**

5.  the cost of compliance with an injunction or any other non-monetary relief; or

6.  any other matters uninsurable under the law applicable to this policy.

\*       \*       \*

N. **Professional Services** means services provided to others by an **Insured**:

1.  in the conduct of any business by or on behalf of the **Firm** in its professional capacity as an attorney or notary public;

2.  as an administrator, conservator, executor, escrow agent, trustee, guardian, receiver or committee or in any similar fiduciary capacity incidental to the practice of law by the **Firm**;

3.  as an arbitrator or mediator;

4.  as a member, director or officer of any professional legal association, its governing board, or any of its committees;

5.  as a government affairs advisor or lobbyist; or

6.  as a title insurance agent pursuant to a written agency agreement with a licensed title insurance company,

but only if such services are performed in the name or on behalf of the **Firm** and some or all of the fee, if any, accruing from such services (regardless of whether such fee is actually collected) inures to the benefit of the **Firm**.

\*       \*       \*

P.  **Wrongful Act** means any actual or alleged:

1.  act, error or omission;

2.  breach of contract for **Professional Services;**

3.  breach of fiduciary duty; or

4.  **Personal Injury;**

committed or attempted, or allegedly committed or attempted, solely in the performance of or failure to perform **Professional Services** by any **Insured** or by any other person or entity for whose actions the **Insured** is legally responsible.

## EIGHTH AFFIRMATIVE DEFENSE

The Primary Policy includes, among others, the following exclusions:

**SECTION IV. EXCLUSIONS**

**A.** The **Company** shall not be obligated to pay **Loss** arising from any **Claim** made against any **Insured:**

1. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

   a. Any fact, circumstance, transaction, event, or **Wrongful Act,** that, before the Inception Date set forth in Item 2. of the Declarations, was the subject of any notice of claim or loss, or notice of potential claim or potential loss, given under any other policy of insurance;

   b. Any fact, circumstances, transaction, event, or **Wrongful Act** of which, as the Inception Date of the first policy written by the **Company** and continuously renewed thereafter, the Most Senior Governance Committee of the **Insured** had knowledge and that was reasonably likely to give rise to a **Claim** that would fall within the scope of the insurance afforded by this policy. "Most Senior Governance Committee" means any management committee with management responsibility for reporting, handling and evaluating actual or potential **Claims**[1]; or

   c. Any other **Wrongful Act** whenever occurring, which together with a **Wrongful Act** described in a. or b. above, constitutes **Interrelated Wrongful Acts;**

   \*          \*          \*

9. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

   a. the gaining of any profit, remuneration, or advance to which the **Insured** was not legally entitled; or

   b. any criminal, dishonest, malicious or deliberately fraudulent act, error or omission by an **Insured;**

   if evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or written admission by an **Insured.**

---

[1] The language recited in Section IV. EXCLUSIONS, 1.(b) is provided by way of the Prior Knowledge Exclusion Amendatory Endorsement, which deleted the original Section IV. EXCLUSIONS, 1.(b) and replaced it with the language as recited above.

### NINTH AFFIRMATIVE DEFENSE

The Primary Policy includes, in pertinent part, the following:

**Section V. CLAIMS MADE CONDITIONS: EXTENDED REPORTING PERIOD**

**A.** This insurance applies to **Claims** that are first made during the **Policy Period** or as otherwise provided in this Section. The **Company** will consider a **Claim** to be first made against an **Insured** when a **Claim** is first received by an **Insured**. For coverage to apply, the **Insured** must provide notice of **Claims** and provide information in accordance with Section VI. GENERAL CONDITIONS, B. Insured's Duties in the Event of a Claim.

**B. Reporting of Circumstances**

1. If during the **Policy Period** any **Insured** becomes aware of circumstances which could give rise to a **Claim**, and the **Insured** gives written notice of such circumstances to the **Company** during the **Policy Period**, then any **Claim** subsequently arising from such circumstances shall be considered to have been made during the **Policy Period** in which the circumstances were first reported to the **Company**. No coverage shall be provided for fees and expenses incurred prior to the time such circumstances result in a **Claim**.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff has not complied with all conditions of coverage.

### ELEVENTH AFFIRMATIVE DEFENSE

ProSight has not owed to Plaintiff any obligations under the ProSight Policy at any time material hereto.

