# EXHIBIT 8


SOMPO INTERNATIONAL

March 12, 2021

**VIA E-MAIL**

Paul Butler, Esq.
Akin Gump Strauss Hauer 7 Feld, LLP
Robert S. Strauss Tower
2001 K. Street NW
Washington DC 20006-1037

E-mail: pbutler@akingump.com

| | | |
|---|---|---|
| Re: | Insured: | Shulman, Rogers, Gandal, Pordy & Ecker, P.A. (the "Firm") |
| | Insurer: | Endurance American Specialty Insurance Company ("Endurance") |
| | MOI No.: | LPL10005398002 |
| | Policy Period: | August 22, 2016 to August 22, 2017 |
| | Matter: | *United States of America v. Schulman*, No. 20-cr-00434 (D. Md.) |
| | Claim No.: | 10108155 |

Dear Mr. Butler:

I am the Claims Counsel handling the above-captioned matter (the "Indictment") on behalf of Endurance. Endurance is now a member of Sompo International Companies ("Sompo"). Sompo is responsible for handling claims on behalf of Endurance. Sompo and Endurance are collectively referred to herein as Sompo. Further to your prior communications with Underwriters' representatives at Mendes & Mount, this letter is intended to provide Mr. Schulman with Sompo's views regarding the availability of coverage for the Indictment under the above-referenced Memorandum of Insurance, which incorporates the terms and conditions of the Co-Insuring Policy issued by AXIS Surplus Insurance Company (collectively, the "Policy"). If there is anyone else to whom we should direct a copy of this letter, please let us know.

Based upon the currently available information, Sompo has determined that the Policy affords no coverage for the Indictment because the Indictment does not constitute a Claim as defined by the Policy, which is limited in pertinent part to civil rather than criminal proceedings. Other terms and conditions of the Policy may limit or bar coverage. The reasons supporting Sompo's determination are set forth below. If there is any additional information that you would like for Sompo to consider in connection with its assessment of coverage for this matter, please forward it to my attention.

**I.    The Indictment**

The Indictment was filed on December 2, 2020. Sompo appreciates that Mr. Schulman disputes the allegations contained in the Indictment, and by summarizing them here for purposes of reviewing the available coverage, Sompo does not intend to endorse those allegations or imply their validity.

**Endurance Services Limited**
*A wholly owned subsidiary of Sompo International Holdings Ltd.*
4 Manhattanville Road, 3rd Floor, Purchase, NY 10577, U.S.
+1 914 468 8000

www.sompo-intl.com


**SOMPO INTERNATIONAL**

According to the government, between July 2009 and 2014, Mr. Schulman, Abdiaziz Hassan Amalo, and other unnamed coconspirators "attempted to and did fraudulently obtain control over money and gold that was the property of the Central Bank of Somalia. These Somali sovereign assets, worth hundreds of millions of dollars, were held in accounts that had been frozen since approximately 1991 due to civil war and political instability in Somalia." Indictment ¶ 21. The government charges that Mr. Schulman and others engaged in a scheme "in which they attempted to unfreeze the accounts and take control of the accounts based on fraudulent, material misrepresentations about their authority to act on behalf of the Somali government." *Id*. Mr. Schulman and Amalo allegedly "created a series of forgeries and false documents" which were presented to financial institutions and permitted them to "obtain[] control over $12.5 million of Somali foreign assets between July 2010 and July 2014." *Id*. ¶ 22.

As charged in the indictment, "Schulman, Amalo and others agreed to enrich themselves from the scheme to defraud by taking a portion of these fraudulently obtained assets in fees and commissions before sending the remainder to the Somali government." *Id*. ¶ 23. The Firm allegedly retained "approximately $3.3 million of the Somali funds for fees and expenses," *id*., and recognized $1.9 million of this amount as revenue to the Firm, while Mr. Schulman's compensation for 2013 allegedly increased by $400,000 over 2012. *Id*. ¶ 58.

As set forth in the Indictment, Amalo allegedly knew the former Governor of Somali's central bank, and based on that relationship he and Mr. Schulman allegedly agreed that "Schulman would hold himself out as representing the Transitional Government of Somalia . . . and that [the Firm] would be paid a percentage of the Frozen Somali Assets that it recovered before returning the balance of the funds to the Somali government." *Id*. ¶ 29. In addition to the 2009 engagement between the Firm and Amalo, in July 2013, the Firm "execute[d] a contract with Former Governor 3," (who served as the Governor of Somalia's central bank from February 2013 to September 2013) under which the Firm would receive a fixed fee, as well as a sliding scale bonus of all assets recovered, plus reimbursement of costs. *Id*. ¶ 46.

