**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **JEREMY W. SCHULMAN,** | |
| **Plaintiff,** | |
| **vs.** | **Civil Action No.: 8:21-cv-1252 -PWG** |
| | |
| **AXIS SURPLUS INSURANCE** | **Judge Paul W. Grimm** |
| **COMPANY, ENDURANCE** | |
| **AMERICAN SPECIALTY** | |
| **INSURANCE COMPANY, and** | |
| **PROSIGHT SYNDICATE 1110 AT** | |
| **LLOYD'S,** | |
| **Defendants.** | |

**DEFENDANT PROSIGHT SYNDICATE 1110 AT LLOYD'S'
MOTION FOR SUMMARY JUDGMENT ON ISSUES
SPECIFIC TO PROSIGHT SYNDICATE 1110 AT LLOYD'S**

Defendant ProSight Syndicate 1110 at Lloyd's hereby cross-moves for summary judgment

on issues specific to said Defendant pursuant to Federal Rule of Civil Procedure 56. In support of

its cross-motion, ProSight Syndicate 1110 at Lloyd's relies on its accompanying Brief, which is

incorporated herein by reference. For the reasons discussed, Defendant ProSight Syndicate 1110

at Lloyd's respectfully requests judgment in its favor and dismissal of Plaintiff's claims against it.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

Date:  7/28/2021

  /s/ John J. Murphy
John J. Murphy, Esq. Bar No. 14407
WALKER, MURPHY & NELSON, LLP
9210 Corporate Boulevard, Suite 320
Rockville, MD 20850
Phone: 301.519.9150
Fax: 301.519.9152
jmurphy@walkermurphy.com


  /s/ Marc R. Kamin
Marc R. Kamin, Esq. PHV Bar No. 815831
STEWART | SMITH
300 Four Falls Corporate Center, Suite 670
300 Conshohocken State Rd.
West Conshohocken, PA 19428
(T) 484.589.5506 (F) 484.534.9470
MKamin@StewartSmithLaw.com

*Counsel for Defendant*
*ProSight Syndicate 1110 at Lloyd's*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEREMY W. SCHULMAN,<br>        **Plaintiff,**<br><br>    **vs.**<br><br>AXIS SURPLUS INSURANCE<br>COMPANY, ENDURANCE<br>AMERICAN SPECIALTY<br>INSURANCE COMPANY, and<br>PROSIGHT SYNDICATE 1110 AT<br>LLOYD'S,<br>        **Defendants.** | Civil Action No.: 8:21-cv-1252 -PWG<br><br>Judge Paul W. Grimm |

### DEFENDANT PROSIGHT SYNDICATE 1110 AT LLOYD'S' BRIEF
### IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Date:  7/28/2021

    */s/ John J. Murphy*
John J. Murphy, Esq. Bar No. 14407
WALKER, MURPHY & NELSON, LLP
9210 Corporate Boulevard, Suite 320
Rockville, MD 20850
Phone: 301.519.9150
Fax: 301.519.9152
jmurphy@walkermurphy.com

  */s/ Marc R. Kamin*
Marc R. Kamin, Esq. PHV Bar No. 815831
STEWART | SMITH
300 Four Falls Corporate Center, Suite 670
300 Conshohocken State Rd.
West Conshohocken, PA 19428
(T) 484.589.5506 (F) 484.534.9470
MKamin@StewartSmithLaw.com

*Counsel for Defendant*
*ProSight Syndicate 1110 at Lloyd's*

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF UNDISPUTED FACTS .....................................................2

III. QUESTIONS PRESENTED ............................................................................2

IV.  ARGUMENT ....................................................................................................2

      A.   ProSight Syndicate Is Plainly Entitled to Judgment in its Favor on the
Purported Anticipatory Breach of Contract Claim as ProSight Syndicate
Has Made No Unconditional Repudiation of the Contract and as ProSight
Syndicate's Duties, if Any, Have Not Been Triggered. ........................................5

      B.   ProSight Syndicate Cannot Be Bound By An Alleged Agreement Between
the Insured and Primary Carriers as ProSight Syndicate is an Excess Carrier
and as Such Acts Independent of Primary Carriers With Respect to
Coverage Determinations, Including Compromises and Settlements ....................9

