# EXHIBIT 10



April 5, 2017

Valerie Schmidt
Contract Partner
212-261-8407
valerie.schmidt@mendes.com

**VIA E-MAIL**
Michael Lichtenstein, Esq.
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Ave
Potomac, MD 20854

      Re:    Axis Surplus Insurance Company and Endurance American Specialty
                Insurance Company
                Lawyers Professional Liability Insurance
                Policy No.:        EBN 782641/01/2016
                Policy Period:    August 22, 2016 to August 22, 2017
                Insured:          Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
                Potential Claimant:  U.S. Department of Justice
                Our File:          424,262

Dear Mr. Lichtenstein,

      This will follow our letter of February 3, 2017, wherein we indicated that the subpoena your firm received from the U.S. Department of Justice ("DOJ") did not constitute a Claim for which coverage was available and that Underwriters would be considering your firm's notification to be a notice of circumstance accordingly.

      We have since considered additional information provided by your firm regarding the nature and scope of the DOJ's investigation. We also understand that your firm and Mr. Shulman have retained Cozen O'Connor ("Cozen") and Akin Gump Strauss Hauer & Feld, LLP ("Akin"), respectively, to assist in responding to the subpoena. Underwriters were not consulted on counsel's retention as is required under the Policy. After learning of counsel's retention, Underwriters attempted to negotiate rates with Cozen based on a rate deal Cozen had agreed to with Axis, the Lead Underwriter subscribing to the captioned policy, for insurance defense work and based on Axis's relationship with Cozen. Cozen's Barbara Van Gelder rejected attempts to negotiate her rates claiming that they were not within the scope of the negotiated rate deal with Axis. However, Axis pushed back on this argument and asked her to consider a discounted rate in light of the insurance defense aspects to this representation and in recognition of the relationship between Axis and Cozen. Van Gelder thereafter indicated that she is not inclined to reduce her rates, at least in part, because she was made aware of earlier discussions between your firm and Underwriters whereby Underwriters agreed that they would cover 70% of defense fees incurred in the event counsel would not agree to reduced rates. Van Gelder indicated her belief that Underwriters were already obtaining a discount accordingly. Underwriters believe that Cozen O'Connor's knowledge of the 70% coverage "discount" discussions hindered their ability to negotiate a more favorable rate.

Our File: 424,262                                                                                           2

       For the reasons detailed in our prior correspondence, specifically that no Claim for Wrongful Acts has been alleged as required for coverage to exist under the Insuring Agreement of the Policy, Underwriters dispute that there is a duty to indemnify your firm for defense costs incurred with respect to the DOJ's subpoena ("Claim Dispute").  Further, Underwriters take issue with your firm's retention of defense counsel without consultation with Underwriters and believe that Underwriters' ability to negotiate a better rate with counsel was compromised by counsel acquiring information that Underwriters may already be receiving what counsel perceives to be a discounted rate based on our earlier coverage discussions with your firm ("Counsel Dispute").

       Underwriters are willing to resolve the Claim Dispute and the Counsel Dispute, subject to the remaining terms and conditions of the captioned policy, by reimbursing your firm and Mr. Shulman for 70% of defense fees incurred with respect to Cozen and Akin.  This agreement to reimburse your firm for 70% of counsels' fees will extend to your April 3rd request to apply this agreement to the fees of a third attorney that your firm feels compelled to retain for another attorney who worked on the underlying matter.  We understand that the services of this third defense counsel should be limited, and we ask that you please specify the involved insured attorney, the proposed additional defense counsel and his or her proposed billing rates.

       We understand that Cozen's Van Gelder is billing at $875/hour and that she has requested that Akin's Paul Butler agree to the same rate.  Please advise if Mr. Butler is amenable to this proposal.  Underwriters will also agree to pay reasonable expert fees, subject to prior approval of the retention of any additional experts.  At this time, Underwriters understand that HLP Integration has been retained as a digital production specialist and that a forensic accountant has been retained as well.  Please provide us with further information regarding the name and rate of the forensic accountant retained.  Please also have HLP Integration and the forensic accountant prepare estimated budgets.  We note that your firm's policy contains a $100,000 retention which must be satisfied prior to Underwriters' obligation to pay any amounts under the policy.  From our prior correspondence, we understand that your firm is amenable to this resolution, but we ask that you please confirm this understanding in response to this letter.

       Based on our discussions with your firm, we understand that the DOJ's investigation may involve the Foreign Corrupt Practices Act ("FCPA").  Accordingly, we must draw your attention to the following exclusion in the Policy:

    SECTION IV. EXCLUSIONS

    A. The Company shall not be obligated to pay Loss arising from any Claim made against any Insured:
    * * * *

    9. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

    a.  the gaining of any profit, remuneration, or advantage to which the Insured was not legally entitled; or

    b.  any criminal, dishonest, malicious or deliberately fraudulent act, error or omission by an Insured;

    if evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or written admission by an Insured.

    No fact pertaining to, knowledge possessed by or conduct by any Insured Individual shall be imputed to any other Insured Individual or the Firm;

In addition, Loss is defined in the Policy as follows:

002

SECTION II. DEFINITIONS USED IN THIS POLICY

When used in this policy, whether in the singular or plural:

* * * *

K. Loss means the amount(s) which the Insureds become legally obligated to pay on account of a Claim, including damages, judgments, any award of pre-judgment or post-judgment interest, settlement amounts, costs and fees awarded pursuant to judgments, and Claim Expense.

Loss shall also include punitive or exemplary damages or the multiplied portion of any multiplied damage award, if insurable by law in any applicable jurisdiction. In determining the insurability of punitive or exemplary damages or the multiplied portion of any multiplied damage award, it is agreed that the law of the jurisdiction most favorable to the insurability of those damages will control, provided such jurisdiction is:

1. where the punitive, exemplary or multiplied damages were awarded or imposed;
2. where the Wrongful Act underlying the Claim took place;
3. where either the Company or any Insured is incorporated or organized, has its principal place of business or resides; or
4. where this policy was issued or became effective.

Loss does not include:

1. any amounts for which the Insureds are legally or financially absolved from payment;
2. taxes, fines, penalties or sanctions imposed by law against any Insured (other than punitive or exemplary damages or the multiplied portion of any multiplied damage award as described above);
3. return, withdrawal, forgiveness or reduction of any fees or receivables paid to, or charged or chargeable by, an Insured;
4. the cost of re-performing or completing any Professional Services;
5. the cost of compliance with an injunction or any other non-monetary relief; or
6. any other matters uninsurable under the law applicable to this policy.

We respectfully reserve Underwriters' rights pursuant to Exclusion 9 and the definition of Loss, quoted above. We note that in reserving Underwriters' rights, we do not intend to lend any credence to the allegations which may be asserted by the DOJ. Rather, we reserve Underwriters' rights merely to protect against the potential future application of the provisions.

Should you have any questions or comments, please do not hesitate to contact the undersigned. As we await your reply, we trust you appreciate that our actions and inquiries are without prejudice to any rights or defenses specifically reserved or otherwise generally available to our clients, Axis Surplus Insurance Company and Endurance American Specialty Insurance Company.

Very truly yours,

MENDES & MOUNT, LLP

By: *Valerie J. Schmidt* (signature)

Valerie J. Schmidt

003