IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEREMY W. SCHULMAN, § § Plaintiff, § § v. § § AXIS SURPLUS INSURANCE § COMPANY, ENDURANCE AMERICAN § SPECIALTY INSURANCE COMPANY, § and PROSIGHT SYNDICATE 1110 AT § LLOYD'S, § § Defendants. § | CIVIL ACTION NO. 8:21-cv-1252-LKG |

**PLAINTIFF JEREMY W. SCHULMAN'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Jeffrey M. Schwaber (Bar # 06095)
STEIN SPERLING BENNETT DE JONG
DRISCOLL PC
1101 Wootton Parkway
Suite 700
Rockville, MD 20852
(301) 340-2020
(301) 354-8110
jschwaber@steinsperling.com

Robin L. Cohen *(Admitted pro hac vice)*
Jillian M. Raines *(Admitted pro hac vice)*
COHEN ZIFFER FRENCHMAN &
MCKENNA LLP
1350 Avenue of the Americas, 25th Floor
New York, NY 10019
(212) 584-1890
(212) 584-1891
rcohen@cohenziffer.com
jraines@cohenziffer.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I.   CONSTRUING THE POLICIES AS A WHOLE, THE INDICTMENT IS A "CLAIM" UNDER THE PLAIN POLICY LANGUAGE, TRIGGERING INSURERS' OBLIGATION TO PAY FOR MR. SCHULMAN'S ENTIRE DOJ CLAIM DEFENSE ................................................................................................................. 3

II.  AT A MINIMUM, AMBIGUITY IN THE POLICIES REQUIRES CONSIDERATION OF EXTRINSIC EVIDENCE THAT WARRANTS JUDGMENT IN MR. SCHULMAN'S FAVOR ...................................................................................................... 7

III. THE PRIMARY CARRIERS EXPRESSLY REPRESENTED TO MR. SCHULMAN THAT THE "CLAIM" ISSUE WAS RESOLVED .......................................................... 11

CONCLUSION ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acacia Rsch. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  2008 WL 4179206 (C.D. Cal. Feb. 8, 2008) ................................................................................6

*Aetna Cas. & Sur. Co. v. Cochran*,
  651 A.2d 859 (Md. 1995) ...........................................................................................................6

*Aetna Cas. & Sur. Co. v. Hartford Acc. & Indem. Co.*,
  539 A.2d 239 (Md. Ct. Spec. App. 1988) ............................................................................4, 6, 7

*Aspen Ins. UK, Ltd. v. Fiserv, Inc.*,
  2010 WL 5129529 (D. Colo. Dec. 9, 2010) ...............................................................................6

*Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*,
  625 A.2d 1021 (Md. 1993) .........................................................................................................3

*Calomiris v. Woods*,
  727 A.2d 358 (Md. 1999) ...........................................................................................................5

*Cap. City Real Estate, LLC v. Certain Underwriters at Lloyd's*,
  788 F.3d 375 (4th Cir. 2015) ......................................................................................................3

*Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*,
  656 A.2d 779 (Md. 1995) ...........................................................................................................7

*Cochran v. Norkunas*,
  919 A.2d 700 (Md. 2007) ...........................................................................................................9

*Cole v. State Farm Mut. Ins. Co.*,
  753 A.2d 533 (Md. 2000) ...........................................................................................................7

*Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*,
  889 A.2d 387 (Md. 2006) ...................................................................................................4, 7, 8

*Collier v. MD-Individual Prac. Ass'n, Inc.*,
  607 A.2d 537 (Md. Ct. Spec. App. 1992) ..................................................................................8

*Drutz v. Scottsdale Ins. Co.*,
  2012 WL 665984 (D. Md. Feb. 28, 2012) ............................................................................. 8-9

*Dutta v. State Farm Ins. Co.*,
  769 A.2d 948 (Md. 2001) ...........................................................................................................3

*Gil Enter., Inc. v. Delvy*,
    79 F.3d 241 (2d Cir. 1996)..................................................................................................4

*Graham v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    474 F. App'x 956 (4th Cir. 2012) ....................................................................................5, 11

*Int'l Multifoods Corp. v. Com. Union Ins. Co.*,
    309 F.3d 76 (2d Cir. 2002)................................................................................................10

*Joseph P. Bornstein, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    828 F.2d 242 (4th Cir. 1987) .............................................................................................4

