**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**JEREMY W. SCHULMAN,**

**Plaintiff,**

**vs.**

**AXIS SURPLUS INSURANCE COMPANY, ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, and PROSIGHT SYNDICATE 1110 AT LLOYD'S,**

**Defendants.**

**Civil Action No.: 8:21-cv-1252**

**DEFENDANTS' JOINT REPLY TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

I. THE PRIMARY POLICY'S DEFINITION OF CLAIM IS UNAMBIGUOUS IN THAT IT DOES NOT EXTEND TO A CRIMINAL INDICTMENT, AND NO EXTRINSIC EVIDENCE MAY BE CONSIDERED ..... 2

A. The Primary Policy's definition of Claim clearly and unambiguously precludes coverage for any criminal proceeding, including the Indictment ..... 3

B. Because the Claim definition is clear and unambiguous, this Court may not consider extrinsic evidence of its meaning ..... 7

II. EVEN IF THE COURT WERE TO FIND THAT EXTRINSIC EVIDENCE COULD BE RELEVANT, THE OTHER POLICIES DO NOT CONSTITUTE EXTRINSIC EVIDENCE OF THE INTENT OF THE PARTIES TO THE PRIMARY POLICY ..... 8

III. EVEN IF THE COURT WERE TO CONSIDER THE OTHER POLICIES FOR ANY PURPOSE, THE EVIDENCE FAVORS THE INSURERS BECAUSE NONE OF THE POLICIES AT ISSUE PROVIDE COVERAGE FOR CRIMINAL INDICTMENTS ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Cases**

*Auto. Ins. Fund v. Baxter*,
973 A.2d 243 (Md. Ct. Spec. App. 2009) ....................6

*Bel Air Auto Auction, Inc. v. Great Northern Ins. Co.*,
--- F. Supp. 3d ---, 2021 WL 1400891 (D. Md. Apr. 14, 2021) ....................8

*Credible Behav. Health, Inc. v. Johnson*,
466 Md. 380, 220 A.3d 303 (2019) ....................8

*Graham v. Nat'l Union Fire Ins. Co.*,
474 F. App'x 956 (4th Cir. 2012) ....................6

*Rouse Co. v. Federal Ins. Co.*,
991 F. Supp. 460 (D. Md. 1998) ....................7, 8

*W.F. Gebhardt & Co. v. Am. European Ins. Co.*,
250 Md. App. 652, 252 A.3d 65 (2021) .................... *passim*

*White v. Fed. Deposit Ins. Corp.*,
122 F.2d 770 (4th Cir. 1941) ....................9

Defendants AXIS Surplus Insurance Company ("AXIS"), Endurance American Specialty Insurance Company ("Endurance," and together with AXIS, the "Primary Carriers"), and ProSight Syndicate 1110 at Lloyd's ("ProSight Syndicate," and together with the Primary Carriers, the "Insurers") respectfully submit this joint response to Plaintiff's Supplemental Brief in Further Support of Plaintiff's Motion for Partial Summary Judgment (the "Supplemental Brief") filed on October 29, 2021. Simply stated, nothing in the Plaintiff's Supplemental Brief changes the undeniable reality that no dispute of material fact exists, and this Court should deny Plaintiff's motion and grant summary judgment in favor of the Insurers.

## INTRODUCTION

Having agreed to an extensive schedule for briefing all issues on summary judgment and having, in fact, briefed every issue extensively, Plaintiff accepted this Court's invitation to take one last bite at the apple and filed his "Supplemental Brief in Further Support of Plaintiff's Motion for Partial Summary Judgment" (the "Supplemental Brief") on October 29, 2021. Plaintiff doubles down on many of the intentionally confusing and misleading arguments he has made from the beginning of this proceeding, including his misguided effort to suggest that Plaintiff's own innocuous statement that he had hired counsel for the Subpoena and "any related proceedings" was somehow made or adopted by the Insurers. Those arguments have been addressed in the Insurers' Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, Doc. No. 40 (the "Opening Brief") and the Insurers' Joint Reply in Support of Cross-Motion for Summary Judgment, Doc. No. 43 (the "Reply Brief"), and the Insurers will not repeat their arguments here.