### TWELFTH AFFIRMATIVE DEFENSE

Even assuming *arguendo* the Policies afforded coverage, which they do not, ProSight's Policy and any duties thereunder have not been triggered as the limit of coverage under the Primary Policy has not been exhausted.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Primary Policy includes, among others, the following General Conditions:

### SECTION VI. GENERAL CONDITIONS

\*      \*      \*

**B.** Insured's Duties in the Event of a Claim

\*      \*      \*

    **2.** No **Insured** will, except at the **Insured's** own cost, voluntarily make a payment, admit liability, assume any obligation or incur any expense without the **Company's** prior written consent, except as provided in Section I.B.2. of this policy.

## FOURTEENTH AFFIRMATIVE DEFENSE

The ProSight Policy provides, in pertinent part, as follows:

The INSURER warrants that:

**A.** . . . Any claim and/or potential claim and any combination thereof, reported to the Primary Certificate, must also be reported contemporaneously to:

    Mendes & Mount LLP
    750 Seventh Avenue
    New York, NY 10019

**B.** This CERTIFICATE OF INSURANCE incorporates, and is subordinate to any changes and endorsements of the Primary Certificate provided the INSURER consents to such changes and endorsements, such consent not to be unreasonably withheld.

\*      \*      \*

**D.** In the event of the reduction or exhaustion of the sums insured of liability under the Primary Certificate and/or underlying Excess policies by reason of claims paid there under this CERTIFICATE OF INSURANCE shall:

    **1.** In the event of reduction, pay the excess of the reduced underlying sums insured;

**2.** In the event of exhaustion, continue in force as primary insurance

provided always that in the latter event, this CERTIFICATE OF INSURANCE shall only pay the excess of the retention as provided in the Primary Certificate.

## FIFTEENTH AFFIRMATIVE DEFENSE

Even if Plaintiff's alleged losses were within the scope of coverage, coverage is subject to the Policies' conditions which were not satisfied, as well as limitations and exclusions, which serve to bar coverage altogether.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff has not alleged any definite, specific, positive, and unconditional repudiation of the insuring agreement by ProSight.

## SEVENTEENTH AFFIRMATIVE DEFENSE

ProSight cannot be said to have breached a contract – anticipatorily or otherwise – where ProSight has not refused to do something that ProSight is not required to do under the Policies.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Indictment's notice of potential forfeiture in the event Plaintiff is convicted of the crimes with which he is charged does not constitute a "Loss".

## NINETEENTH AFFIRMATIVE DEFENSE

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under United Nations resolutions, laws or regulations of the European Union, United Kingdom, or United States of America.

## TWENTIETH AFFIRMATIVE DEFENSE

The Policies' terms, conditions and limitations are clear and unambiguous.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

ProSight was not a party to any "advancement agreement" or "promise" to pay a percentage of any fees or costs.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

ProSight is not bound by any "advancement agreement" or "promise" on the part of the Primary Carriers, or any statements of a third-party.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, laches, waiver, and/or unclean hands.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by accord and satisfaction.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by his failure to mitigate damages.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's request for relief is barred by his own intentional acts.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

ProSight reserves the right to assert additional affirmative defenses, at law or in equity, that may now exist or in the future be available based on discovery and/or further factual investigation in this case.

Date: ___6/4/2021___

___/s/ John J. Murphy___

John J. Murphy, Esq. Bar No. 14407
WALKER, MURPHY & NELSON, LLP
9210 Corporate Boulevard, Suite 320
Rockville, MD 20850
Phone: 301.519.9150
Fax: 301.519.9152
jmurphy@walkermurphy.com

___/s/ Marc R. Kamin___

Marc R. Kamin, Esq. PHV Bar No. 815831
STEWART | SMITH
300 Four Falls Corporate Center Suite 670
300 Conshohocken State Rd.
West Conshohocken, PA 19428
(T) 484.589.5506 (F) 484.534.9470
MKamin@StewartSmithLaw.com

*Attorneys for Defendant*
*ProSight Syndicate 1110 at Lloyd's*

## CERTIFICATE OF SERVICE

I, John J. Murphy, Esquire, hereby certify that on the 4th day of June, 2021, ProSight

Syndicate 1110 at Lloyd's' Answer to Plaintiff's Complaint with Affirmative Defenses was filed

with the Court and that notice of same will be provided and a copy of the filing will be made

available for viewing and downloading via this Court's CM/ECF system.

___/s/ John J. Murphy___

John J. Murphy