Mr. Schulman is charged with conspiracy to commit mail, wire, and bank fraud; three counts of wire fraud; bank fraud; mail fraud; conspiracy to commit money laundering; and four counts of money laundering. The government seeks asset forfeiture in an amount equal to the proceeds allegedly obtained by Mr. Schulman as a result of the offenses.

II.     **Coverage Analysis**

    A.     **The Policy**

Although the Indictment was filed outside of the Policy Period, the Firm and Mr. Schulman previously reported receipt of a subpoena from the U.S. Department of Justice during the Policy Period. To the extent that the subpoena and Indictment constitute Claims as defined by the Policy (which Sompo respectfully disputes), they arise from the same Wrongful Act or Interrelated Wrongful Acts[1] and are deemed to have been made at the time of the subpoena, during the 2016-2017 Policy Period. *See* Policy, Section V.D. Alternatively, if the Insureds' notice of the subpoena were

---

[1]     As defined by the Policy, "**Interrelated Wrongful Acts** means any or all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes." Policy, Section II.J.



deemed written notice of circumstances which could give rise to a Claim, ==because the Indictment arises from such circumstances, to the extent that it constitutes a Claim, the Indictment shall be considered to have been made during the 2016-2017 Policy Period when the circumstances were reported.== *Id.*, Section V.B. ==In either event, the terms and conditions of the 2016-2017 Policy govern the extent of available coverage for the Indictment.==

Endurance issued Memorandum of Insurance No. LPL10005398002 to the Firm for the Policy Period from August 22, 2016 to August 22, 2017. Endurance MOI at 1. The Policy contains a Limit of Liability of $5 million per Claim and in the aggregate (representing Endurance's 50% quota share of total limits of $10 million), subject to a per Claim Retention of $100,000. *Id*. The Memorandum of Insurance "incorporates all terms set forth in [the] Co-Insuring Policy on the identical subject matter and risk and is subordinate to the Co-Insuring Policy," which is identified as AXIS PRO® LP Lawyers Professional Liability Insurance Policy No. EBN 782641/01/2016 issued by AXIS Surplus Insurance Company. *Id.* at 1 & 2 ¶ a. ==The Endurance coverage therefore applies in the same manner as the AXIS policy.== Subject to all its terms and conditions, the Policy provides specified coverage for "all **Loss**, in excess of the applicable **Retention**, resulting from **Claims** for **Wrongful Acts** committed before the expiration of the **Policy Period** that are first made against any **Insured** during the **Policy Period**." *Id.*, Section I.A. Coverage available under the Policy applies only in conformance with all its terms, conditions, and endorsements, as discussed further below.

Insured Individuals to whom the Policy applies include, in relevant part, "any one or more natural persons who are past, present or future: . . . directors, officers, principals, shareholders, partners, or members of the **Firm**, or their functional equivalent if serving in such a position outside the United States." Policy, Section II.I.1. Based upon the available information, we understand that as a former partner of the Firm, Mr. Schulman constitutes an "Insured Individual" covered under the Policy.

**B.**     **The Indictment Does Not Constitute a Claim.**

==As a threshold requirement for coverage, the Policy's Insuring Clause requires that there be a Claim for Wrongful Acts made against an Insured. Policy, Section I.A. The Policy defines "Claim" as follows:==

> 1. ==any of the following:==
>    a. ==a written demand against any Insured for monetary or non-monetary relief;==
>    b. ==a civil proceeding against any Insured commenced by the service of a complaint or similar pleading;==
>    c. ==a written demand for arbitration or mediation;==
>    d. ==a formal civil administrative or civil regulatory proceeding against any Insured, including, but not limited to, a Disciplinary Proceeding, commenced by the filing of a notice o[f] charges or similar document or by the entry of a formal order of investigation or similar document;==

    2. a written request received by an Insured to toll or waive a statute of limitations related to a matter described in subparagraph 1. above.

*Id.*, Section II.B.