V.   CONCLUSION ...............................................................................................12

## **TABLE OF AUTHORITIES**

### **Cases**

*8621 Ltd. Partnership v. LDG, Inc.*, 169 Md.App. 214 (2006).....................................6

*Allmerica Financial Corp. v. Certain Underwriters at Lloyd's, London*, 871 N.E.2d 418
    (Mass. 2007)................................................................................................10

*Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049 (Ind. 2001) ..................................10

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .............................................2, 3

*C.W. Blomquist & Co., Inc. v. Capital Area Realty Investors*, 270 Md. 486 (Md. 1973).............6

*Cont'l Cas. Co. v. Royal Ins. Co.*, 219 Cal. App. 3d 111, 268 Cal. Rptr. 193 (Ct. App.
    1990)..........................................................................................................8

*EEOC v. Navy Fed. Credit Union,* 424 F.3d 397 (4th Cir. 2005) .................................3

*Felman Production, Inc. v. Industrial Risk Insurers*, No. 3:09-0481, 2010 WL 3491226
    (S.D. W.Va. Sept. 2, 2010) .........................................................................11

*Felty v. Graves–Humphreys Co.,* 818 F.2d 1126 (4th Cir. 1987)..................................3

*Fireman's Fund Ins. C. v. Rairigh*, 59 Md.App. 305, 475 A.2d 509 (1984) ......................3, 8, 11

*Harrell v. Sea Colony, Inc.*, 35 Md.App. 300, 306 (1977)........................................6, 7

*Humane Soc. of the U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 13-1822,
    2015 WL 4616818 (D. Md. July 30, 2015)........................................................2

*In re Liquidation of Midland Ins. Co.*, 861 N.Y.S.2d 992 (S.Ct. N.Y. Cnty. 2008), *rev'd*
    893 N.Y.S.2d 31 (2010), *aff'd* 16 N.Y.3d 536 (2011)....................................10

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89
    L.Ed.2d 538 (1986)......................................................................................3

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120 (Tex.
    App.—Houston [14th Dist.] 1997) *order withdrawn* (July 8, 1999), *aff'd sub nom.*
    *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 20 S.W.3d
    692 (Tex. 2000) ...........................................................................................8

*Puritan Ins. Co. v. Canadian Universal Ins. Co., Ltd.*, 775 F.2d 76 (3d Cir. 1985) ...................8

*Shin v. Shalala,* 166 F.Supp.2d 373 (D.Md. 2001).....................................................3

*Shy v. Insurance Company of Pennsylvania*, No. CV-10-1415, 2011 WL 13213664 (C.D. Cal. 2011) ................................................................................................10

*Transamerica Premier Life Insurance Company v. Selman & Company, LLC*, 401 F.Supp.3d 576 (D. Md. 2019) ............................................................................5

*United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ..............3

*Veolia North America, Inc. v. Great American E&S Insurance Co.*, 2020 WL 4607460 (Mass. Super. Ct. May 20, 2020) ......................................................................10

*Weiss v. Sheet Metal Fabricators*, 206 Md. 195 (1955) ................................................6

*White v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 913 F.2d 165 (4th Cir. 1990) ..............4

**Rules**

Fed. R. Civ. P. 56(a) ..............................................................................................2

**Treatises**

6 Corbin, Contracts § 973 ......................................................................................6

## I.     __INTRODUCTION__

ProSight Syndicate 1110 at Lloyd's ("ProSight Syndicate") moves with Co-Defendants Axis Surplus Insurance Company and Endurance American Specialty Insurance Company for summary judgment on Plaintiff's claim for declaratory relief for the reasons articulated in Defendants' Joint Opposition and Cross-Motion (Doc. 40) incorporated herein by reference, and also files its own Cross-Motion for Summary Judgment and the instant supporting brief with respect to the claims specific to ProSight Syndicate alone.