*Lloyd E. Mitchell, Inc. v. Md. Cas. Co.*,
    595 A.2d 469 (Md. 1991) .................................................................................................3

*Md. Cas. Co. v. Blackstone Int'l Ltd.*,
    114 A.3d 676 (Md. 2015) .................................................................................................6

*Megonnell v. United Servs. Auto. Ass'n*,
    796 A.2d 758 (Md. 2002) ...........................................................................................6, 11

*Nat'l Cas. Co. v. Lockheed Martin Corp.*,
    415 F. Supp. 2d 596 (D. Md. 2006)..................................................................................9

*Nationwide Mut. Ins. Co. v. Reg'l Elec. Contractors, Inc.*,
    680 A.2d 547, 558 (Md. Ct. Spec. App. 1996) ...............................................................12

*Nautilus Ins. Co. v. 200 W. Cherry St., LLC*,
    383 F. Supp. 3d 494 (D. Md. 2019).....................................................................3, 5, 6, 11

*Nautilus Ins. Co. v. BSA Ltd. P'Ship*,
    602 F. Supp. 2d 641 (D. Md. 2009).............................................................................9-10

*OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.*,
    242 F. App'x 936 (4th Cir. 2007) ....................................................................................13

*Pac. Indem. Co. v. Interstate Fire & Cas. Co.*,
    488 A.2d 486 (Md. 1985) .............................................................................................3, 7

*Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*,
    505 F.2d 989 (2d Cir. 1974)..............................................................................................9

*Shapiro v. Am. Home Assurance Co.*,
    616 F. Supp. 906 (D. Mass. 1985) ....................................................................................6

*Syracuse Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  2013 WL 3357812 (N.Y. Sup. Mar. 7, 2013), *aff'd*, 112 A.D.3d 1379 (N.Y.
  App. Div. 2013) .................................................................................................. 6-7, 10

*Unitrin Auto and Home Ins. Co. v. Karp*,
  481 F. Supp. 3d 514 (D. Md. 2020) ..................................................................................8

**Secondary Sources**

46 C.J.S. Insurance § 1194..........................................................................................................12

Eric Mills Holmes & Mark S. Rhodes, *Holmes's Appleman on Insurance*,
  2d 276–81 (Eric Mills Holmes ed., vol. 2 § 7.2, West 1996) ......................................................6

During the telephonic status conference held on October 7, 2021, the Court welcomed supplemental briefing regarding whether the Policies[1] may be interpreted to provide coverage for the criminal Indictment.  Plaintiff Jeremy W. Schulman respectfully submits this supplemental brief dedicated to that inquiry and in further support of Plaintiff's Motion.

## PRELIMINARY STATEMENT

The gating issue to establish Mr. Schulman's defense coverage for the DOJ Claim is resolving whether the plain language of the Policies extends coverage for alleged criminal wrongdoing.  Insurers' Joint Reply[2] attempts to over-simplify this issue and encourage the Court to look solely at whether the Policies' "Claim" definition expressly refers to criminal indictments.  Well-established insurance policy construction and Maryland law require a more nuanced analysis, which when undertaken, plainly establishes that judgment in Mr. Schulman's favor is warranted, or, at worst, that discovery must proceed, requiring denial of Insurers' and Mr. Schulman's pending motions alike.

*First*, even if Insurers' interpretation of the "Claim" definition were deemed to be a reasonable reading (Mr. Schulman maintains it is not), unless Insurers could show that their interpretation is the ***sole*** reasonable reading of the Policies' plain language—this Court must conclude that the Policies are ambiguous.  Ambiguity in insurance contracts must be construed in favor of the policyholder and against the insurer under long-standing Maryland precedent.  Contrary to Insurers' suggestion, moreover, the fact that there is a dearth of case law analyzing this exact issue does not somehow favor Insurers; it is a neutral fact at best.  Regardless, as set

---

[1] Capitalized terms not defined herein have the meaning set forth in Plaintiff's Motion for Partial Summary Judgment, filed on June 30, 2021 (ECF Dkt. No. 35) (hereinafter "Plaintiff's Motion" or "Plf. Mot.") and Plaintiff's Reply in Further Support of Plaintiff's Motion and Combined Opposition to Defendants' Cross-Motions, filed on August 11, 2020 (ECF Dkt. No. 41) (hereinafter "Plaintiff's Reply" or "Plf. Reply").