The only new argument in the Supplemental Brief is that, having moved for summary judgment on the clear and unambiguous language of the Primary Policy, Plaintiff now asserts

that the policy is somehow ambiguous and asks this Court either (i) to construe the ambiguity in his favor, or (ii) to consider two other insurance policies (the "Other Policies") – neither of which has anything to do with this matter – as purported "extrinsic evidence" of the intent of the parties to the Primary Policy. In so doing, Plaintiff effectively concedes that the Insurers are right about how the plain language of the Primary Policy applies here – it precludes coverage for the reasons stated in the Insurers' prior briefs – and pins his hopes on the Other Policies. As explained briefly below, Plaintiff's reliance on the Other Policies is misplaced for numerous reasons, including (i) that the Primary Policy's unambiguous terms preclude coverage for the Indictment; (ii) "extrinsic evidence" therefore may not be considered in determining the parties' intent, which must be determined from the unambiguous language they chose to use; (iii) the Other Policies would not be extrinsic evidence of the parties' intent in connection with the Primary Policy in any event; and (iv) if the Court nonetheless chose to consider the Other Policies for any reason, they do not support Plaintiff's position.

For the reasons set forth in the Insurers' prior briefs and below, the Insurers respectfully ask this Court to deny Plaintiff's Motion, grant the Insurers' Cross-Motions for Summary Judgment, and enter judgment in favor of the Insurers.

## ARGUMENT

### I. The Primary Policy's definition of Claim is unambiguous in that it does not extend to a criminal Indictment, and no extrinsic evidence may be considered.

For the reasons stated in the Insurers' prior briefs in this matter, the Primary Policy's definition of Claim makes clear that the parties to the contract did not intend for it to provide coverage for a criminal indictment. Absent a finding that the language is ambiguous, this Court should construe the words of the Primary Policy and give them their "plain, ordinary, and usual meaning, taking into account the context in which [each provision] is used." *W.F.*

*Gebhardt & Co. v. Am. European Ins. Co.*, 250 Md. App. 652, 252 A.3d 65, 73 (2021) (citing *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 695, 114 A.3d 676 (2015)) (quoting *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 167, 829 A.2d 540 (2003)). Policy provisions must be read in context and taken as a whole. *Id.* Whether a contract is ambiguous is a question of law that this Court may decide on summary judgment. *Id.* "A policy term is considered 'ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning.'" *Id.* at 74 (citing *Connors v. Gov't Employees Ins.*, 442 Md. 466, 481, 113 A.3d 595 (2015)) (quoting *Cole v. State Farm Mut. Ins.*, 359 Md. 298, 305-06, 753 A.2d 533 (2000)). Policy language is not ambiguous merely because the parties disagree regarding its application to the claim at issue. *Id.* (citing *Allstate Ins. v. Humphrey*, 246 Md. 492, 496, 229 A.2d 70 (1967)). Moreover, "simply because [a party] can point to several slightly different dictionary definitions of [a word] does not render that term ambiguous." *Id.* (citing *Rigby v. Allstate Indem.*, 225 Md. App. 98, 110, 123 A.3d 592 (2015)).

Plaintiff's argument must rise or fall on the proposition that the phrase "written demand for monetary or nonmonetary relief," read in context and together with the entire Claim definition and the Primary Policy as a whole, reasonably could be read to reflect an intent by the parties to include coverage for a criminal indictment. *See, e.g., W.F. Gebhardt*, 252 A.3d at 73 (policy provisions must be read in context and taken as a whole). But Plaintiff's proffered interpretation flies in the face of the plain language and structure of the Claim definition for two reasons, as the Insurers explained in detail and briefly summarize below.

### A. The Primary Policy's definition of Claim clearly and unambiguously precludes coverage for any criminal proceeding, including the Indictment.