The Indictment does not fall within the definition of Claim, as none of the definition's subparts address criminal proceedings. The proceedings that constitute a Claim are all civil in nature: "a *civil* proceeding" commenced by a complaint, "a formal *civil* administrative . . . proceeding," and a "*civil* regulatory proceeding." *Id.* (emphasis added). Likewise, a Disciplinary Proceeding encompassed by a Claim means "a formal investigation proceeding regarding the Insured's adherence to professional standards of conduct before a court, state licensing board, peer review committee, bar association, or other regulatory body," *id.*, Section IIF., and comprise a subset of the *civil* administrative or regulatory proceedings set forth in the Claim definition. Nor does the Indictment, as a document charging criminal offenses, constitute a "written demand . . . for monetary or non-monetary relief," "a written demand for arbitration or mediation," or a written request to toll or waive a statute of limitations. The Claim definition contains no reference to criminal proceedings of any kind. Accordingly, the Indictment does not constitute a Claim and therefore does not trigger coverage under the Policy's Insuring Clause.

### C. Reservation of Rights

Although no coverage is available because the Indictment does not constitute a Claim, other terms and conditions of the Policy could also bar or limit coverage, and Sompo would like to bring these to the Insured's attention as well.

*First*, the Insuring Clause requires that covered Loss must result from "**Claims** for **Wrongful Acts**." "Wrongful Act" means, in relevant part, "any actual or alleged . . . act, error or omission"; "breach of contract for **Professional Services**"; or "breach of fiduciary duty," in each case, when committed "solely in the performance of or failure to perform **Professional Services**." *Id.*, Section II.P. "Professional Services" in turn are defined in relevant part as "services provided to others by an **Insured** . . . in the conduct of any business by or on behalf of the **Firm** in its professional capacity as an attorney or notary public" or "as a government affairs advisor or lobbyist," "but only if such services are performed in the name or on behalf of the **Firm** and some or all of the fee, if any, accruing from such services . . . inures to the benefit of the **Firm**." *Id.*, Section II.N. Here, the Indictment alleges the commission of criminal conduct inconsistent with and foreign to an attorney's duties in the performance of legal services. Sompo reserves all rights with respect to whether the Indictment, even if it constituted a Claim in the first instance, is "for **Wrongful Acts**" committed by Mr. Schulman in an insured capacity.

*Second*, potentially covered "Loss" encompasses "amount(s) which the **Insureds** become legally obligated to pay on account of a **Claim**, including damages, judgments, any award of pre-judgment or post-judgment interest, settlement amounts, costs and fees awarded pursuant to judgments, and **Claim Expense**." *Id.*, Section II.K. However, "**Loss** does not include," among other things, "taxes, fines, penalties or sanctions imposed by law against any **Insured**"; "return, withdrawal, forgiveness or reduction of any fees or receivables paid to, or charged or chargeable by, an **Insured**"; "the cost of compliance with an injunction or any other non-monetary relief"; or "any other matters uninsurable under the law applicable to this policy." *Id.* Sompo reserves the right to decline coverage for any amounts that do not constitute

"Loss" within the meaning of the Policy, amounts that do not give rise to a financial detriment that is covered by insurance, including amounts to which any Insured was not legally entitled, and amounts that are uninsurable under applicable law.

**Third**, the Policy provides that it does not apply to any Claim

> based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:
>
> a.  the gaining of any profit, remuneration, or advantage to which the **Insured** was not legally entitled; or
>
> b.  any criminal, dishonest, malicious or deliberately fraudulent act, error or omission by an **Insured**;
>
> if evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or written admission by an **Insured**.
>
> No fact pertaining to, knowledge possessed by or conduct by an **Insured Individual** shall be imputed to any other **Insured Individual**.

*Id.*, Section IV.10. Sompo respectfully reserves all rights under this provision.

**Finally**, the Policy contains the following subrogation clause:

> In the event of any payment under this policy, the **Company** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery including rights against other **Insureds**, and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Company** effectively to bring suit in the name of the **Insureds**. The **Insured** will do nothing to prejudice such rights. Any recoveries shall be applied as follows:
>
> 1.  First, to the **Company** up to the amount the **Company** has paid for **Loss**;
>
> 2.  Then, to the **Firm** as recovery of **Retention** amounts paid as **Loss**.

Policy, Section VI.I. Sompo reserves all of its subrogation rights.

\*   \*   \*   \*   \*


**SOMPO INTERNATIONAL**

---

In closing, we note that the information currently available to Sompo is preliminary and may be incomplete. As additional information becomes available to the Sompo, other terms, conditions or exclusions may be implicated. In the interim, this letter, as well as all past, present, and future communications, is sent subject to a complete reservation of all of Sompo's rights under the Policy and at law.

If you have any questions regarding this letter, please feel free to contact me.

Sincerely,

*Melissa Demmon*

Melissa S. Demmon
Vice President, Claims Counsel