ProSight Syndicate issued a follow-form excess professional liability insurance policy to the law firm of Schulman, Rogers, Gandal, Pordy & Ecker, PA, of which Plaintiff is a former equity partner and an "Insured Individual". Co-Defendants Axis and Endurance co-insured the primary layer of coverage with an aggregate limit of $10 million; ProSight Syndicate's excess policy is subject to a $10 million limit, excess of Axis and Endurance's limit. As stated in Defendants' Joint Motion, there is no genuine issue of material fact with respect to Plaintiff's demand for a declaration that he is entitled to coverage under the Policies. And further, with respect to Plaintiff's demand for 100% of the costs of complying with the Subpoena, there is no genuine issue of material fact and Plaintiff is not entitled to his requested relief since, assuming *arguendo* the Subpoena was a "Claim", the costs associated with it would not constitute a covered "Loss" since "Loss" expressly excludes costs of complying with an injunction or any other non-monetary relief, Doc. 35-1, pg. 10 of 46, Section II.K. In short, the Policies do not afford coverage to Plaintiff in connection with his claims for coverage for the Subpoena or the Indictment; thus, Plaintiff's claim for relief in the nature of a declaration that he is entitled to such coverage fails as a matter of law. To the extent Plaintiff claims that ProSight Syndicate anticipatorily breached the insuring agreement (Count III, *Anticipatory Breach of Contract Against All Carriers*), and to the extent the

1

Complaint fails to distinguish between purported claims based on the supposed "Advancement Agreement" and those based on the terms of the Policies, ProSight Syndicate files the instant motion because such claims, as with the claim for declaratory relief, also fail as a matter of law.

## II.   STATEMENT OF UNDISPUTED FACTS

ProSight Syndicate incorporates by reference as if set forth at length the Statement of Undisputed Facts in Defendants' Joint Opposition to Plaintiff's Motion for Partial Summary Judgment and Joint Cross-Motion for Summary Judgment (Doc. 40).

## III.   QUESTIONS PRESENTED

A. Whether Plaintiff's Claim for Anticipatory Breach of Contract Must Fail Where Plaintiff Acknowledges ProSight Syndicate Has Made No Definite, Specific, Positive and Unconditional Repudiation of the Policy, and Where ProSight's Duties, if Any, Have Not Been Triggered.

   Suggested Answer: Yes.

B. Whether ProSight Syndicate Cannot Be Bound by the "Advancement Agreement" Where ProSight Syndicate, as Excess Carrier, Insures Against a Separate and Distinct Layer of Risk and Acts Independent of Primary Carriers With Respect to Coverage Determinations, Including Compromises and Settlements.

   Suggested Answer: Yes.

## IV.   ARGUMENT

Summary judgment under Federal Rule of Civil Procedure Rule 56(a) is appropriate when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. *Humane Soc. of the U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 13-1822, 2015 WL 4616818, at \*3–4 (D. Md. July 30, 2015). The "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252. This inquiry requires viewing the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Mere speculation or compilation of inferences does not give rise to a genuine dispute of material fact. *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Courts bear the affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993) (*quoting Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

As a threshold matter, ProSight Syndicate maintains that Plaintiff's claim for declaratory relief as to ProSight Syndicate is not yet ripe. The majority rule, followed in Maryland, is that an excess carrier is not obligated to defend until the primary limits are exhausted. *Fireman's Fund Ins. C. v. Rairigh*, 59 Md.App. 305, 475 A.2d 509 (1984). Here, Plaintiff has not alleged that the primary limits have been or will soon be exhausted. In fact, Plaintiff's representations, taken as true, indicate that defense expenses, which have allegedly been accruing for the past four (4) years, total approximately two million dollars, and are thus well within the primary limit of ten million dollars. *See* Doc. 35-1, pp. 33-34 of 46, ProSight Syndicate Policy (providing that the sum insured