[2] "Joint Reply" refers to the joint reply filed by all Insurers on August 25, 2021 (ECF Dkt. No. 43) in further support of Insurers' Cross-Motion.

out in Plaintiff's Motion and Reply, Mr. Schulman has shown at least one viable construction (if not the only viable construction) of the Policies' "Claim" definition, as the Indictment is a "demand" and seeks monetary and non-monetary "relief" under the plain meaning of these terms construed in accordance with the reasonable expectations of the average insured.

*Second*, applicable law also requires that insurance policies be construed *as a whole*, without a single phrase being analyzed in isolation. Applying this rule of construction to the case at bar requires reading the "Claim" definition in the context of other Policy provisions, including the definition of "Wrongful Act" that is not limited to alleged civil violations, and the "criminal act" exclusion that by its express terms does ***not*** apply to mere allegations of criminal misconduct, but rather is triggered only by finally adjudicated criminality or admissions of the same. Plus, Maryland law requires policy exclusions to be interpreted narrowly and rejects constructions that do not give meaning to each and every term. Accordingly, reading the Policies as a whole supports Mr. Schulman's reading that coverage extends to alleged and unproven criminal wrongdoing regardless of what form those allegations take or in what forum they arise.

*Finally*, Mr. Schulman's reasonable construction is bolstered by a later-issued and publicly available "AXIS Pro Lawyers Professional Liability Insurance Policy" form that, like the Policies here, defines "Claim" broadly to include "a written demand." *See* Ex. A to the Supplemental Declaration of Jillian M. Raines ("Raines Supp. Decl."), at 002. Yet, unlike the Policies here, this other form states unequivocally in its exclusions section that "[c]riminal ***proceedings*** are not covered under this Policy regardless of the allegations made against any Insured." *Id.* at 008 § 4 (original emphasis removed; bold and italic added). The glaring absence of this language from the Policies covering Mr. Schulman confirms that Insurers knew exactly

2

how to exclude coverage for criminal proceedings when that was their intent but did ***not*** do so in the Policies they sold to the Firm. Accordingly, well-established rules of policy construction and available extrinsic evidence directly support granting summary judgment in Mr. Schulman's favor and denying Insurers' Cross-Motions.[3]

## ARGUMENT

**I.  CONSTRUING THE POLICIES AS A WHOLE, THE INDICTMENT IS A "CLAIM" UNDER THE PLAIN POLICY LANGUAGE, TRIGGERING INSURERS' OBLIGATION TO PAY FOR MR. SCHULMAN'S ENTIRE DOJ CLAIM DEFENSE**

Under Maryland law, "when deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1031 (Md. 1993) (citation omitted). "Unless there is an indication that the parties intended to use words in the policy in a technical sense, they must be accorded their customary, ordinary, and accepted meaning." *Lloyd E. Mitchell, Inc. v. Md. Cas. Co.*, 595 A.2d 469, 475 (Md. 1991) (citation omitted). Accordingly, the test is to apply the "meaning a reasonably prudent layperson would attach to the term." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985); *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 510 (D. Md. 2019) (If "the policy's language is clear and unambiguous, the Court will assume the parties meant what they said.") (quoting *Cap. City Real Estate, LLC v. Certain Underwriters at Lloyd's*, 788 F.3d 375, 379 (4th Cir. 2015)); *see also Dutta v. State Farm Ins. Co.*, 769 A.2d 948, 957 (Md. 2001).

As set forth in Plaintiff's Motion and Reply, the Policies define "Claim" to include "any" of its definitional subparts, including a "written demand against any **Insured** for monetary or

---

[3] As discussed by the Parties during the October 7 telephonic status conference, in the event the Court were to grant Insurers' Cross-Motion with respect to this gating coverage issue, Plaintiff's remaining claims, including for breach of the Advancement Agreement and for detrimental reliance would preclude summary dismissal of this case.