First, the Claim definition makes clear that Section 1.a. is not intended to encompass *any* formal proceedings, much less to silently encompass criminal indictments despite the absence of

any reference to such proceedings. Specifically, Sections 1.b. through 1.d. of the Claim definition sets forth a comprehensive list of the types of civil proceedings that the parties intended would satisfy the Claim definition and therefore implicate coverage under the Primary Policy: complaints in "a civil proceeding … commenced by the service of a complaint or similar pleading", a "written demand for arbitration or mediation," and a "formal civil administrative or civil regulatory proceeding … commenced by the filing of a notice of charges or similar document. …" Primary Policy, Ex. 1, Claim definition, Section 1.b through 1.d. The Claim definition also includes two types of written demands that might, depending on how they are handled, lead to formal proceedings: a "written demand … for monetary or non-monetary relief," *id.* Section 1.a., and a "written request … to toll or waive a statute of limitations relating to a matter described in subparagraph 1, above," *id.* Section 2.

The clear intent of the Claim definition is to cover civil disputes that have ripened to the point where written demands demonstrate the existence and scope of the dispute. Once a formal proceeding is initiated, the "written demand" prong no longer applies – the proceeding must constitute a Claim under one of the more specific prongs, or the insuring agreement is not triggered. The Primary Insurers agreed as a compromise to fund Plaintiff's legal expenses in responding to the Subpoena under the "written demand" prong while reserving all rights with respect to coverage. Once the Investigation ended and criminal proceedings were filed, the criminal proceeding must constitute a Claim in order for coverage to be triggered.

To adopt Plaintiff's interpretation, this Court would have to hold not only that "written demand . . . for monetary or non-monetary relief" includes a criminal indictment, but also that the parties intended the reference to "written demands" in Section 1.a. to be interpreted so broadly that it would encompass all kinds of formal proceedings. That is true because each

prong of the Claim definition expressly requires a form of writing – the complaint in a civil proceeding, the notice of charges in a civil administrative or regulatory proceeding, written requests to toll or waive a statute of limitations, etc. – and therefore would be a "written demand for monetary or nonmonetary relief" under Plaintiff's interpretation. Such an interpretation would render all other prongs of the Claim definition superfluous in defiance of Maryland law and common sense.

Second, even if Section 1.a., a written demand for monetary or nonmonetary relief, could somehow be read to encompass formal proceedings without swallowing the other prongs of the Claim definition whole, it cannot plausibly be read to encompass formal *criminal* proceedings without saying so. Indeed, conspicuously absent from the detailed enumeration of covered proceedings in the Claim definition – and from all other provisions of the Primary Policy – is any reference or even allusion to the prospect of coverage for criminal indictments. That absence forecloses any plausible argument that the parties intended, as Plaintiff would have to prove they did, to include coverage for a criminal indictment in the terms of the Primary Policy notwithstanding that they carefully listed only types of civil proceedings in the Claim definition. No reasonable party would choose the complete absence of any reference to criminal proceedings as a means of indicating their intent to include coverage for criminal proceedings, and this Court is bound to interpret the parties' intent in the way a reasonable reader would interpret their words. *Gebhardt*, 252 A.3d at 77.

Plaintiff once again attempts to misuse the Primary Policy's "criminal acts" exclusion as evidence that the parties contemplated coverage for criminal proceedings under the policy, but that provision does not support his position for at least two reasons. First, exclusions do not

grant coverage; they exclude coverage that otherwise would be available under the applicable policy's insuring agreement. *See* Insurers' Opening Br. Section II.A.2. (citing *Maryland Auto. Ins. Fund v. Baxter*, 973 A.2d 243, 252-53 (Md. Ct. Spec. App. 2009) ("a basic legal precept concerning insurance coverage is that exclusions do not create coverage") (collecting cases)). The Primary Policy's insuring agreement is limited to "Claims" as defined in the Primary Policy – a term that does not include criminal proceedings – and to "Wrongful Acts," which the Primary Policy limits to acts, errors or omissions "*in the performance or failure to perform Professional Services by an Insured*." Primary Policy, Section IV.A.9.b. The Indictment, like other criminal proceedings, does not allege that Plaintiff made a mistake in providing legal services to a client – it alleges that he conspired with some purported clients and non-clients to commit fraud.