under the ProSight Syndicate Policy is $10,000,000, excess of the primary limit of $10,000,000 each claim and $10,000,000 in the aggregate, including costs, charges and expenses, excess of the retention, in the event of reduction or exhaustion of the sums insured under the primary policy); *see also* Doc. 35-1, pp. 4 of 46, Program Summary. While the Court cannot grant Plaintiff his requested declaratory relief at all and while summary judgment must be entered in favor of the Insurers for the reasons discussed in Defendants' Joint Opposition and Cross-Motion, Plaintiff's demand for declaratory relief as to ProSight Syndicate specifically also fails as a matter of law since ProSight Syndicate's attachment point has not yet been triggered. (Doc. 35-1, pp. 4, 33-34 of 46; *see also* Doc. 35-1, p. 7 of 46, ¶ 3 (insurer will, upon written request, pay Claim Expense *owed* under this policy; insurer will have no obligation to pay any Loss before the final disposition of a Claim)). Plaintiff is not entitled to a declaration that ProSight Syndicate is obligated to advance defense expenses, let alone to indemnify Plaintiff, where among other things, an additional eight million dollars must be expended before anything could be owed under the ProSight Syndicate Policy, assuming *arguendo* coverage was even afforded. This is hardly the sufficient immediacy and reality necessary to warrant the issuance of a declaratory judgment. *See White v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 913 F.2d 165, 167-68 (4th Cir. 1990) (citations omitted) (for a court to afford relief under the Federal Declaratory Judgment Act, (1) the dispute must be a "case or controversy", the test for which involves asking whether the dispute "is definite and concrete", "admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts", and "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment"; and (2) the court, in its discretion, must be satisfied that declaratory

4

relief is appropriate, which turns on whether the judgment would "serve a useful purpose in clarifying the legal relations in issue" or "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding") (emphasis added). Here, only if the Court concluded that the Indictment is a "Loss" arising from a "Claim", and only if the primary limit of ten million dollars were exhausted, would ProSight Syndicate's attachment point be triggered; only then would ProSight Syndicate be required to accept, disclaim, or accept subject to reservation of any and all rights Plaintiff's claim for coverage. Until then, ProSight Syndicate's liability under the Policies is, at best, purely speculative, the case as to ProSight Syndicate lacks sufficient immediacy and reality, and a declaratory judgment would not terminate and afford relief from uncertainty.

In short, if this Court concludes, as it should, that no coverage exists under the Policies, then it should grant summary judgment in favor of all Insurers on all counts. If, however, the Court were to find that the criminal Indictment somehow constitutes a "Loss" arising from a "Claim", Plaintiff's motion may only be granted to that extent, leaving the Insurers and Plaintiff to litigate what genuine issues of material fact remain and leaving ProSight Syndicate able to assert any other appropriate grounds for disclaiming coverage that may exist, assuming *arguendo* ProSight Syndicate's excess layer is ever implicated.

**A.      ProSight Syndicate Is Plainly Entitled to Judgment in its Favor on the Purported Anticipatory Breach of Contract Claim as ProSight Syndicate Has Made No Unconditional Repudiation of the Contract and as ProSight Syndicate's Duties, if Any, Have Not Been Triggered.**

Under Maryland law, a claim for anticipatory breach of contract requires "a definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract." *Transamerica Premier Life Insurance Company v. Selman & Company, LLC*, 401 F.Supp.3d 576 (D. Md. 2019) (citations omitted). "'[T]here must be a definite and unequivocal

manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives.'" *Harrell v. Sea Colony, Inc.*, 35 Md.App. 300, 306 (1977) (quoting 6 Corbin, Contracts § 973)). For a party to breach by anticipation, he must definitely and specifically refuse to do something <u>which he is obligated to do</u>, *8621 Ltd. Partnership v. LDG, Inc.*, 169 Md.App. 214, n 4 (2006) (emphasis added), and "refusal to perform must be positive and unconditional", *C.W. Blomquist & Co., Inc. v. Capital Area Realty Investors*, 270 Md. 486, 494-95 (Md. 1973) (quoting *Weiss v. Sheet Metal Fabricators*, 206 Md. 195, 203-204 (1955) (internal citations omitted)).