3

non-monetary relief." Plf. Mot., Ex. 1 at 007 § B.1.a. The Policies do not define "demand," but the common and ordinary meaning of the term includes "something claimed as due or owed."[4] The Indictment expressly demanded that Mr. Schulman "shall forfeit" property and pay a "money judgment." Plf. Mot., Ex. 3 at 029–031 ¶¶ 1–4; *see also* Plf. Mot. at 21 and Plf. Reply at 9 (citing cases). The Indictment is also a demand "for monetary or non-monetary relief." Although the Policies neglect to define "relief," its common and ordinary meaning includes "legal remedy or redress."[5] Because the Indictment seeks a legal remedy and redress, it is a "Claim" under the plain language of the Policies. *See* Plf. Mot. at 22-23 and Plf. Reply at 9-10 (citing cases); *see also Joseph P. Bornstein, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 828 F.2d 242, 245 (4th Cir. 1987) (construing ambiguity in policyholder's favor and holding grand jury investigation and post-indictment proceedings sought "nonpecuniary relief" and constituted "claims" under policy definition without express mention of criminal proceedings) (applying Virginia law).

This plain language interpretation of "Claim" is further bolstered by the fact that Maryland law requires insurance policies to be read "as a whole" and rejects policy interpretations that construe terms in isolation. *See Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 393 (Md. 2006) (Maryland requires insurance contracts to be construed "as a whole to determine the intention of the parties.") (citations omitted); *Aetna Cas. & Sur. Co. v. Hartford Accident & Indem. Co.*, 539 A.2d 239, 242 (Md. Ct. Spec. App. 1988) ("Emphasis should not be placed on a particular provision of an insurance policy, rather, the policy should be

---

[4] *Demand*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/demand (last visited October 29, 2021). *See also Gil Enter., Inc. v. Delvy*, 79 F.3d 241, 246 (2d Cir. 1996) (demand is "an imperative solicitation for that which is legally owed" and "trigger[s] certain rights and obligations").

[5] *Relief*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/relief (last visited October 29, 2021).

read as a whole to determine its true import.") (citation omitted).  Moreover, any interpretation that would "nullify" one phrase "to substitute it with a contradictory formulation" will be rejected.  *Nautilus Ins. Co.*, 383 F. Supp. 3d at 510 (quoting *Calomiris v. Woods*, 727 A.2d 358, 366 (Md. 1999)).

Applying these governing principles to evaluate the "Claim" definition in context with the Policies' broad "Wrongful Act" definition and narrow "criminal acts" exclusion evinces that Plaintiff's interpretation is the only reasonable one.  Specifically, the Policies provide professional liability coverage for "Wrongful Acts," which sets the parameters of liability covered to include "*any* actual or *alleged* . . . *act*, errors or omission . . . in the performance of or failure to perform **Professional Services** by an **Insured**."  Plf. Mot., Ex. 1 at 009–010 § II.P (emphasis in italics added).  This definition nowhere limits coverage to civil wrongdoing.  Additionally, the Policies' exclusion for criminal acts, by its express terms, does not apply to mere allegations of criminality, but applies ***only*** if such criminal act is "evidenced by any judgment, final adjudication . . . or written admission by an **Insured**."  *Id.* at 011 § IV.A.9.b.  *See Graham v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 474 F. App'x 956, 960-61 (4th Cir. 2012) (insurer's defense obligation triggered absent adjudication or admission) (applying West Virginia law).  As one cannot evidence criminal acts in a judgment or final adjudication respecting a "Claim" if that "Claim" does not and cannot include demands or proceedings alleging criminal acts in the first place, this limiting clause necessarily presupposes that *alleged* criminal wrongdoing and proceedings are intended to be covered under the Policies unless and until there is a final judgment or admission.

Reading this exclusion together with the "Claim" and "Wrongful Act" definitions, and construing it strictly and narrowly as Maryland law requires, Mr. Schulman's construction of the

5

Policies proves sound. *See Megonnell v. United Servs. Auto. Ass'n*, 796 A.2d 758, 772 (Md. 2002) ("[S]ince exclusions are designed to limit or avoid liability, they will be construed more strictly than coverage clauses and must be construed in favor of a finding of coverage.'") (quoting Eric Mills Holmes & Mark S. Rhodes, *Holmes's Appleman on Insurance*, 2d 276–81 (Eric Mills Holmes ed., vol. 2 § 7.2, West 1996)). Finally, because there has been no adjudication against, or admission by, Mr. Schulman, who is in the midst of mounting his vigorous defense, his entitlement to *defense* coverage on a current basis must not be precluded. *See Aetna Cas. & Sur. Co. v. Cochran*, 651 A.2d 859, 861 (Md. 1995) ("[A]n insurance company has a duty to defend its insured for all claims which are potentially covered under an insurance policy.") (citation omitted).[6]