Second, Plaintiff does not quote the "criminal acts" exclusion in full for obvious reasons – to read that provision is to refute Plaintiff's argument regarding it. The Insurers have quoted the provision in full at page 12 of their Opening Brief and again at page 15, where the Insurers also explained the fallacy of Plaintiff's argument. We will not repeat those arguments here; suffice to say that the plain language of that provision addresses *civil* claims that are "based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving … any criminal, dishonest, malicious or deliberately fraudulent act."[1] If the "criminal acts" exclusion had contemplated criminal proceedings that would otherwise be covered, it would have addressed proceedings "for" criminal acts, and the list of final outcomes that would trigger the exclusion would have included a "plea," "conviction," "admission of guilt" or other

---

[1] That was the scenario addressed in the case Plaintiff cites for this argument, *Graham v. Nat'l Union Fire Ins. Co.*, 474 F. App'x 956, 960-61 (4th Cir. 2012) – a civil claim seeking to recover monetary damages for, among others, acts that could also violate criminal laws.

terms common to criminal proceedings. The provision does not include such terms because it is quite clearly addressed only at civil proceedings that have some connection with allegedly criminal acts.

Consistent with the Primary Insurers' position, no court appears ever to have interpreted the "written demand for monetary or nonmonetary relief" language – which is quite common in professional liability insurance policies – to encompass a criminal proceeding as Plaintiff has argued, and nothing about this factual scenario calls for a unique outcome. The Insurers already have explained in detail why Plaintiff's proffered interpretation is not plausible and how all available case law supports the Insurers' interpretation and undermines Plaintiffs. We will not repeat those arguments in detail here. Instead, the Insurers respectfully incorporate by reference the arguments set forth in their Opening Brief and their Reply Brief.

**B. Because the Claim definition is clear and unambiguous, this Court may not consider extrinsic evidence of its meaning.**

If this Court agrees with the Insurers that the plain language of the Claim definition forecloses coverage here for the reasons explained briefly above, then it need go no further and should rule in the Insurers' favor. That is true because extrinsic evidence may not be considered where the plain language of the insurance policy is clear and unambiguous. *See, e.g., Gebhardt* 252 A.3d at 73; *see also Rouse Co. v. Federal Ins. Co.*, 991 F. Supp. 460, 465 (D. Md. 1998) ("If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said and will not resort to extrinsic evidence to ascertain the contract's meaning."). The point of construing the meaning of insurance policy terms is to determine the intent of the parties. *Id.* If the applicable policy language is unambiguous, the Court must interpret the contract "based on what a reasonable person in the position of the parties would have understood the language to mean and not 'the subjective intent of the parties at the time of formation.'"

*Gebhardt* 252 A.3d at 73. The Court may not look to extrinsic evidence in determining the parties' intent. *Id.*; *Rouse Co*., 991 F. Supp. at 465.

Plaintiff has not identified any word, phrase, or provision in the Primary Policy that he contends is ambiguous; he merely disagrees with the Insurers regarding how the Policy language applies with respect to his criminal Indictment. The Insurers already have explained why Plaintiff's proffered interpretation – that the parties to the Primary Policy intended to provide coverage for a criminal indictment yet inexplicably failed to mention the existence of such coverage anywhere in the document – is utterly implausible, and this Court may not use extrinsic evidence to find ambiguity where none exists. The question of how the policy language applies here is one for the Court to decide based on the plain language of the disputed contractual provisions "in context, which includes not only the text of the entire contract but also the contract's character, purpose, and the facts and circumstances of the parties at the time of execution." *Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 394, 220 A.3d 303 (2019) (*quoting Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 88, 5 A.3d 683 (2010)). And "if no ambiguity in the terms of the insurance contract exists, a court has no alternative but to enforce those terms." *Bel Air Auto Auction, Inc. v. Great Northern Ins. Co.*, --- F. Supp. 3d ---, 2021 WL 1400891, at *6 (D. Md. Apr. 14, 2021) (internal quotation marks and citations omitted).