'"Doubtful and indefinite statements that the performance may or may not take place and statements that, under certain circumstances that in fact do not yet exist, the performance will not take place, will not be held to create an immediate right of action.'" *Harrell*, 35 Md.App. at 306 (quoting 6 Corbin, Contracts § 973)). In *Harrell*, there was no definite and unequivocal manifestation of intent to repudiate where the alleged repudiator (i) expressed an interest to cancel a purchase agreement because he felt he could not proceed with the purchase given his personal financial situation, and (ii) failed to answer requests from the other party to the contract seeking the alleged repudiator's preference for settlement location. *Harrell*, 35 Md.App. at 306-08. Expressing an interest in cancelling was hardly a specific, positive, and unconditional repudiation, and, as the Court of Special Appeals commented, the alleged repudiator's failure to answer with his preference for a settlement location could not be regarded as a partial breach of contract since nothing in the contract imposed upon him the duty to answer, and as the triggering event for scheduling a settlement, *i.e.*, written notice of substantial completion of construction, had not occurred. *Id.* at 307-08. The repudiator never refused to attend settlement, or otherwise refused or failed to fulfill any obligation imposed upon him by the contract. *Id.*

Here, Plaintiff alleges that, "[a]s the Excess Certification expressly adopts and incorporates all terms of the Primary Policy, Mr. Schulman has every reasonable basis to anticipate that ProSight will follow the Primary Carriers' refusal to accept responsibility under the Policies . . . and ProSight has failed to inform Mr. Schulman that it will not adhere to the Primary Carriers' baseless legal position. . . ." (Doc. 2 (Compl., ¶ 113)). This allegation, which essentially comprises the extent of the purported claim for anticipatory breach, makes clear there is no genuine issue of material fact and ProSight Syndicate is plainly entitled to judgment in its favor on Plaintiff's hollow claim for anticipatory breach of contract. As Plaintiff concedes, the purported claim is premised on *Plaintiff's* anticipation that ProSight Syndicate will follow the Primary Carriers' position with respect to coverage. *See id.* There has not been, nor does Plaintiff allege any "definite, specific, positive, and unconditional repudiation of the contract" on the part of ProSight Syndicate, the alleged repudiator. As such, Plaintiff's claim fails as a matter of law.

Further, like the defendant in *Harrell*, ProSight Syndicate cannot be said to have anticipatorily breached a contract by not doing something that ProSight Syndicate is not contractually obligated to do. Specifically, ProSight Syndicate's alleged inaction here, *i.e.*, its "refusal to accept responsibility under the Policies" and its alleged "fail[ure] to inform Mr. Schulman that it will not adhere to the Primary Carriers' . . . position", Doc. 2 (Compl., ¶ 113), cannot constitute an anticipatory breach, let alone any breach since ProSight Syndicate is not obligated under the Policies "to accept responsibility" or "to inform Mr. Schulman that it will not adhere to the Primary Carriers' . . . legal position." Assuming *arguendo* ProSight Syndicate did have a duty to so act, proof of its inaction at this juncture would *still* not constitute the definitive unequivocal repudiation necessary for an anticipatory breach of contract claim.

7

As stated, with respect to obligations of an excess carrier, the majority rule, followed in Maryland, is that an excess carrier is not obligated to defend until the primary limits are exhausted. *Rairigh*, 59 Md.App. 305. *See also* Doc. 35-1, pp. 33-34 of 46, ProSight Syndicate Policy (providing that the sum insured under the ProSight Syndicate Policy is $10,000,000, excess of the primary limit of $10,000,000 each claim and $10,000,000 in the aggregate, including costs, charges and expenses, excess of the retention, in the event of reduction or exhaustion of the sums insured under the primary policy). It follows, therefore, and consistent caselaw from other jurisdictions and general principles regarding excess policies dictate, that an excess carrier has no obligations, whether it be an obligation to investigate or to issue a reservation of rights, until that time. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120 (Tex. App.—Houston [14th Dist.] 1997) *order withdrawn* (July 8, 1999), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 20 S.W.3d 692* (Tex. 2000) (under Texas law, even if the primary carrier is insolvent, duty of an excess carrier does not arise unless and until the primary policy limits are exhausted or tendered); *Cont'l Cas. Co. v. Royal Ins. Co.*, 219 Cal. App. 3d 111, 268 Cal. Rptr. 193, 196 (Ct. App. 1990) (evidence of an excess carrier's conduct prior to the time any duties arise is irrelevant); *Puritan Ins. Co. v. Canadian Universal Ins. Co., Ltd.*, 775 F.2d 76 (3d Cir. 1985) (excess carrier's obligations do not arise until primary limits are exhausted). Primary and excess insurers cover separate and clearly defined layers of risk; "[i]f we were to increase the duties owed by the excess carrier to the insured, . . . rather than excess coverage, the insured would essentially have two primary carriers thereby destroying excess coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d at 137–38. Simply put, Plaintiff's anticipatory breach of contract claim fails as a matter of law because ProSight Syndicate's attachment point has not yet been triggered; thus, even if Plaintiff alleged that ProSight