Put simply, whereas Insurers' construction ignores other Policy provisions, Mr. Schulman's plain language reading of the "Claim" definition reconciles with the Policy as a whole. *See Aetna Cas. & Sur. Co.*, 539 A.2d at 242 (rejecting insurer's focus on a single term in policy "without due consideration to the entire provision" and "the entire 'Declarations' portion of the policy"). Accordingly, Plaintiff has met his burden to show the Indictment constitutes a "Claim" under the Policies and Insurers' must advance defense costs to Plaintiff for the Indictment on a current basis. *See* Plf. Mot., Ex. 1 at 006 § I.B.3.[7]

---

[6] *See also Nautilus Ins. Co.*, 383 F. Supp. 3d at 510-11 ("Maryland law recognizes 'an insurance company's duty to defend its insured for all claims which are potentially covered under an insurance policy.'") (citing *Md. Cas. Co. v. Blackstone Int'l Ltd.*, 114 A.3d 676, 682 (Md. 2015)). To be sure, no material distinction exists as between the allegations required to trigger an insurer's duty to defend and those required to trigger an insurer's duty to pay or advance defense costs. *See, e.g.*, *Acacia Rsch. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2008 WL 4179206, at *11 (C.D. Cal. Feb. 8, 2008) ("the duty to advance defense costs is [as] broad as the duty to defend"); *Shapiro v. Am. Home Assurance Co.*, 616 F. Supp. 906, 913 (D. Mass. 1985) ("duty to reimburse costs of defense . . . is at least as broad as the duty to defend under traditional liability insurance provisions").

[7] *See also Aspen Ins. UK, Ltd. v. Fiserv, Inc.*, 2010 WL 5129529, at *7 (D. Colo. Dec. 9, 2010) (insurer required to advance defense costs as they are incurred); *Syracuse Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 3357812, at *5 (N.Y. Sup. Ct. Mar. 7, 2013) (granting insured partial summary

## II. AT A MINIMUM, AMBIGUITY IN THE POLICIES REQUIRES CONSIDERATION OF EXTRINSIC EVIDENCE THAT WARRANTS JUDGMENT IN MR. SCHULMAN'S FAVOR

Critically, even if the Court were persuaded that Insurers' interpretation of the Claim definition also is reasonable (it is not), it would not be the only reasonable interpretation. Insurers cannot establish they are entitled to judgment in their favor or summary dismissal at this stage as Insurers have not conclusively established (nor can they) that Mr. Schulman's reading is altogether unreasonable.

Where a reasonably prudent layperson finds policy language "susceptible to more than one meaning," that language is deemed to be ambiguous. *Cole v. State Farm Mut. Ins. Co.*, 753 A.2d 533, 537 (Md. 2000); *Pac. Indem. Co.*, 488 A.2d at 489 (language "may be ambiguous if it is 'general' and may suggest two meanings to a reasonably prudent layperson"). Where ambiguity is identified, moreover, the Court may consider extrinsic evidence "for the purpose of clarifying the ambiguit[y]." *Aetna Cas. & Sur. Co.*, 539 A.2d at 241. Maryland courts "will look to evidence from extrinsic sources such as dictionaries or an interpretation of the term employed by one of the parties before the dispute arose." *Cole*, 753 A.2d at 537 (citation omitted) (finding policy term ambiguous and thus construing in favor of coverage). If doubt persists after consideration of such extrinsic evidence, that remaining ambiguity must be resolved "liberally in favor of the insured and against the insurer *as drafter of the instrument.*" *Megonnell*, 796 A.2d at 772 (italics in original); *Clendenin Bros., Inc.*, 889 A.2d at 394; *Cole*, 753 A.2d at 541 (finding term in policy to be ambiguous and thus construing in favor of coverage); *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 656 A.2d 779, 786 (Md. 1995)

---

judgment where "claim" and "wrongful act" definitions were met and the policy required insurer to advance defense costs prior to claim disposition), *aff'd* 112 A.D.3d 1379 (N.Y. App. Div. 2013).