## II. Even if the Court were to find that extrinsic evidence could be relevant, the Other Policies do not constitute extrinsic evidence of the intent of the parties to the Primary Policy.

Even if the Court did consider extrinsic evidence of the parties' intent notwithstanding the absence of any ambiguity in the Primary Policy, the Other Policies do not constitute relevant extrinsic evidence because they say nothing about the intent of the parties to these policies. *See Gebhardt*, 252 A.3d at 77. Extrinsic evidence is "[e]vidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as

statements between the parties or the circumstances surrounding the agreement." *Id.* (quoting *Extrinsic Evidence*, Black's Law Dictionary 700 (11th ed. 2019)). Extrinsic evidence does not include other types of documents that do not reflect the intent of the contracting parties, including contracts between different parties or even communications between the contracting parties that do not reflect their contracting intent. *See Gebhardt*, 252 A.3d at 77 (holding that post-claim communications between insurer and insured was not extrinsic evidence of the parties' intent when entering into the insurance agreement); *see also White v. Fed. Deposit Ins. Corp.*, 122 F.2d 770, 773 (4th Cir. 1941) (holding that "[i]t would seem to be too clear for argument that where the Comptroller, acting pursuant to this statutory authority, grants a permit for the opening of a closed bank upon terms which are made of record at the time, it is not permissible to contradict such record by parol evidence of a different agreement or understanding had with the officers of another institution alleged to represent the Comptroller.").

Like the other agreements at issue in *White*, the Other Policies plainly are insurance agreements issued to different insureds under different circumstances with language specific to the needs of those contracting parties. There is no evidence that the parties to the Primary Policy had any knowledge of the Other Policies, much less that the Other Policies reflect in any way on the intent of the parties here, including that of ProSight Syndicate. Accordingly, even if the Court were to determine that it could properly look to extrinsic evidence in this matter, the Other Policies would not be appropriate or relevant evidence for the Court to consider.

## III. Even if the Court were to consider the Other Policies for any purpose, the evidence favors the Insurers because none of the policies at issue provide coverage for criminal indictments.

Even if this Court were to decide that it may consider the Other Policies as evidence of custom or usage or for any other purpose in interpreting the language of the Primary Policy, the evidence would support the Insurers' position because they demonstrate that legal malpractice

policies typically do not provide coverage for criminal proceedings. Plaintiff obviously looked far and wide for a lawyers' malpractice policy that provided the coverage he seeks, just as he has searched in vain for a single court opinion finding that such coverage exists, and all he came up with is the Other Policies, neither of which provide such coverage. And that makes sense – these are professional negligence policies for lawyers, not crime policies. The Indictment does not allege that Plaintiff acted negligently in providing legal services to a client. Indeed, the Indictment alleges that Plaintiff helped his purported clients and non-clients succeed in squirreling away millions of dollars that do not belong to them. And the Indictment does not seek monetary or nonmonetary relief on behalf of any individual client; it seeks to imprison Plaintiff for his role in a conspiracy to commit fraud.

In any event, the differences that Plaintiff points out between the Primary Policy and the Other Policies do not support Plaintiff's position. Plaintiff first notes that the "2015 Form" states that "criminal proceedings are not covered under this Policy regardless of the allegations made against any Insured" and suggests that this language somehow proves that coverage for criminal proceedings must exist in the absence of such express language. Pl's Supp. Br. p. 8. That argument is nonsensical. The quoted statement is in the nature of a "belt and suspenders" clarification, which the parties to those contracts might have deemed appropriate in light of the much simpler definition of Claim in those policies, which did not expressly delineate the types of civil proceedings that would constitute a Claim separately from the forms of "written demand" that might trigger coverage.