8

Syndicate owed a duty to indemnify and specifically and unequivocally refused to do so, which Plaintiff did not allege, ProSight Syndicate has no obligations under the Policies and thus *cannot* be said to have breached, anticipatorily or otherwise. Further, taking as true Plaintiff's representation that defense fees billed as of July 15, 2021, totaled approximately $2,770,000 (Doc. 37, pg. 4 of 6), there is no reason to believe that the $10 million primary limit will be exhausted in the imminent future.

Because ProSight Syndicate has not unconditionally repudiated the insuring agreement between the parties, and because ProSight Syndicate cannot be said to have failed to take action under the Policies since duties, if any, would only be owed upon the primary carriers' exhaustion (or reduction) of the primary limit, Plaintiff cannot recover on its claim that ProSight Syndicate anticipatorily breached the Policies. There is no genuine dispute of material fact on this claim, and ProSight Syndicate is plainly entitled to judgment in its favor as a matter of law.

**B.      ProSight Syndicate Cannot Be Bound By An Alleged Agreement Between the Insured and Primary Carriers as ProSight Syndicate is an Excess Carrier and as Such Acts Independent of Primary Carriers With Respect to Coverage Determinations, Including Compromises and Settlements.**

Plaintiff's claim for declaratory relief, one of the two claims against ProSight Syndicate, relies solely on the Policies rather than the purported "Advancement Agreement" between Plaintiff and the Primary Carriers. At times throughout its Complaint, however, Plaintiff appears to conflate ProSight Syndicate and the Primary Carriers, suggesting that ProSight Syndicate is bound by the purported "Advancement Agreement". *See e.g.,* Doc. 2, ¶ 1 (alleging ". . . the insurance policies and *the parties' subsequent agreement* applying the policies plainly requires to pay . . .") (emphasis added), ¶ 3 (alleging "[t]he Primary Carriers, acting at all times for themselves and *on behalf of all three Carriers*, previously acknowledged their obligations . . .") (emphasis added), ¶ 7 (alleging *"[t]he Carriers'* refusal to act in good faith to provide Mr. Schulman with continued defense

coverage . . .", and "*the Carriers* agreed to pay his defense costs, . . .") (emphasis added). Because Plaintiff appears at times to conflate ProSight Syndicate and the Primary Carriers, ProSight Syndicate moves for summary judgment to the extent Plaintiff attempts to bind ProSight Syndicate to the terms of the "Advancement Agreement".

A follow-form excess carrier's intent to incorporate the same words used in the primary policy between the primary insurer and the insured does not imply an intent by the excess carrier to accept decisions made by the primary carrier, whether those decisions involve disclaiming coverage, compromising and covering in part subject to a reservation of rights, accepting coverage, or settling. This general principle is recognized in courts throughout the country.[1] *See e.g., In re Liquidation of Midland Ins. Co.*, 861 N.Y.S.2d 992 (S.Ct. N.Y. Cnty. 2008), *rev'd* 893 N.Y.S.2d 31 (2010), *aff'd* 16 N.Y.3d 536 (2011); *Allmerica Financial Corp. v. Certain Underwriters at Lloyd's, London*, 871 N.E.2d 418, 421 (Mass. 2007)); *Veolia North America, Inc. v. Great American E&S Insurance Co.*, 2020 WL 4607460 (Mass. Super. Ct. May 20, 2020); *Shy v. Insurance Company of Pennsylvania*, No. CV-10-1415, 2011 WL 13213664 (C.D. Cal. 2011) (citing *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1060 (Ind. 2001)). In *Allmerica Financial Corp. v. Certain Underwriters at Lloyd's, London*, the Supreme Judicial Court of Massachusetts addressed whether an excess carrier was bound by the primary carrier's decision to settle a class action claim. 871 N.E.2d 421. In holding that the excess carrier was *not* so bound, the court stated, "primary and excess insurers act independent of each other with respect to decisions about their policies, including coverage determinations and settlements." *Id.* at 426. Likewise, follow form