7

("[A]ny doubt as to whether there is a potentiality of coverage under an insurance policy is to be resolved in favor of the insured.") (citation omitted); *Unitrin Auto and Home Ins. Co. v. Karp*, 481 F. Supp. 3d 514, 525 (D. Md. 2020) (ambiguity construed against insurer and in favor of policyholder resulting in coverage).[8]

Thus, to prevail on his affirmative Motion and defeat Insurers' Cross-Motion, Mr. Schulman is *not* required to show that his interpretation is the only reasonable construction. Instead, as the insured, he must show simply that his interpretation is plausible when considering the Policies as a whole. *See Clendenin Bros., Inc.*, 889 A.2d at 392-94 (finding ambiguity and defense obligation where "[a] reasonably prudent person could construe the pollution exclusion clause . . . as both including and not including manganese welding fumes").

Mr. Schulman has established as much here. Moreover, if ambiguity is present, even a cursory review of publicly available extrinsic evidence puts to bed any dispute that Plaintiff's construction is correct and judgment in his favor is warranted. For instance, in a publicly available New York AXIS Pro Lawyers Professional Liability Insurance Policy form issued in 2015 (the "2015 Form"), the reciprocal criminal acts exclusion expressly states that ***"[c]riminal proceedings* are not covered under this Policy regardless of the allegations made against any Insured**." Raines Supp. Decl., Ex. A at 008 § 4 (emphasis added). This language is conspicuously absent from the criminal acts exclusion included within the Policies, which use an earlier AXIS Pro Lawyers Professional Liability Insurance Policy form issued in 2011 for Maryland insureds. *See generally* Plf. Mot., Ex. 1. This clear and unambiguous language further demonstrates that Insurers knew exactly how to exclude coverage for criminal proceedings when

---

[8] If review of extrinsic evidence presents a factual dispute, then "construction of the ambiguous contract is for the jury." *Collier v. MD-Individual Prac. Ass'n, Inc.*, 607 A.2d 537, 539 (Md. Ct. Spec. App. 1992). In short, denial of all pending motions would be warranted, and discovery must proceed.

that was their intent. *See Drutz v. Scottsdale Ins. Co.*, 2012 WL 665984, at *2 (D. Md. Feb. 28, 2012) (awarding summary judgment to the insured and noting insurance contracts must be "enforced as written and the language 'may not yield to what the parties later say they meant.'") (citation omitted). Insurers chose not to do so in the Policies they sold to the Firm. *See Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1001 (2d Cir. 1974) (when insurance companies fail to include clear and distinct language to exclude a known cause of loss, they do so "at their own peril"). Furthermore, the placement of this limiting language within the exclusions section instead of the "Claim" definition, further undermines Insurers' argument that the Policies' definition of "Claim" can be read in isolation and directly supports Mr. Schulman's reading of the Policies as a whole.

Plus, the 2015 Form's "Claim" definition includes any "written demand received by you for monetary relief, including the service of suit or institution of arbitration proceedings against you." Raines Supp. Decl., Ex. A at 002. This must be broad enough to contemplate an "indictment" within the plain meaning of "demand" or the enhanced language in the criminal acts exclusion expressly precluding coverage for criminal proceedings would be rendered mere surplusage, a result directly violating Maryland (and New York) law.[9] *See Cochran v. Norkunas*, 919 A.2d 700, 710 (Md. 2007) ("effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing") (citation omitted); *Nat'l Cas. Co. v. Lockheed Martin Corp.*, 415 F. Supp. 2d 596, 602 (D. Md. 2006) ("[A]ny construction of a contract that makes another provision superfluous

---

[9] The 2015 Form's "Claim" definition is *narrower* than that in the Policies as it does not include demands for "non-monetary relief." *See id.* at 002. The Policies, in contrast, do. Thus, any claim by Insurers that the Policies do not cover the DOJ Subpoena because it demands only information and documents, theoretically, could find support under the 2015 Form; it plainly fails under the Policies' broader plain language.

is generally disfavored.") (citation omitted); *Nautilus Ins. Co. v. BSA Ltd. P'Ship*, 602 F. Supp. 2d 641, 655, n.7 (D. Md. 2009) (construing exclusion narrowly to avoid superfluous construction that would "fail to give effect to all of the contractual provisions"); *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) (registering disfavor for, and rejecting, "contract interpretation[] that render[s] provisions of a contract superfluous").[10]