Moreover, Plaintiff's attempt to equate the "written demand" prong of the Primary Policy's Claim definition with the "written demand" language in the Other Policies ignores the fact that the Other Policies define Claim quite simply as "a written demand received by you for

monetary relief, including the service of suit or institution of arbitration proceedings against you." By contrast, the Primary Policy separates the "written demand" prong from its careful enumeration of the types of civil proceedings that might constitute a Claim. Far from proving that "written demand" "necessarily" includes formal proceedings, as Plaintiff argues, the structure of the Primary Policy's Claim definition demonstrates the parties' clear intent that the "written demand" prong in that policy does *not* include formal proceedings of any kind. If that were the parties' intent, they could have used a Claim definition like the one in the Other Policies.

Finally, Plaintiff's reliance on the statement in the "2014 Maryland Form" defining "personal injury" to include "abusive litigation (criminal and civil)," Pl's Supp. Br. pp. 10-11, borders on sophistry. The reference to "abusive litigation" plainly refers to a scenario in which the insured lawyer is sued for *bringing* abusive litigation against others – either criminal or civil – and not to any criminal proceedings *against* the insured lawyer that might be covered under the 2014 Maryland Form policy. 2014 Maryland Form, Doc. 49-2, Definitions, Personal Injury.

At the end of the day, all that Plaintiff has accomplished in tracking down these two inapplicable policy forms is to demonstrate that lawyer's professional negligence policies typically do not provide coverage for criminal proceedings against the insured lawyers. If the Other Policies had any bearing here at all – and they do not because the Primary Policy's Claim definition is unambiguous – it would be to undermine Plaintiff's argument because this Court must interpret the Primary Policy in context, which includes considering the kind of policy at issue and the coverage one would expect under such an insurance policy. Plaintiff is not alleged to have been a negligent lawyer, and no client has demanded monetary relief from him; rather, the United States government has charged him with committing specific crimes for which it

seeks to imprison him. To characterize the Indictment as a "written demand for monetary or nonmonetary relief" that might be covered under a professional negligence policy would ignore the parties' intent as expressed in the plain language they chose to document their insurance agreement. The Court should interpret the parties' words as written, as Maryland law requires, and grant summary judgment on behalf of the Insurers.

**CONCLUSION**

For the reasons explained above and in the Insurers' Opening Brief and Reply Brief, the Indictment is not a Claim as defined in the Primary Policy, and therefore coverage is not implicated. And the Primary Carriers' prior compromise agreement regarding coverage for defense costs associated with the Subpoena (i) cannot be used to establish the validity of Plaintiff's coverage claim for the Indictment, and (ii) did not even arguably promise coverage for the Indictment, which was handed down some four years later. Accordingly, the Court should deny Plaintiffs' motion, grant the Insurers' cross-motion, enter a judgment declaring that the Policies do not afford coverage to Plaintiff in connection with the Indictment, and that the Insurers – AXIS, Endurance, and ProSight Syndicate – are entitled to judgment in their favor as a matter of law.

Dated: November 19, 2021 Respectfully submitted,

/s/ Charles C. Lemley
Charles C. Lemley
clemley@wiley.law
D. Md. Bar No. 15205
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049

*Attorneys for Defendants AXIS Surplus Lines Insurance Company and Endurance American Specialty Insurance Company.*

/s/ John J. Murphy
John J. Murphy, Esq. Bar No. 14407
WALKER, MURPHY & NELSON, LLP
9210 Corporate Boulevard, Suite 320
Rockville, MD 20850
Phone: 301.519.9150
Fax: 301.519.9152
jmurphy@walkermurphy.com

/s/ Marc R. Kamin
Marc R. Kamin, Esq. PHV Bar No. 815831
STEWART | SMITH
300 Four Falls Corporate Center, Suite 670
300 Conshohocken State Rd.
West Conshohocken, PA 19428
(T) 484.589.5506 (F) 484.534.9470
MKamin@StewartSmithLaw.com

*Counsel for Defendant ProSight Syndicate 1110 at Lloyd's*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served electronically on all counsel of record via operation of the Court's electronic filing system and by electronic mail on November 19, 2021.

/s/ Charles C. Lemley

Charles C. Lemley (Bar # 15205)