---

[1] With respect to Maryland authority, the undersigned's research has identified only an unpublished opinion, which cannot be cited as precedent under MD R. Gen. Rule 1-104.

policies do not "bind the various insurers to a form of joint liability should coverage at a prior layer fail." *Id.* "The layer of risk each insurer covers is defined and distinct." *Id.*

In *Felman Production, Inc. v. Industrial Risk Insurers*, No. 3:09-0481, 2010 WL 3491226 (S.D. W.Va. Sept. 2, 2010), the insured's breach of contract claim against its excess carrier was dismissed because the primary policy's limits had not been exhausted, through payment, admission or legal judgment, and thus liability under the excess policy could not attach and "there is no duty or obligation that [the excess carrier] has failed (or is failing) to perform (i.e., there is no breach)." *Id.* at *6. Based on general principles governing excess policies, "an excess insurer . . . has no duty (reasonable or otherwise) to investigate [the insured]'s claims." *Id.* Because the primary policy's limits had not yet, and may never be, exhausted, the excess carrier also could not be deemed to have violated West Virginia Code that makes it a violation for an insurer to fail to affirm or deny coverage within a reasonable time after proof of loss statements have been completed. *Id.* Even though the insured had submitted proof of loss claiming damages that would implicate the excess carrier's limits, "it is the exhaustion of the liability limits of [the insured's primary] Policy, not the submission of [the insured's] proof of loss, that triggers liability under the [excess] Policy." *Id.* at n. 4. In *Rairigh*, the excess carrier was not estopped from litigating the coverage dispute in a second phase of trial after having not issued a reservation of rights or sought a declaratory judgment on the issue of coverage. 59 Md.App. at 320. Such options were permissive, not mandatory. *Id.*

Here, Plaintiff's claim for declaratory relief relies solely on the Policies rather than the purported "Advancement Agreement" between Plaintiff the Primary Carriers. Nevertheless, because Plaintiff appears at times to conflate ProSight Syndicate and the Primary Carriers, and because ProSight Syndicate was not a party to and cannot be bound by the "Advancement Agreement", ProSight Syndicate reiterates that to the extent Plaintiff seeks to bind ProSight

11

Syndicate to the "Advancement Agreement", Plaintiff's claim plainly fails and judgment must be entered in ProSight Syndicate's favor as a matter of law.

V.      <u>CONCLUSION</u>

For the reasons stated in the foregoing Brief in Support of ProSight Syndicate's ProSight Syndicate-specific Cross-Motion for Summary Judgment, and for the reasons stated in the Joint Opposition and Cross-Motion for Summary Judgment in favor of all Carriers, Plaintiff's claims fail and ProSight Syndicate is plainly entitled to judgment in its favor as a matter of law.


Date:   7/28/2021

      */s/ John J. Murphy*
John J. Murphy, Esq. Bar No. 14407
WALKER, MURPHY & NELSON, LLP
9210 Corporate Boulevard, Suite 320
Rockville, MD 20850
Phone: 301.519.9150
Fax: 301.519.9152
jmurphy@walkermurphy.com


      */s/ Marc R. Kamin*
Marc R. Kamin, Esq. PHV Bar No. 815831
STEWART | SMITH
300 Four Falls Corporate Center, Suite 670
300 Conshohocken State Rd.
West Conshohocken, PA 19428
(T) 484.589.5506 (F) 484.534.9470
MKamin@StewartSmithLaw.com

*Counsel for Defendant*
*ProSight Syndicate 1110 at Lloyd's*