A subsequently issued 2014 AXIS form used in Maryland further comports with Plaintiff's proffered and reasonable policy construction. First, the 2014 "AXIS Pro Lawyers Professional Liability Insurance Policy" form (the "2014 Maryland Form") simplifies the "Claim" definition from that found in the Policies to a single subpart: "a written demand received by **you** for monetary or non-monetary relief, *including* the service of suit or institution of arbitration proceedings against you." Raines Supp. Decl., Ex. B at 002 (italics added). This reinforces that AXIS understood the plain language of "written demand" to necessarily include a lawsuit or formal proceeding. Second, the 2014 Maryland Form, like the Policies, has a "final adjudication" or "admission" requirement in its criminal acts exclusion, noting the exclusion "shall not apply to a claim until and unless such conduct is evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or written admission by **you**." *Id.* at 008. No further or express exclusion for criminal proceedings appears; instead, the 2014 Maryland Form exclusion carves back coverage, noting the exclusion shall also not apply to "claims

---

[10] Insurers' surplusage counter-argument—that reading the "written demand" subpart of "Claim" to include criminal proceedings renders superfluous the other definitional subparts (*see* Joint Reply at 4)—does not hold water. An equally plausible reading of "Claim" takes into consideration that a criminal proceeding may not be well delineated. *See, e.g.*, *Syracuse Univ.*, 2013 WL 3357812, at *3 (recognizing a grand jury's investigation as "an integral part of a criminal proceeding"); Insurers' Joint Reply at 6 n.5 (noting "the Subpoena and investigation" were "part and parcel of the other"). Thus, while all forms of criminal proceedings may reasonably fall within the "written demand for monetary or non-monetary relief" subpart of the definition of "Claim," for civil matters, this subpart reasonably extends to pre-litigation demands only and the more specific prongs that follow govern formal civil proceedings.

alleging **personal injury**" (*id.*), which, in turn, is defined to include, among other things, "abusive litigation (*criminal* or civil)." *Id.* at 003 (italics added). In sum, coverage for alleged criminal acts and proceedings is directly contemplated in this later Maryland form that, like the Policies, does not expressly exclude criminal proceedings and defines "claim" broadly to include written demands for monetary or non-monetary relief. *See Graham*, 474 F. App'x at 960.

Thus, the criminal acts exclusions in the Maryland 2014 Form and the 2015 Form demonstrate why insurance policies must be read as a whole and why the definition of "Claim" in the Policies cannot be read in isolation. At a bare minimum, the Policies' language noting the exclusion applies only "if evidenced by any judgment, final adjudication . . . or written admission by an **Insured**" suggests an ambiguity regarding coverage for alleged criminal acts and criminal proceedings against Mr. Schulman. Available extrinsic evidence presented resolves any doubt in his favor. *See Megonnell*, 796 A.2d at 772; *see also Nautilus*, 383 F. Supp. 3d at 511 (ambiguities to be construed liberally against the insurer as drafter of the policy).

### III. THE PRIMARY CARRIERS EXPRESSLY REPRESENTED TO MR. SCHULMAN THAT THE "CLAIM" ISSUE WAS RESOLVED[11]

As a final point, even accepting, *arguendo*, the Primary Carriers' argument that they reserved rights as to whether the DOJ Subpoena and investigation constituted a Claim for a Wrongful Act because they were criminal proceedings, and agreed to pay Mr. Schulman's defense costs only in resolution of a disputed claim pre-Indictment (*see* Joint Reply at 6-8)—the Primary Carriers fail to address that they did not include Mr. Schulman in any purported settlement or compromise with the Firm. The only communication Insurers provided to Mr.

---

[11] Insurers' claim that "[t]his case is not about whether the Primary Carriers will pay the agreed 70% of Subpoena-related expenses" (Joint Reply at 6) ignores that Mr. Schulman was forced to file this lawsuit to achieve this concession. It was not until briefing on the pending motions that the Primary Carriers agreed to make partial payment toward outstanding pre-Indictment expenses.

11

Schulman was in the form of a coverage position letter (*i.e.*, the Advancement Agreement), which the Primary Carriers sent in *response* to Mr. Schulman's request to confirm his understanding of coverage, including that the criminal acts exclusion would not be used to deny him coverage for Akin's defense costs unless criminal or dishonest conduct was "evidenced by any judgment, final adjudication . . . or written admission by an Insured." Plf. Mot., Ex. 4 at 001. In that response, the Primary Carriers expressly represented to Mr. Schulman that they and the Firm had reached a compromise as to the exact issue of whether the DOJ investigation and Subpoena (*i.e.*, criminal proceedings) constituted a Claim for a Wrongful Act, and that the Primary Carriers agreed "to cover" 70% of his Akin fees and 100% of his costs going forward. Plf. Mot., Ex. 5 at 001; Plf. Mot., Ex. 4 at 001. This representation confirmed to Mr. Schulman that the Primary Carriers would not contest *his* entitlement to coverage for criminal proceedings absent a judgment or admission, and in lodging their remaining reservations, Insurers never expressly informed him otherwise.[12] Among other things, Mr. Schulman reasonably relied on this representation to his detriment, by continuing to incur expensive legal fees in response to the DOJ's claim based upon his belief that at least 70% of them would be covered and paid. *See* Plf. Mot. at 29-34; Plf. Reply at 11-19; *see* 46 C.J.S. Insurance § 1194 ("Where the insurance company's assertion of a defense would be inequitable, it may be estopped from asserting the defense."). Thus, the return of the interrelated criminal Indictment does not enable Insurers to revive an expressly resolved reservation.[13]

---

[12] The only two communications ever provided to Mr. Schulman did not inform Mr. Schulman of the Primary Carriers' belated view that the Policies do not provide coverage for criminal proceedings. The Advancement Agreement suggests exactly the opposite and does not expressly reserve rights to withdraw the agreement to pay defense costs. *See* Plf. Mot., Ex. 5. The Etelson Letter, too, merely reserved the right "if the [criminal acts] Exclusion is **later determined** to be applicable," *i.e.*, if there is ever a final judgment or admission in a criminal proceeding. Plf. Mot., Ex. 6 at 0002 (emphasis added).

[13] Insurers attempt to distinguish *Nationwide Mutual Insurance. Co. v. Regional Electric Contractors, Inc.*, 680 A.2d 547, 558 (Md. Ct. Spec. App. 1996) by pointing to the fact that the Indictment had not yet been

**CONCLUSION**

For the foregoing reasons, Mr. Schulman respectfully requests that the Court grant his Motion for Partial Summary Judgment on Counts I, II, IV and V of the Complaint and deny in their entirety Insurers' Cross-Motion for dismissal of all Counts of the Complaint and ProSight's Motion seeking dismissal of Count III of the Complaint as against ProSight.

Dated: October 29, 2021               Respectfully submitted,

/s/ *Jeffrey M. Schwaber*
Jeffrey M. Schwaber (Bar # 06095)
STEIN SPERLING BENNETT DE JONG DRISCOLL PC
1101 Wootton Parkway
Suite 700
Rockville, MD 20852
(301) 340-2020
(301) 354-8110
jschwaber@steinsperling.com

Robin L. Cohen *(Admitted pro hac vice)*
Jillian M. Raines *(Admitted pro hac vice)*
COHEN ZIFFER FRENCHMAN & MCKENNA LLP
1350 Avenue of the Americas, 25th Floor
New York, NY 10019
(212) 584-1890
(212) 584-1891
rcohen@cohenziffer.com
jraines@cohenziffer.com

---

returned when the Advancement Agreement was issued. This argument fails because the Primary Carriers knew an indictment was a potential eventuality of the DOJ investigation at the time they issued the Advancement Agreement and knew Mr. Schulman had retained and sought their consent to Akin for the *entire* DOJ matter, including "the investigation and any related proceedings." Plf. Mot., Ex. 4 at 001. *OneBeacon Insurance Co. v. Metro Ready-Mix, Inc.*, 242 F. App'x 936 (4th Cir. 2007) is also inapposite. OneBeacon "never once suggested" it would provide coverage for the incident at hand in that case. The insured instead relied on representations from the insurer's predecessor relating to a similar scenario. *Id.* at 941-42. Here, Mr. Schulman relies on the real-time communications from Insurers who acknowledge the DOJ Subpoena and investigation as one criminal proceeding (Joint Reply at 6 n.5) and simply reversed course on their express representations when the Indictment was returned.

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served electronically on all counsel of record via operation of the Court's electronic filing system and by electronic mail on October 29, 2021.

/s/ Jeffrey M. Schwaber
Jeffrey M. Schwaber (Bar # 06095)
